**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| GARY MEDNICK, individually and on behalf of all others similarly situated, | ) ) ) | No. 14-cv- |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | **JURY TRIAL DEMANDED** |
| PRECOR INC., | ) |  |
| Defendant. | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |

## CLASS ACTION COMPLAINT

Plaintiff Gary Mednick ("Plaintiff") brings this action against Defendant Precor Inc. (hereinafter "Precor" or the "Defendant"), by his attorneys, on behalf of himself and all others similarly situated, and alleges the following pursuant to the investigation of his counsel and based on information and belief, except as to allegations specifically pertaining to Plaintiff, which are made upon personal knowledge.

## SUMMARY OF THE ACTION

1.      This is a class action against Precor seeking to remedy unfair and deceptive business practices arising from Precor's marketing and sale of certain home fitness equipment, defined below, incorporating heart rate monitoring capabilities.

2.      In an effort to capitalize on the consumer appetite for exercise equipment with built-in heart rate monitoring, Precor warrants and advertises that the hand grip sensors on its machines provide reliable monitoring results, all the while knowing that they do not.

3.     Precor's "touch sensor heart rate" monitoring systems are unreliable, failing to produce an accurate reading of the user's actual heart rate.  By misrepresenting the ability of its heart rate technology to provide an accurate reading, Precor has perpetrated a fraud upon unsuspecting consumers, inducing them to pay a premium price for a feature that simply does not work.

4.     Precor has made these representations with full knowledge that its heart rate monitoring technology is unreliable.  As is further detailed herein, when Plaintiff called Precor to complain about the faulty monitoring system, Precor's customer representative acknowledged Precor's awareness of the problem and instructed Plaintiff  to purchase an independent heart rate monitor to achieve an accurate reading.  The Precor representative further advised Plaintiff that Precor would not cover the cost of the additional heart rate monitor.

5.     Consequently, Plaintiff seeks relief on behalf of himself and the members of the Multi-State and Illinois Resident Classes defined below for Precor's breach of express and implied warranty and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, the materially similar laws of other states, and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §1332, as amended in 2005 by the Class Action Fairness Act.  Subject matter jurisdiction is proper because: (1) the amount in controversy in this class action exceeds five million dollars, exclusive of interest and costs; and (2) a substantial number of the members of the proposed class are citizens of a state different from that of Defendant.

2

7.     Venue is proper in this District under 28 U.S.C. §1391(b)(2) and (3).  Defendant conducts substantial business in this District, including conduct directed at members of the Class, such as the promotion, sale and marketing of its products, sufficient to subject Defendant to the jurisdiction of this Court.  The events and conduct giving rise to the violations of law in this action constitute interstate commerce, and a significant portion thereof occurred in this District.

## PARTIES

8.     Plaintiff Gary Mednick is an individual consumer and resident of the State of Illinois. On or about October 20, 2013, Plaintiff purchased a Precor Model 9.23 Treadmill from The Great Escape/Chicago Home Fitness ("Chicago Home Fitness"), an authorized third-party retailer for Precor, at Chicago Home Fitness's Mundelein, Illinois location.

9.     Defendant Precor is a corporation formed under the laws of the State of Washington, with its principal office located at 20031 142nd Ave NE, Woodinville, WA 98072. Precor researches, develops and markets a variety of personal and commercial fitness equipment throughout North America, including the equipment identified in paragraph 14 below.

## FACTUAL ALLEGATIONS

10.     Millions of consumers purchase cardio equipment to exercise from the convenience of home. Precor, generally considered a premium brand, caters directly to this market, declaring that it "designs and builds premium fitness equipment for effective workouts that feel smooth and natural . . . for nearly three decades, we've driven fitness forward with a passionate focus on ergonomic motion, proven science, and superior engineering. We constantly study and anticipate the needs of the people and organizations we serve, and continually redefine

3

the levels of innovation, quality, and service necessary to deliver the very best fitness experiences."[1]

11.     For many consumers, achieving an optimal heart rate throughout their workout session is a paramount concern.  As one prominent fitness website explains: "[w]hen losing weight and improving your cardiovascular health, it all comes down to your heart rate.  Monitoring your heart and working out within zones will enhance your overall health and physical performance."  The Mayo Clinic advises that "[i]f you like technology and care about the numbers, a heart rate monitor might be a useful device for you."  FitDay says that heart rate monitoring is "an essential part of any workout."

12.     An article on Precor's own website even describes the critical significance of staying within specific target zones while exercising:

> Heart rate training zones help reach fitness and athletic goals more efficiently.  The heart responds to exercise by altering the frequency of beats per minute according to the training intensity.  An easy way to gain full benefit from an exercise program is to establish heart rate training zones that cover the full range of heart rate responses to exercise.  Heart rate training zones bring specificity to training, whether to target improvements in general fitness or weight loss or to develop endurance, speed or power.

13.     Heart rate monitoring tools come in all shapes and sizes, from watches to chest straps to handheld grips.  Many of these devices can cost several hundred dollars.  But Precor allows the consumer the chance to avoid this separate purchase by charging a premium price for treadmills, ellipticals, bicycles, and AMTs equipped with Precor's "touch sensor heart rate" monitors, already pre-installed and incorporated in its machines.

14.     On its website, Precor advertises five treadmill models (the 9.23, 9.27, 9.31, 9.33, and 9.35), eight elliptical models (the 5.21, 5.23, 5.25, 5.31, 5.33, 5.37, 833, and 835), six

---

[1] http://www.precor.com/en-us/about-precor (last visited May 15, 2014).

stationary bicycles (the 615, 815, and 835, each coming in both upright and recumbent models), and an "Adaptive Motion Trainer" (the AMT 835), all of which incorporate touch sensor heart rate monitoring.

15.     For example, the product brochure for the 9.23 Treadmill invites the consumer to "[m]aximize your workout results with touch sensor heart rate monitoring." The owner's manual for the 9.23 model advises the consumer to "[k]now your heart rate and your physician recommended heart rate target zone," cautioning not to use the heart rate programs "until authorized by your physician." Precor makes the same statements for the 5.21 elliptical, representing that the heart rate monitoring feature can safely be used and relied upon in accordance with a physician's advised activity level and approved heart rate target range. Similarly, the specifications for the AMT 835 tout its "[h]andheld heart rate sensors located on fixed handlebars for increased accuracy and ease of use by exercisers of all sizes," and the owner's manual for the 815 upright bicycle provides the user instructions "to ensure an accurate heart rate readout."

16.     This feature is designed to permit users to maintain a heart rate within their "target zone," maximizing results and ensuring safe use. For this reason, Precor advises that users keep their "physician-recommended target heart rate zone" in mind when utilizing the heart rate monitoring features. Precor represents that the "[t]ouch rate heart sensors" offer "increased accuracy and ease-of-use by users of all sizes."

17.     Precor consistently touts its products' touch sensor heart rate monitoring technology in advertisements, product brochures, and on its website and the websites of authorized dealers (including Chicago Home Fitness):

5







409061.1





18.     Precor's touch sensor technology, if functioning correctly and as represented, should "measure[] a person's heart rate by registering the small electrical signals carried across the surface of a person's skin each time his or her heart contracts," measuring the signal "at the surface of the skin by electrodes embedded in the hand grips."

19.     In reality, however, Precor's heart rate technology is plagued with design flaws that prevent the technology from providing accurate heart rate measures, and consumers' experiences have been contrary to Precor's explicit representations.  The heart rate monitoring systems either do not always work at all or, when they do, provide consistently unreliable and erroneous readings, making Precor's representations false and misleading.

20.     Treadmills, ellipticals, and other cardio equipment incorporate heart rate monitoring systems to provide consumers with a reliable measure of their activity level and to ensure that consumers are able to maintain a level within their necessary or desired target range. As such, the manufacturer/seller's assertions as to the equipment's heart rate monitoring capability weighs heavily on the consumer's decision to make the purchase, and influences the price consumers pay for such fitness equipment.

21.     Precor knows or has reason to know that the heart rate monitoring systems incorporated in its fitness machines fail to achieve the results warranted.  To represent that these systems will allow the consumer to "[e]xercise to your target heart rate" is deceptive, misleading, and fraudulent.

22.     Precor misrepresented its heart rate monitoring technology with the intent and purpose of inducing consumers to purchase its fitness equipment, made numerous material omissions in its literature, and uniformly withheld important information relating to the design, reliability, and performance of its heart rate monitoring technology.

8

23.     Despite the fact that Precor knew its heart rate technology was defective and would not perform as advertised, warranted, or otherwise expressly represented, Defendant continued to sell the product to the public without correction.

24.     Defendant continues to conceal from the public the fact that its heart rate monitoring technology is defective and does not work, despite having received a number of consumer complaints related to that technology.   For example, one consumer, writing on Precor's own website, complains that he is "unable to get a heart rate reading that is anywhere near accurate; I've given up on this feature entirely."  Another consumer writes:

> The heart rate monitor feature does not work . . . [f]or example, I wear a heart rate monitor and the treadmill reads 93 after running for 20 minutes while my heart rate monitor is reading 171! I have tried the heart rate feature multiple times with no success.

Yet another writes:

> I can't seem to get the Heart Rate to measure correctly (I've only managed to have it hit 135 despite running for 12 minutes). I know this is too low because we used to have a professional treadmill at my old apartment building (we just moved out) and I used to hit 155-160.

25.     Consumer complaints also indicate that these problems are not generic to all touch sensor monitoring technology across various brands, but rather are specific to Precor's own technology:

> The heart rate monitor was another complaint that I had with the Precor. Like many cardio machines, this elliptical has s[il]ver/metal looking sensors on the railing handles. But most of the time, the sensors would not pick up my heart rate at all. The Lifefitness treadmill has the same HR monitors on the movable arms/handles, and while sometimes spotty, I've used them dozens of times and they worked GREAT in comparison to the Precor sensors.

26.     Despite its knowledge of the problem, Precor has continued to misrepresent to consumers that its heart rate monitoring systems will provide reliable results. Consumers would not have purchased Precor's fitness equipment (or paid the inflated prices charged) had they known that this was not true.

27.     Plaintiff is such a consumer.  After suffering a heart attack in 2013, Plaintiff had been advised by his physician to purchase a home exercise machine capable of monitoring his heart rate while exercising.  Plaintiff was specifically instructed by his physician that he needed to maintain his heart rate within certain parameters while exercising or risk danger to his heath. Upon receiving this advice, Plaintiff went to the marketplace to purchase exercise equipment that provided heart rate monitoring capabilities.  Prior to purchasing a Precor treadmill, Plaintiff viewed and relied on Precor's product specifications – including the specifications regarding heart rate monitoring – which played an integral part in Plaintiff's decision to purchase Precor's product over other, similar treadmills on the market.

28.     After Plaintiff purchased the Precor treadmill, Plaintiff soon learned that its heart rate monitoring feature did not work.  Plaintiff proved unable to obtain an accurate heart rate reading even after multiple attempts.

29.     On or about January 8, 2014, Plaintiff called Precor's customer helpline to complain about the issue.  Plaintiff spoke to "Rachel," who assigned him case number 58675 and transferred him to another representative, "Raymond."

30.     Raymond initially informed Plaintiff that the 9.23 treadmill could be modified for use with a chest strap, which would provide a more accurate heart rate reading.  However, in a subsequent telephone conversation shortly thereafter, Raymond informed Plaintiff that Precor was aware of problems with the heart rate monitors in the 9.23 and 9.27 treadmill models and

was working to improve those models in the future, but a chest strap would neither solve his problem nor provide a more accurate reading.  Raymond advised Plaintiff to purchase a "Polar" heart rate monitor, a product costing up to $160, out of his own pocket.

31.     After Plaintiff asked to speak with a Precor manager, "Steve" informed him that he should have tested the handgrip monitor prior to making his purchase.

32.     In or about January 2014, Plaintiff received a call from Nancy Reamy, Precor's Head of Customer Relations.  Ms. Reamy again told Plaintiff that the defective heart rate monitor was Plaintiff's own fault because he did not adequately test the handgrips.  Ms. Reamy further instructed Plaintiff to purchase a separate heart rate monitor at his own expense.

33.     Based on Plaintiff's experience, Plaintiff is informed and believes that Precor systematically rejects repeated complaints from its customers to provide a solution to the known defects in its heart rate monitoring technology.

34.      Precor has full knowledge of the deceptive and misleading nature of its product specifications and advertising materials, but has yet done nothing to compensate its customers for financial losses related to these misrepresentations, or discontinue the use of these deceptive and misleading misrepresentations in its dealings with customers or through third-party retailers.

35.     As a direct result of Precor's actions set forth herein, Plaintiff and the consumers who comprise the Classes who have purchased Precor equipment with heart rate monitoring systems have suffered injuries in fact, have been damaged and have suffered a loss of money or property for having paid thousands of dollars for a product that does not, cannot, and will not work as expected and that is worth less than what the consumer paid.

36.     Precor's misrepresentations and/or material omissions are deceptive, misleading and fraudulent, have caused consumers to purchase Precor equipment with heart rate monitoring

11

systems over other models and have caused consumers to pay more for this Precor equipment than they would have but for Precor's misrepresentations and material omissions.

## CLASS ALLEGATIONS

37.     Plaintiff brings this action on behalf of himself and those similarly situated and seeks certification of the following Class against Precor for violations of Illinois state laws and laws of other states that are materially similar to the laws of Illinois (the "Multi-State Class"):

### Multi-State Class

> All persons who purchased a Precor fitness machine equipped with a touch sensor heart rate monitor from either Precor or a third-party retailer who are residents of Illinois, Arkansas, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Hawaii, Idaho, Maine, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York; North Dakota, Oklahoma, Oregon, Rhode Island, South Dakota, Virginia, Vermont, Washington, West Virginia, and Wisconsin. Excluded from the Class are defendant herein, and any person, firm, trust, corporation, or other entity related to or affiliated with defendants, including, without limitation, persons who are directors of Precor. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

38.     In the alternative, Plaintiff brings this action on behalf of himself and all other similarly situated Illinois-resident purchasers of Precor products with heart rate monitoring systems and seeks certification of the following Class (the "Illinois Resident Class"):

### Illinois Resident Class

> All Illinois residents who purchased a Precor fitness machine equipped with a touch sensor heart rate monitor from either Precor or a third-party retailer. Excluded from the Class are defendant herein, and any person, firm, trust, corporation, or other entity related to or affiliated with defendants, including, without limitation, persons who are directors of Precor. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

409061.1

39.     Each Class is composed of no fewer than thousands of persons nationwide and is sufficiently numerous for class treatment.  The joinder of all Class members individually in one action would be impracticable, and the disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

40.     Plaintiff's claims are typical of the claims of each Class, and Plaintiff has no interests adverse to the interests of other members of the Classes.

41.     This dispute raises questions of law and fact that are common to all Class members.  Those common questions predominate over questions that arise on an individual basis for Class members.  The common questions of law and fact include, without limitation:

(a)     Whether Precor's representations, omissions and conduct regarding the marketing and sale of its products with heart rate monitoring systems were misleading or false;

(b)     Whether Precor engaged in deception in its marketing and sale of products with heart rate monitoring systems;

(c)     Whether Precor's representations, omissions and conduct regarding products with heart rate monitoring systems were likely to deceive consumers;

(d)     Whether Plaintiff and the Class members were deceived by Defendants' representations, omissions and conduct regarding the Precor products with heart rate monitoring systems;

(e)     Whether Precor violated the laws alleged herein;

(f)     Whether the members of the Class have been injured by Precor's conduct;

(g)     Whether the members of the Class have sustained damages and are

13

entitled to restitution as a result of Precor's wrongdoing and, if so, what is the proper measure and appropriate formula to be applied in determining such damages and restitution, and;

(h)     Whether the members of the Class are entitled to injunctive relief.

42.     Plaintiff will fairly and adequately represent the Classes and has retained counsel experienced and competent in the prosecution of consumer and class action litigation. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

43.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy. A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would engender. Class treatment also will permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein. If a Class action is not permitted, Class members will continue to suffer losses and Precor's misconduct will continue without proper remedy.

44.     Precor has acted and refused to act on grounds generally applicable to each Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

**COUNT I**
**Violation of the Illinois Consumer Fraud and**
**Deceptive Business Practices Act and Materially Similar State Laws**

45.     Plaintiff adopts and incorporates by reference paragraphs 1 through 36 as if fully set forth herein.

46.    Plaintiff brings this Count individually and on behalf of the other members of the Multi-State and Illinois Resident Classes defined above.

47.    The Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2) prohibits unfair or deceptive acts or practices in connection with any trade or commerce, including, among other things, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact,…whether any person has in fact been misled, deceived, or damaged thereby." The Act also prohibits suppliers from representing that their goods are of a particular quality or grade that they are not.

48.    Defendant's misrepresentations and material omissions constitute unfair competition or unfair, unconscionable, deceptive, fraudulent or unlawful acts or business practices in violation of the Act and the following State consumer protection statutes, which are materially similar to the Act: Arkansas (Ark. Code § 4-88-101, *et seq.*); California (Cal. Bus. & Prof. Code § 17200, *et seq.* and Cal. Civil Code § 1750, *et seq.*); Colorado (Colo. Rev. Stat. § 6-1-101, *et seq.*); Connecticut (Conn. Gen. Stat. § 42-110, *et seq.*); Delaware (Del. Code tit. 6, § 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et seq.*); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); Montana (Mo. Code. § 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. § 59-1601, *et seq.*); Nevada (Nev. Rev. Stat. § 598.0915, *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); North

Dakota (N.D. Cent. Code § 51-15-01, *et seq*.); Oklahoma (Okla. Stat. tit. 15 § 751, *et seq*.);
Oregon (Or. Rev. Stat. § 646.605, *et seq*.); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq*.);
South Dakota (S.D. Code Laws § 37-24-1, *et seq*.); Virginia (VA Code § 59.1-196, *et seq*.);
Vermont (Vt. Stat. tit. 9, § 2451, *et seq*.); Washington (Wash. Rev. Code § 19.86.010, *et seq*.);
West Virginia (W. Va. Code § 46A-6-101, *et seq*.); and Wisconsin (Wis. Stat. § 100.18, *et seq*.).

49.     Defendant's deceptive or unfair practices took place in the course of trade and
commerce.

50.     Defendant intended for Plaintiff and the Classes to rely on these deceptive and
unfair practices when Plaintiff and the Classes purchased a Precor product with a heart rate
monitoring system.

51.     Plaintiff and the Class have suffered injuries in fact and actual damages, including
financial losses resulting from overpayment for Precor products with heart rate monitoring
systems due to Defendant's violations of the Act and the materially similar consumer fraud laws
of other states, as alleged herein. These injuries are of the type that the above State consumer
protection statutes were designed to prevent and are the direct and proximate result of
Defendant's unlawful conduct.

## COUNT II
## Breach of Express Warranty

52.     Plaintiff adopts and incorporates by reference paragraphs 1 through 36 as if fully
set forth herein.

53.     Plaintiff brings this Count individually and on behalf of the members of the
Multi-State and Illinois Resident Classes defined above.

409061.1

54. As alleged herein, Defendant expressly warranted through advertisements, online marketing and product packaging and labeling that the heart rate monitoring systems on its products would provide an accurate reading of the user's heart rate.

55. Defendant's warranties were expressly disclosed to Plaintiff and members of the Classes in advertisements, promotional materials, product packaging and owner's manuals. Plaintiff and members of the Classes purchased Precor products with heart rate monitoring systems based upon the above-said express warranties, relying on the truthfulness of the express warranties asserted by Defendant in deciding to purchase these products.

56. Defendant expressly warranted its goods to the ultimate consumers and the express warranties were the basis of the bargain.

57. Defendant breached its express warranties by selling a product that either does not work or does not provide an accurate reading of the user's heart rate.

58. As a direct and proximate result of Defendant's breach of its express warranties, Plaintiff and the members of the Classes have been injured because: (a) they would not have purchased Precor products with heart rate monitoring systems on the same terms if the true facts concerning those systems' actual abilities to accurately monitor a user's heart rate had been known; (b) they paid a price premium due to Precor's misrepresentation of the products' abilities to accurately monitor a user's heart rate; and (c) the Precor products do not accurately monitor a user's heart rate as promised.

### COUNT III
**Breach of Implied Warranty of Merchantability**

59. Plaintiff adopts and incorporates by reference paragraphs 1 through 36 as if fully set forth herein.

17

60.     Plaintiff brings this Count individually and on behalf of the members of the Multi-State and Illinois Resident Classes defined above.

61.     Defendant, as the designer, manufacturer, marketer, distributor and/or seller, impliedly warranted through advertisements and online marketing that Precor products with heart rate monitoring systems were fit for their intended purpose in that those products would provide an accurate reading of a user's heart rate.  Defendant did so with the intent to induce Plaintiff and members of the Classes to purchase these products.

62.     Defendant breached its implied warranties in the contract for the sale of Precor products with heart rate monitoring systems in that the products could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description and the goods were unfit for their intended and ordinary purpose.  As a result, Plaintiff and the members of the Classes did not receive the goods as impliedly warranted by Defendant to be merchantable.

63.     In reliance upon Defendant's skill and judgment and the implied warranties discussed above, Plaintiff and the members of the Classes purchased Precor products with heart rate monitoring systems in order to accurately monitor their heart rates while exercising.

64.     The Precor products were not altered by Plaintiff or members of the Classes.

65.     The Precor products were defective when they left Defendant's exclusive control.

66.     Defendant knew that its products would be purchased and used without additional testing for efficacy by Plaintiff and the members of the Classes.

67.     The Precor products were defectively designed and unfit for their intended purpose.  Plaintiff and members of the Classes did not receive the goods as warranted.

409061.1

68.     Plaintiff and the members of the Classes were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased Precor products with heart rate monitoring systems on the same terms if the true facts concerning those systems' actual abilities to accurately monitor a user's heart rate had been known; (b) they paid a price premium due to the misrepresentation of the Precor products' abilities to accurately monitor a user's heart rate; and (c) the Precor products do not accurately monitor a user's heart rate as promised.

### COUNT IV
### Violation of the Magnuson-Moss Warranty Act
### (On Behalf of the Class)

69.     Plaintiff adopts and incorporates by reference paragraphs 1 through 36 above as if fully set forth herein.

70.     Plaintiff brings this cause of action individually and on behalf of the members of the Class against Precor.

71.     Precor fitness machines equipped with touch sensor heart rate monitors are consumer products as defined in 15 U.S.C. § 2301(1).

72.     Plaintiff and the Class members are consumers as defined in 15 U.S.C. § 2301(3).

73.     Precor is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

74.     In connection with the sale of its fitness machines with touch sensor heart rate monitors, Precor issued written warranties as defined in 15 U.S.C. § 2301(6) by making the express representations and warranties described herein.

75.     These Precor fitness machines with touch sensor heart rate monitors do not conform to the express warranties regarding the monitors' accuracy because each of the express

19

warranties is false, misleading, and unsubstantiated, and there is no competent reliable evidence supporting any of those statements.

76.     By reason of Precor's breach of warranties, Precor violated the statutory rights due to Plaintiff and the Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, thereby damaging Plaintiff and the Class members.

77.     Affording Precor a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. At the time Precor sold these fitness machines with touch sensor heart rate monitors, Precor should have known, or was reckless in not knowing, of its misrepresentations concerning the monitors accuracy and reliability, but nonetheless failed to rectify the situation and/or disclose these defects.  Under these circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirements that Plaintiff resort to an informal dispute resolution procedure and/or afford Precor a reasonable opportunity to cure its breach of warranties are excused and thereby deemed satisfied.

78.     Plaintiff and the Class members were injured as a direct and proximate result of Precor's breach because they would not have purchased these fitness machines with touch sensor heart rate monitors if the true facts had been known.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests the following relief:

(a)     Declaring that this action is properly maintainable as a class action and certifying plaintiff as a Class representative;

(b)     Enjoining Precor from engaging in the wrongful conduct alleged herein;

409061.1

(c)     Awarding compensatory damages to Plaintiff and members of the Class

and treble, multiple, disgorgement, punitive or other damages;

(d)     Awarding pre-judgment and post-judgment interest;

(e)     Awarding attorney fees, expenses, and costs, and;

(f)     Providing such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all

claims so triable.


Dated: May 16, 2014                          Respectfully submitted,

                                             GARY MEDNICK, individually and on behalf of
                                             all others similarly situated


                                   By:      */s/ Katrina Carroll*
                                             One of the Attorneys for Plaintiff
                                             And the Putative Class

Katrina Carroll (Bar ID No. 6291405)
*kcarroll@litedepalma.com*
Kyle A. Shamberg (Bar ID No. 6300832)
*kshamberg@litedepalma.com*
**LITE DEPALMA GREENBERG, LLC**
CHICAGO OFFICE
211 West Wacker Drive
Suite 500
Chicago, IL 60606
312.750.1265

Richard R. Gordon
*richard.gordon@gordonlawchicago.com*
**Gordon Law Offices, Ltd.**
211 West Wacker Drive
Suite 500
Chicago, Illinois 60606
312.332.5200
Fax: 312.236.7727

409061.1

Bar ID No. 6277551

*Attorneys for Plaintiff*