**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

_____

GARY MEDNICK, individually and on )
behalf of all others similarly situated, )
                                    )     Case No. 1:14-cv-03624
           Plaintiff, )    CONSOLIDATED ACTION
                                    )
    v. )    Hon. Harry D. Leinenweber
PRECOR INC., a Delaware corporation, )
                                    )    Magistrate Judge Daniel G. Martin
           Defendant. )
_____ )
STEVEN BAYER, individually and on )
behalf of all others similarly situated, )
                                    )
           Plaintiff, )
                                    )
    v. )
                                      )
PRECOR INC., a Delaware corporation, )
                                    )
           Defendant. )
_____ )

---

**PLAINTIFFS' OMNIBUS MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S
MOTIONS TO STRIKE AND DISMISS**

---

Katrina Carroll, Esq.
*kcarroll@litedepalma.com*
Kyle A. Shamberg, Esq.
*kshamberg@litedepalma.com*
**LITE DEPALMA GREENBERG, LLC**
Chicago Office
211 W. Wacker Drive, Suite 500
Chicago, Illinois 60606
312.750.1265

Joseph J. Siprut
*jsiprut@siprut.com*
Matthew D. Savin
*msavin@siprut.com*
**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000

Richard R. Gordon
*richard.gordon@gordonlawchicago.com*
**GORDON LAW OFFICES, LTD.**
211 West Wacker Drive
Suite 500
Chicago, Illinois 60606
312.236.5200

*Counsel for Plaintiffs and the Putative Class*

## TABLES OF CONTENTS

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS .....................................................................................................2

ARGUMENT ..........................................................................................................................7

    I.     BOTH PLAINTIFFS HAVE ARTICLE III STANDING .......................................7

        A.  Rule 12(b)(1) Standard Governing Precor's Standing Challenges ...................7

        B.  Plaintiffs Unquestionably Have Standing to Assert Claims Based on The
            Precor Products They Purchased .....................................................................7

        C.  Plaintiffs Have Standing to Assert Claims Based on All Precor Exercise
            Machines Incorporating Touch Sensors .........................................................8

            1.  Plaintiffs' Claims are Based on Precor's Uniform Marketing Strategy
                Concerning Touch Sensors ....................................................................8

            2.  The Weight of Authority Finds Standing in Cases Involving Common
                Misrepresentations ...............................................................................10

            3.  The Factual Issues Raised By Precor Are More Properly Decided At the
                Class Certification Stage, After Discovery is Had....................................12

        D.  Mednick Has Standing; Precor's Pre-suit Offer Does Not Moot Mednick's
            Claims .........................................................................................................13

    II.    PLAINTIFFS' CLAIMS ARE ADEQUATELY PLED .......................................17

        A.  Rule 12(b)(6) Standard Governing Sufficiency of Plaintiffs' Complaints ......17

        B.  Plaintiffs Adequately State Claims for Consumer Fraud Under the ICFA; If
            the Court Finds Any Claim Insufficiently Particularized, It Should Give
            Plaintiffs Leave to Amend ............................................................................18

        C.  Plaintiffs' Warranty Claims Should Stand.....................................................19

            1.  Plaintiffs' Express Warranty Claims Are Sufficiently Detailed and are not
                Puffery...................................................................................................19

            2.  Plaintiffs' Implied Warranty Claims Do Not Require Privity; Even if They
                Do, Plaintiffs Have Sufficiently Pled Privity...........................................20

       3.   Plaintiffs' MMWA Claims Should Not be Dismissed...............................21

III.     PRECOR'S MOTION TO STRIKE SHOULD BE DENIED; PLAINTIFFS' MULTI-STATE CLASS ALLEGATIONS ARE SUFFICIENT .........................25

    A.  Rule 12(f)(1) Standard Governing Precor's Motion to Strike ........................25

    B.  Plaintiffs' ICFA Claims May Be Brought on Behalf of a Multi-State Class...26

    C.  Plaintiffs' Claims for Breach of Express and Implied Warranties are Appropriate for Multi-State Class Allegations .................................................26

    D.  Bayer's Magnuson-Moss Claims May Be Brought as a Multi-State Class; Precor Does Not Challenge Mednick's Multi-State MMWA Claim...............27

CONCLUSION.........................................................................................................................28

## <u>TABLES OF AUTHORITIES</u>

*Ackerman v. Northwestern Mut. Life Ins. Co.*,
　　172 F.3d 467 (7th Cir. 1999) ............................................................................18

*Agrarian Grain Co., Inc. v. Meeker*,
　　526 N.E.2d 1189 (Ind. Ct. App. 1988) ...................................................... 23-24

*Ahdoot v. Babolat*,
　　2013 U.S. Dist. LEXIS 182331 (C.D. Cal. Sept. 6, 2013)...............................11

*Alberti v. Gen. Motors Corp.*,
　　600 F. Supp. 1026 (D.D.C. 1985) ...................................................................24

*Alexander v. United States*,
　　721 F.3d 418 (7th Cir. 2013) ...........................................................................17

*Anderson v. Jamba Juice Co.*,
　　888 F. Supp. 2d 1000 (N.D. Cal. 2012) ..........................................................11

*Bates v. William Chevrolet/Geo, Inc.*,
　　337 Ill. App. 3d 151 (Ill. App. Ct. 2003) ...................................................15, 16

*Blount v. Stroud*,
　　395 Ill. App. 3d 8 (Ill. App. Ct. 2009) .............................................................16

*Boatwright v. Walgreen Co.*,
　　2011 U.S. Dist. LEXIS 22102 (N.D. Ill. Mar. 4, 2011)...................................25

*Brown v. Hain Celestial Grp., Inc.*,
　　913 F. Supp. 2d 881 (N.D. Cal. 2012) .......................................................11, 13

*Burke v. Weight Watchers Int'l, Inc.*,
　　983 F. Supp. 2d 478 (D.N.J. 2013) .................................................................12

*Church of the Nativity of our Lord v. Watpro, Inc.*,
　　491 N.W.2d 1 (Minn. Ct. App. 1992)...............................................................23

*Crest Container Corp. v. R.H. Bishop Co.*,
　　445 N.E.2d 19 (Ill. App. Ct. 1982) .................................................................21

*Damasco v. Clearwire Corp.*,
　　662 F.3d 891 (7th Cir. 2011) ...........................................................................15

*Davidson v. Kimberly-Clark Corp.*,
　　2014 U.S. Dist. LEXIS 110055 (N.D. Cal. August 8, 2014).......................11, 13

iii

*Federal Trade Comm'n v. U.S. Sales Corp.*,
    785 F.Supp. 737 (N.D. Ill. 1992) ...................................................................................20

*Foman v. Davis*,
    371 U.S. 178 (1962)..........................................................................................................19

*Galoski v. Stanley Black & Decker*,
    2014 U.S. Dist. LEXIS 113945 (N.D. Ohio Aug. 14, 2014) ..................................... *passim*

*Greisz v. Household Bank, N.A.*,
    176 F.3d 1012 (7th Cir. 1999) .........................................................................................13

*Gulf Oil Corp. v. Federal Trade Commission*,
    150 F.2d 106 (5th Cir. 1945) ...........................................................................................20

*Holstein v. City of Chicago*,
    29 F.3d 1145 (7th Cir. 1994) ...........................................................................................15

*Ibarrola v. Kind, LLC*,
    2014 U.S. Dist. LEXIS 95833 (N.D. Ill. July 14, 2014)..............................................2, 13

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig'n*,
    155 F. Supp. 2d 1069 (S.D. Ind. 2001) ...........................................................................21

*In re ConAgra Foods Inc.*,
    908 F. Supp. 2d 1090 (C.D. Cal. 2012) ...........................................................................27

*In re Frito-Lay N. Am., Inc.*,
    2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. Aug. 29, 2013)...............................................11

*In re Rhone-Poulenc Rorer Inc.*,
    51 F.3d 1293 (7th Cir. 1995) ...........................................................................................25

*Ivanhoe Fin., Inc. v. Highland Banc Corp*,
    2005 U.S. Dist. LEXIS 12886 (N.D. Ill. June 9, 2005) ...................................................18

*Jones v. William Buick, Inc.*,
    337 Ill. App. 3d 339 (Ill. App. Ct. 2003) ...................................................................15, 16

*Kaplan v. Shure Bros.*,
    153 F.3d 413 (7th Cir. 1998) ...........................................................................................21

*Karpowicz v. GMC*,
    1997 U.S. Dist. LEXIS 7478 (N.D. Ill. May 22, 1997) ...................................................25

iv

*Kuzian v. Electrolux Home Products, Inc.*,
    937 F. Supp. 2d 599 (D.N.J. March 28, 2013) ................................................................ 12

*Lady Di Fishing Team, LLC v. Brunswick Corp.*,
    2007 U.S. Dist. LEXIS 80097 (M.D. Fla. 2007) ............................................................ 21

*Lieberson v. Johnson & Johnson Consumer Cos.*,
    865 F. Supp. 2d 529 (D.N.J. 2011) ................................................................................. 12

*Mac's Eggs, Inc. v. Rite-Way Agri Distribs.*,
    656 F. Supp. 720 (N.D. Ind. 1986) ................................................................................. 21

*Maldonado v. Creative Woodworking Concepts. Inc.*,
    230 Ill.Dec. 743 (1998) ........................................................................................... 24, 25

*Mirfasihi v. Fleet Mortg. Corp.*,
    450 F.3d 745 (7th Cir. 2006) .......................................................................................... 25

*Mosiman v. BMW Fin. Servs. NA*,
    321 Ill. App. 3d 386 (Ill. App. Ct. 2001) ....................................................................... 18

*Muehlbauer v. Gen. Motors Corp.*,
    431 F. Supp. 2d 847 (N.D. Ill. 2006) .............................................................................. 26

*Pack v. Damon Corp.*,
    434 F.3d 810 (6th Cir. 2006) .......................................................................................... 21

*P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.*,
    345 Ill.App.3d 992 (Ill. App. Ct. 2004) ......................................................................... 26

*Purcell & Wardrope Chartered v. Hertz Corp.*,
    530 N.E.2d 994 (Ill. App. Ct. 1988) .......................................................................... 26, 27

*Quinn v. Walgreen Co.*,
    958 F. Supp. 2d 533 (S.D.N.Y. 2013) ....................................................................... 11, 13

*Rand v. Monsanto Co.*,
    926 F.2d 596 (7th Cir. 1991) ..................................................................................... 14, 15

*Robinson v. Toyota Motor Credit Corp.*,
    201 I11.2d 403 (2002) ..................................................................................................... 18

*Rohlfing v. Manor Care, Inc.*,
    172 F.R.D. 330 (N.D. Ill. 1997) ..................................................................................... 18

*Sadowski v. Med1 Online, LLC*,
    2008 U.S. Dist. LEXIS 41766 (N.D. Ill. May 27, 2008) ...................................................18

*Saltzman v. Pella Corp*,
    257 F.R.D. 471 (N.D. Ill. 2009)..........................................................................................26

*Scanlon v. Eisenberg*,
    669 F.3d 838 (7th Cir. 2012) ...............................................................................................7

*Scott v. Blue Springs Ford Sales, Inc.*,
    215 S.W.3d 145 (Mo. Ct. App. 2006)..................................................................................23

*Stella v. LVMH Perfumes & Cosmetics USA, Inc.*,
    564 F. Supp. 2d 833 (N.D. Ill. 2008) ..................................................................................23

*Stewart v. Smart Balance, Inc.*,
    2012 U.S. Dist. LEXIS 138454 (D.N.J. June 25, 2012) .....................................................12

*Szabo v. Bridgeport Machs., Inc.*,
    249 F.3d 672 (7th Cir. 2001) ..............................................................................................27

*United States ex rel. Lusby v. Rolls-Royce Corp.*,
    570 F.3d 849 (7th Cir. 2009) ..............................................................................................17

*Wilson v. Price*,
    624 F.3d 389 (7th Cir. 2010) ..............................................................................................17

*Wright v. Brooke Group Ltd.*,
    114 F. Supp. 2d 797 (N.D. Iowa 2000).................................................................................24

## RULES & STATUTES

Fed.R.Civ.P. 8(a)(2).................................................................................................................17

Fed. R. Civ. P. 12(b)(1)..............................................................................................................7

Fed.R.Civ.P. 15(a)(2)................................................................................................................19

Rule 12(b)(6)..............................................................................................................................17

815 ILCS 505/2..........................................................................................................................14

Plaintiffs Gary Mednick and Steven Bayer ("Plaintiffs") respectfully submit this Omnibus Memorandum of Law in Opposition to the Motions of Defendant Precor Incorporated ("Precor") to Strike and Dismiss Plaintiffs' Complaints.

## INTRODUCTION

Plaintiffs' claims in this class action are simple: Precor falsely and misleadingly markets *nineteen* fitness machines in its product line, *all* equipped with Touch Sensors. Precor's Sensors are supposed to accurately monitor the user's heart rate during exercise. But Precor knows that they do not. Still, despite Precor's knowledge and specific *admissions* in this case that the Touch Sensors simply do not work, Precor concertedly touts the Sensors' capabilities and encourages consumers to purchase Precor machines over the machines of its competitors.

In its separate motions to dismiss, Precor does not even attempt to justify or explain away its misrepresentations concerning the Touch Sensors. Instead, under the guise of Article III standing, Precor engages in an exercise in obfuscation to distract the Court from the real issues. Despite the fact that this case is in its infancy, Precor injects extraneous facts into the record that purport to show various technical differences in each of its products and then demands that Plaintiffs come forward with evidence to address these issues as a prerequisite to showing standing. Precor's evidentiary demands just confirm that such factual argument is better suited to a developed record, in the context of class certification. It is totally inappropriate now.

At this early stage, the focus of the inquiry is not on the various exercise machines in Precor's line but rather the way in which Precor marketed and sold its Touch Sensors across all product lines. If the Touch Sensors were marketed uniformly, then Plaintiffs have standing to proceed on behalf of the class they have defined. Contrary to what Precor would have this Court believe, the overwhelming weight of authority agrees: putative class representatives can and

should represent purchasers of different products, even ones that they did not buy, so long as the products were marketed consistently. That is precisely the case here. In fact, just last month, Judge Ellis held in a case involving this exact issue that factual considerations concerning the scope of the class can, and should, await proper class certification proceedings. *Ibarrola v. Kind, LLC,* 2014 U.S. Dist. LEXIS 95833, at *17-18 (N.D. Ill. July 14, 2014) (Ellis, J.). This Court should reach the same conclusion.

Precor's other standing argument, that Mednick's case is moot because Precor made Mednick an oral refund offer prior to his filing suit, may be easily discounted. As Precor knows, in order to moot a plaintiff's claim, a defendant must offer a plaintiff the *maximum* relief a plaintiff could hope to recover. Despite knowing that Mednick was intent on filing a class action, Precor's oral offer did not even come close. Mednick has a live case or controversy against Precor and his claims are not moot.

Precor's other arguments relate to the sufficiency of the various claims asserted and the multi-state classes Plaintiffs seek to represent. As detailed herein, all of Plaintiffs' claims are legally sufficient and this case should proceed in discovery.

## **STATEMENT OF FACTS**

Precor holds itself out as a leading designer and manufacturer of premium, state-of-the-art fitness equipment that "sets the standard for quality, innovation and performance." Bayer Compl. ¶1. One of the cutting-edge features of Precor's fitness equipment is the "Touch Sensor," which enables users to grip a sensor on the machine to receive an accurate reading of their heart rate. According to Precor, the Touch Sensors use the conductivity of the salt in the user's perspiration to convey heart rate information to the receiver within the machine. Touch Sensors are found on *nineteen machines* in Precor's product line, including 5 treadmills, 7

ellipticals, 6 bicycles and an "Adaptive Motion Trainer." Bayer Compl. ¶3; Mednick Compl. ¶14.[1]  Consumers pay premium prices to Precor, a premium brand, in exchange for exercise machines equipped with Touch Sensors.  Bayer Compl. ¶3.

***Precor's Standardized Marketing of Machines Equipped with Touch Sensors***

Precor touts the capabilities of its Touch Sensors on nineteen fitness machines in the exact same way.  Bayer Compl. ¶¶13, 14; Mednick Compl. ¶¶ 14-16.  The company warrants and advertises that Touch Sensors provide the user with accurate and reliable heart rate results because the Sensors are able to measure electrical signals in the user's skin.  Bayer Compl. ¶¶ 2, 13; Mednick Compl. ¶¶2, 3. Precor makes these standardized representations on its website, in its product brochures and in the owners' manuals accompanying its machines.[2]

On its website, Precor advertises that its Touch Sensors "*instantly* analyze your heart rate when you enter your age and weight," and the Smartrate feature "helps you stay in your fat burn, cardio or peak target zone for a more efficient cardio and weight-loss workout."[3]  These claims are blanket statements by Precor in the "Heart Rate Monitoring" section of its site, and in making them, Precor does not delineate between different machines or explain why its statements apply more or less to any particular machine.

Even when tethered to a particular machine, Precor's brochures repeat the same standard representations concerning the Touch Sensors.  For example, the 9.23 Treadmill brochure invites

---

[1] Plaintiffs incorrectly pled that Touch Sensors are found on twenty Precor machines. As Precor points out, the 5.31 model elliptical does not have Touch Sensors.  For purposes of this motion, this fact is immaterial. If this matter proceeds to class certification, Plaintiffs will revise their class definition accordingly.

[2] Because Precor includes evidence outside the record to support its standing challenges, Plaintiffs submit their own evidence solely to rebut those challenges and to confirm that this case should proceed to discovery.

[3] http://www.precor.com/en-us/heart-rate-monitoring (last visited, August 26, 2014) (emphasis added).

the consumer to "[m]aximize your workout results with touch sensor heart rate monitoring," and implicit in this statement is the representation that the Touch Sensors actually work.[4]  This *exact same* statement also appears in the brochures for the 9.27, 9.33, and 9.35 treadmills, as well as those for the 5.21, 5.23, 5.25, 5.33, and 5.37 ellipticals.[5]  The product brochure for the AMT 835 states that the "rodeo grip has a heart rate sensor *built-in* that provides monitoring."[6]  The UBK 815 upright bike brochure describes "custom-designed handlebars with *integrated touch heart rate* for maximum comfort and efficient workout experience."[7]

There is absolutely no difference between Precor's marketing of the Touch Sensors in its highest end elliptical machine, the 5.37 model, and its most economical treadmill, the 9.23 model purchased by Plaintiffs, both of which offer "touch sensor [ ] heart rate monitoring."[8]  In both instances – and for every machine fitted with Touch Sensors – Precor represents that the equipment "*instantly* displays heart rate," allowing the user to "stay in fat burn, cardio or peak target zone for a more efficient cardio and weight loss workout."[9][10]

Precor's owner's manuals confirm its standard representations concerning the Touch

---

[4] *See* Exhibit A.

[5] *See* Exhibits B-I.

[6] *See* Exhibit J.

[7] *See* Exhibit K. (Emphasis added).

[8] *Compare* Exhibit A *with* Exhibit I.

[9]       *Compare*   http://www.precor.com/en-us/home/products/efx-537-elliptical-fitness-crosstrainer#specs_tab   *with*   http://www.precor.com/en-us/home/products/treadmills/927-treadmill   *and*   http://www.precor.com/en-us/home/products/rbk-615-recumbent-bike-253   (all making same representation with respect to Smartrate).

[10] Precor's statements concerning the Touch Sensors are standard, regardless of whether or not a particular machine also comes "equipped with" a wireless heart rate *receiver,* which is to be used in conjunction with a *chest strap.* Precor tries to show that models equipped with the receiver show significant differences in its product line, but Precor fails to disclose that the vast majority of the machines "equipped with" the receiver *do not actually come with the required chest strap.* *See generally* https://www.precor.com/en-us/home (last visited, August 26, 2014) (no chest strap included with 5.21. 5.23. 5.25, 5.33, 833, and 835 model ellipticals; the 615, 815, and 835 upright and stationary bicycles; and the AMT 835).

Sensors. The owner's manuals for the 9.23. 9.27, 9.33, and 9.35 treadmill models advise the consumer to "[k]now your heart rate and your physician recommended heart rate target zone," cautioning not to use Precor's heart rate programs "until authorized by your physician."[11] Precor makes the *same* representations in the owner's manuals for the 5.21, 5.23, 5.25, 5.33, and 5.37 ellipticals,[12] with the implication being, of course, that the Touch Sensors work and can safely be used. Similarly, the specifications for the AMT 835 tout its *"[h]andheld heart rate sensors* located on fixed handlebars for *increased accuracy* and ease of use by exercisers of all sizes," and the owner's manual for the 815 upright bicycle provides the user instructions "to ensure an accurate heart rate readout."

In reality, Precor knows and has known that the Touch Sensors are rife with design defects that result in faulty, unreliable or even nonexistent heart rate readings because the Sensors are incapable of properly conveying heart rate information to the fitness machine. Mednick Compl. ¶4; Bayer Compl. ¶¶2, 16. Despite this knowledge, Precor continues to make false representations and warranties about the Touch Sensors in order to fraudulently capitalize on the consumer market. Mednick Compl. ¶3, Bayer Compl. ¶2. Precor has ignored *thousands* of consumer complaints from its customers about these known defects. Mednick Compl. ¶33; Bayer Compl. ¶¶3, 18.

***Plaintiffs' Experiences***

Plaintiff Gary Mednick suffered a heart attack in 2013. Mednick Compl. ¶27. As part of his recovery, Mednick's physician ordered him to engage in a cardiovascular exercise regimen that involved monitoring his heart rate. *Id*. Mednick was specifically instructed that his failure to maintain his heart rate within certain parameters would pose a danger to his health. *Id*. Based

---

[11] *See* Exhibits L-O.
[12] *See* Exhibits P-S.

on this, Mednick wanted to buy exercise equipment that provided heart rate monitoring capabilities in line with his medical needs. *Id.* On October 20, 2013, he purchased a Precor Model 9.23 Treadmill. *Id.*, ¶8. Prior to his purchase, Mednick relied upon Precor's product specifications, including specifications regarding Precor's Touch Sensors, which played an integral role in his purchase decision. *Id.*, ¶27. Soon after, Mednick became aware that the Touch Sensors on his machine did not work. *Id.*, ¶28.

When Mednick complained, Precor made various *admissions*, which confirm Precor's knowledge of the defect and concerted failure to provide the class a meaningful remedy:

- Precor *admitted* that Precor *knew* its Touch Sensors did not work. *Id.*, ¶¶29, 30.

- Precor *admitted* that because the Touch Sensors did not work, Mednick could only hope to achieve more accurate and reliable heart rate results if he purchased a separate monitor. *Id.*

- Precor *admitted* that a Precor brand chest strap would not provide any more accuracy. *Id.*, ¶¶4, 30.

- Precor *admitted* that its Touch Sensor problems are widespread, affecting other Precor machines in addition to the model treadmill Mednick purchased. *Id.*, ¶30.

Like Mednick, Plaintiff Steven Bayer similarly purchased a Precor treadmill after viewing and relying upon Precor's advertisements and warranties regarding the capabilities of Precor's Touch Sensors. Bayer Compl. ¶7. Just like Mednick, the heart rate monitoring system on Bayer's treadmill has consistently failed. Bayer Compl. ¶8. Neither Plaintiff would have purchased Precor fitness machines or paid the prices they paid had they known of the defect. Mednick Compl. ¶¶26-27; Bayer Compl. ¶19. To date, Precor continues to misrepresent and deceive the marketplace with respect to the Touch Sensors incorporated across its product line.[13]

---

[13] For no apparent purpose, Precor puts certain disclaimer language before the Court (Mednick Mem. at 4), supposedly contained in Precor's current version of the owner's manual that purports to advise the consumer of various circumstances which will make the Touch Sensors not work.

Mednick Compl. ¶34.

## ARGUMENT

### I. BOTH PLAINTIFFS HAVE ARTICLE III STANDING

#### A. Rule 12(b)(1) Standard Governing Precor's Standing Challenges

Precor's standing arguments are subject to Fed. R. Civ. P. 12(b)(1), in which the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *See Scanlon v. Eisenberg*, 669 F.3d 838, 841-42 (7th Cir. 2012). Here, though cast as a jurisdictional attack under Rule 12(b)(1), Precor does not really challenge Plaintiffs' standing. Instead, Precor tries to inappropriately narrow the scope of the class as defined by Plaintiffs. Precor's Rule 23-like typicality attacks can be easily discounted.

#### B. Plaintiffs Unquestionably Have Standing to Assert Claims Based on The Precor Products They Purchased

Each Plaintiff indisputably purchased a Precor machine equipped with Touch Sensors and alleges that he suffered economic harm as a result of misrepresentations made by Precor concerning the Touch Sensors on his Precor machine. With the exception of the "refund" issue as to Mednick, addressed below, *there is no dispute that each Plaintiff has Article III standing to pursue his claims and the claims of the class as applied to his particular Precor product*. As shown below, Plaintiffs also have standing to represent a class of consumers similarly harmed in their purchases of other Precor products equipped with Touch Sensors.

---

*This disclaimer does not appear in Mednick's owner's manual*. *See* Affidavit of Gary Mednick (attached hereto as Exhibit T), ¶¶15-17 and Exhs. A-B thereto. The fact that Precor found it necessary to add a more extensive disclaimer in subsequent versions of its owner's manuals is evidence of Precor's knowledge of the Touch Sensor defect and supports Plaintiffs' consumer fraud claims. In any event, the circumstances surrounding Precor's changing disclaimer should be the subject of discovery.

### C. Plaintiffs Have Standing to Assert Claims Based on All Precor Exercise Machines Incorporating Touch Sensors

#### 1. Plaintiffs' Claims are Based on Precor's Uniform Marketing Strategy Concerning Touch Sensors

Using extrinsic evidence, Precor mounts a fact-laden standing attack (akin to a typicality attack on class certification), arguing that neither Plaintiff has standing to bring claims relating to fitness machines he did not purchase because of the unique characteristics of each particular machine. Mednick Mem. 8-11; Bayer Mem. 7-10. The Court need not concern itself with these technical intricacies now.

Precor ignores that, although its various machines may differ, its Touch Sensors do not. There is nothing before the Court demonstrating that the *Sensors themselves* vary so differently from machine to machine that Plaintiffs do not have standing. And, as illustrated in the Statement of Facts herein, Precor's misrepresentations regarding the efficacy of its Touch Sensors are *identical* for nineteen machines in its product line, have an *identical* affect on the prospective purchaser, and ultimately result in *identical* harm when the systems fail to perform as advertised.

Though Precor attempts to manufacture purported differences among its machines via the Declaration of Tormay Brown, Precor's Director of Electrical Engineering, these technical issues have little if anything to do with Precor's overarching marketing scheme. Nothing Precor puts before the Court alters Plaintiffs' basic point: whether the product at issue is a treadmill, elliptical machine, stationary bike, or AMT, Precor makes the *same* representations with respect to the *same* Touch Sensors. Though Precor now claims, in response to this lawsuit, that treadmills present unique challenges in accurately reading a user's heart rate, Precor *never* divulged any such challenges to consumers, in fact advertising that the Touch Sensors on its

treadmills *would* provide accurate results. And though it claims the component heart rate modules on its products are manufactured by three different suppliers with differing proprietary software, Precor does not explain how or why they differ or what effect, if any, these differences would have on the Touch Sensors' functionality or accuracy.

By way of illustration, Mednick's owner's manual explains that the Touch Sensors work by detecting the user's heart rate and transmitting that signal, through the conductivity of the salt in the user's perspiration, to the receiver within the display console. *See* Exhibit T (Mednick Aff.), at Exhibit B thereto. If the Sensors themselves share a common defect because they cannot properly detect and transmit the user's heart rate to the component receiver, the inner workings of the module's algorithms are completely immaterial. Plaintiffs should be able to take discovery on this issue.

Precor also tries to convince the Court that one of the chief distinctions between Plaintiffs' treadmills and its other machines is that the other machines also have wireless heart rate monitoring receivers. This has nothing whatsoever to do with the functioning of the Touch Sensors, which in every case Precor warrants as capable of providing an accurate heart rate reading separate and aside from the wireless system.[14] Moreover, Precor does not bother to tell the Court that, in order for the wireless system to work, the user must separately purchase a chest strap at their own expense in order to gain any benefit from this added feature.[15] But, if the machine is used as sold and represented by Precor (without the strap), the Touch Sensors are

---

[14] *See, e.g.,* Exhibit L (owner's manual for the 9.23 treadmill) at p. 13 ("Heart rate and SmartRate® features are available when you grasp both touch-sensitive handrail grips **or** wear a chest strap") (emphasis added); Exhibit R (owner's manual for the 5.33 elliptical) at p. 13 ("Heart rate and SmartRate® features are available when you wear the chest strap **or** grasp both touch-sensitive handrail grips") (emphasis added).

[15] Even this added benefit is questionable, however, given Precor's *admission* to Mednick that a chest strap would not provide any more accurate results than its Touch Sensors do. Mednick Compl. ¶30.

supposed to be enough to provide accurate results. Clearly, they are not.

### 2. The Weight of Authority Finds Standing in Cases Involving Common Misrepresentations

In the context of consumer fraud cases involving various products, contrary to what Precor says, courts have not "uniformly" or even "generally" held that Plaintiffs have no standing relating to unpurchased products. Mednick Mem. at 8; Bayer Mem. at 7. In fact, numerous courts have found standing across large product lines and, just weeks ago, Judge Nugent of the Northern District of Ohio denied a defendant's motion to dismiss premised chiefly on the exact arguments Precor makes here. *See Galoski v. Stanley Black & Decker*, 2014 U.S. Dist. LEXIS 113945, at *11-12 (N.D. Ohio Aug. 14, 2014),

*Galoski* involved Defendant Black & Decker's marketing and sale of many models of electronic pest repellers that, according to the plaintiff, "do not repel pests" (like the Touch Sensors here that do not work). *Id*. at *2. The plaintiff focused on Black & Decker's uniform marketing strategy for "*all* electronic pest control devices" in the product line, and in her complaint, she described the product she purchased, "the mechanism by which the product claims to work, and the advertising claims made on the product packaging and in the user manuals available on line." *Id*. at *8. The court found that these allegations were sufficient to confer standing, state legal claims (including a fraud claim subject to the heightened pleading requirement of Rule 9(b)), and merit denial of Black & Decker's motion to dismiss. *Id*. at *11-12.

Just like Precor, Black & Decker did not argue that the plaintiff had no standing with respect to the product she bought. Instead, Black & Decker argued that the plaintiff did not have standing with respect to all of the products in Black & Decker's electronic pest repeller line. The court recognized that Black & Decker's standing challenge was really an attempt to limit the

class definition: a typicality attack in disguise. In easily disposing of this argument, the court held that:

> It is clear that, taking the facts as alleged in the Complaint, Ms. Galoski has alleged that each class member has suffered the same harm from the same defect and/or same misrepresentation present in each and every model number and version of the electronic pest repellants manufactured and/or marketed by the Defendant in this case. *She alleges that the product, in any form, simply does not and cannot do what it claims to do, regardless of the size, strength, or packaging differences within the product line.* The claims and allegations are uniform across the product line and would, if the facts alleged are correct, affect the purchaser of each version of this product line in exactly the same manner, regardless of which model number they purchased.

*Galoski*, 2014 U.S. Dist. LEXIS 113945, at *11-12 (emphasis added).

*Galoski* is squarely in line with many consumer fraud cases denying motions to dismiss for lack of standing when plaintiffs allege a uniform marketing strategy that transcends specific products. *See e.g.*, *Davidson v. Kimberly-Clark Corp.*, 2014 U.S. Dist. LEXIS 110055, at *18 (N.D. Cal. August 8, 2014) ("In general, courts permit plaintiffs to bring claims regarding products they did not purchase where 'common misrepresentations are the crux of [the plaintiff's] case.'") (*quoting Brown v. Hain Celestial Grp., Inc.,* 913 F. Supp. 2d 881, 892 (N.D. Cal. 2012)).[16]

Against this backdrop, Precor's cases are outliers. Standing was denied in *Ahdoot v. Babolat*, 2013 U.S. Dist. LEXIS 182331 (C.D. Cal. Sept. 6, 2013), because of "significant"

---

[16] *See also Anderson v. Jamba Juice Co.,* 888 F. Supp. 2d 1000, 1005-06 (N.D. Cal. 2012) (holding plaintiff had standing to challenge the "All-Natural" labeling on *all* of defendant's at-home smoothie kits, despite having personally purchased only 3 of the 7 applicable products, because "the same alleged misrepresentation was on all of the smoothie kit[s]"); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 542 (S.D.N.Y. 2013) ("there are substantial similarities between all of defendants' Glucosamine Supplements, and the alleged misrepresentations on the labels of the Glucosamine Supplements are nearly identical"); *In re Frito-Lay N. Am., Inc.*, 2013 U.S. Dist. LEXIS 123824, at *41 (E.D.N.Y. Aug. 29, 2013) ("because the plaintiffs have Article III standing, at this stage, they may press claims, on behalf of putative class members, arising out of products that the plaintiffs did not themselves purchase").

differences between the product plaintiff purchased, a tennis racquet, and the other racquets in the line, which varied greatly by size, weight, and composition. *Id.* at *11. But in that case, plaintiff's fraud claim *rested* on defendant's alleged misrepresentations *as to the size, weight, and composition* of the racquets. *Id.* Here, the differences in product lines have no bearing on the misrepresentation of the Touch Sensors.

Similarly, district courts sitting in New Jersey in the past three years have virtually abandoned the approach in *Lieberson v. Johnson & Johnson Consumer Cos*., 865 F. Supp. 2d 529 (D.N.J. 2011). Consistent with *Galoski* and all of Plaintiff's other authorities, two courts since *Lieberson* have found standing across product lines where a standard marketing strategy exists. *See, e.g., Burke v. Weight Watchers Int'l, Inc.*, 983 F. Supp. 2d 478, 482 (D.N.J. 2013); *Stewart v. Smart Balance, Inc*., 2012 U.S. Dist. LEXIS 138454, at *47 (D.N.J. June 25, 2012).

All of these cases confirm that Plaintiffs have standing to pursue claims on behalf of consumers who purchased any Precor machine equipped with Touch Sensors, the real product at issue here.

### 3. The Factual Issues Raised By Precor Are More Properly Decided At the Class Certification Stage, After Discovery is Had

To the extent the Court finds subtle differences between the various Precor machines are remotely relevant, issues relating to product line standing are best determined at the class certification stage, after discovery, when the typicality and adequacy of the named Plaintiffs to represent the class will be more fully developed. *Kuzian v. Electrolux Home Products, Inc*., 937 F. Supp. 2d 599, 610 (D.N.J. March 28, 2013).

Permitting discovery would comport with Precor's unreasonable demands that Plaintiffs come forward with technical evidence to prove their standing across Precor's product line. Mednick Mem. 8-11; Bayer Mem. 7-10. This is the approach endorsed by the vast majority of

courts, including this District, addressing standing in the class context. *See, e.g., Ibarrola,* 2014 U.S. Dist. LEXIS 95833, at *17-18 (declining to rule on standing to sue for products not purchased because class certification had not been developed).[17]

### D. Mednick Has Standing; Precor's Pre-suit Offer Does Not Moot Mednick's Claims

Apart from its general standing challenges, Precor challenges Mednick's specific standing based on an oral refund offer Precor made to Mednick prior to Mednick filing this case. Mednick Mem. 7-8. But, as Precor admits, in order to moot an individual claim, the defendant must offer the plaintiff the *maximum* relief that the plaintiff could have gotten at trial-- the "equivalent of a *default judgment*." *Greisz v. Household Bank, N.A.*, 176 F.3d 1012, 1015 (7th Cir. 1999) (emphasis added). An offer that does not provide for damages, costs and fees, the Seventh Circuit holds, is *not* the equivalent of a default judgment and cannot moot the case. *Id.*

According to Precor, the refund offer was made during a call Mednick had with Precor customer service representative Nancy Reamy. Ms. Reamy says that Mednick was "offered a full refund" (Reamy Aff., ¶9) and her contemporaneous notes state that Precor offered Mednick a refund of the "*purchase cost* of the treadmill" (Reamy Aff., Ex. 1). Neither Ms. Reamy's Affidavit nor her notes say that Precor offered Mednick anything other than the "purchase cost," and neither document specifies what Precor deemed the "purchase cost" of the treadmill to be.

Precor even admits that its offer to refund the "purchase cost" was not a full offer. Ms. Reamy's statement that "[i]f Mednick had accepted the offer, Precor *would have* picked up the machine at his home" is speculative and not contained anywhere in her notes, which purportedly memorialize her conversation with Mednick. Reamy Aff., ¶13 (emphasis added). Now that

---

[17] *See also, Davidson,* 2014 U.S. Dist. LEXIS 110055, at *21; *Galoski*, 2014 U.S. Dist. LEXIS 113945, at *12; *Quinn,* 958 F. Supp. 2d at 542; *Brown*, 913 F. Supp. 2d at 891.

Mednick has filed suit, it is not surprising that Precor says now it *would have* picked up his treadmill at its expense. At any rate, Precor's belated transportation offer confirms that transportation was not part of Precor's original "purchase cost" offer. The fact that Precor now finds its necessary to say that Precor *would have* included the cost of transporting the treadmill confirms that that offer to refund the "purchase cost" was incomplete at the time it was made.

After having made its incomplete, oral offer, and even though Ms. Reamy admits that Precor *knew* that Mednick was intent on filing a class action (Reamy Aff., ¶7 ), Precor did not take any further action to memorialize its offer by providing any further details to Mednick (concerning transportation or anything else). As Mednick attests in his Affidavit, Precor did not bother to make good on its refund offer by tendering him a check. Exhibit T, ¶11. Nor did Precor's oral offer contain any provision for injunctive relief, attorneys' fees, punitive damages or litigation costs, all of which are sought by Mednick's various claims in this lawsuit. *See* Mednick Compl., Prayer (seeking injunction; compensatory damages and "treble, multiple, disgorgement, punitive or other damages"; "pre-judgment and post judgment interest"; "attorney fees, expenses, and costs."); Exhibit T, ¶10.

With respect to his claim under the Magnuson Moss Warranty Act, if he prevails, Mednick may be entitled to damages, injunctive relief, costs and attorneys' fees. *See* 15 USC § 2310(d)(2). Similarly, with respect to his claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 (the "ICFA"), claims, Mednick may be entitled to all of these forms of relief, as well as punitive damages. If this Court finds that *any* of these forms of relief are available to Mednick, his claims are not moot.

This case is not remotely like those relied on by Precor, which, unlike here, all involve extensive offers of *complete* relief made by defendants *after* plaintiff filed suit. *See Rand v.*

*Monsanto Co.*, 926 F.2d 596, 597 (7th Cir. 1991) (defendant offered the full amount of damages plaintiff set forth in answers to interrogatories, plus costs of suit); *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994) (post-litigation offer for all damages owed; plaintiff did not contest that the offer was inadequate). Far beyond the oral pre-litigation offer here, the post-litigation offer in *Damasco*, memorialized in writing, provided for maximum statutory relief, court costs *and an agreement by defendant for injunctive relief*, providing that defendant would "stop sending unsolicited text messages to 'mobile subscribers.'" *Damasco v. Clearwire Corp.*, 662 F.3d 891, 893 (7th Cir. 2011). Precor's failure to offer injunctive relief and costs to Mednick – standing alone – is sufficient to distinguish *Damasco* and Precor's other authorities.[18]

Apart from injunctive relief and costs, two Illinois Appellate Courts hold that even a *pre-litigation* tender of maximum relief in a ICFA matter *must* include statutorily recoverable attorney fees, which Precor did not offer Mednick. *Jones v. William Buick, Inc.*, 337 Ill. App. 3d 339 (Ill. App. Ct. 2003); *Bates v. William Chevrolet/Geo, Inc.*, 337 Ill. App. 3d 151, 162 (Ill. App. Ct. 2003) (finding that refund of down payment was not a refund of the "full amount" owed because it did not include CFA attorneys fees).

*Jones* is far more instructive on the facts here than any of Precor's inapposite cases. In that case, plaintiff Jones purchased a car from a dealership and made a down payment of $500, the balance to be financed. 785 N.E. 2d at 911. Jones lost her job shortly thereafter, and the lender withdrew its offer to finance the car. *Id*. Upon learning this, Jones returned the car and demanded the return of her down payment. *Id*. The dealer *sent Jones a refund check* for the down payment (which plaintiff did not accept). Even though she had already received her refund

---

[18]Precor cannot attempt to make an additional offer to Mednick now because Mednick has complied fully with the procedure prescribed by *Damasco* and has been diligently pursuing class certification from the first day he filed this case. *Damasco*, 662 F.3d at 896.

check, Jones filed a lawsuit making claims under the Illinois CFA and for common law fraud.

The trial court dismissed her claims as moot, agreeing with the dealer that the refund of the down payment eliminated Jones' injury. *Id*. The Appellate Court reversed. In doing so, the court held that because Jones had filed her claim under the Illinois CFA she was entitled to statutory attorneys' fees, and the dealer's $500 tender therefore did not represent the full amount of relief requested. *Id*. at 913. The Appellate Court's ruling in *Bates* is squarely in line with this holding.[19] *Bates v. William Chevrolet/Geo, Inc.*, 337 Ill. App. 3d 151 (Ill. App. Ct. 2003) (rejecting defendant's pre-suit tender argument because it did not include CFA prescribed attorneys fees).

Apart from attorneys' fees, the ICFA permits Mednick to seek punitive damages, which could easily exceed the amount offered to Mednick. *See Blount v. Stroud*, 395 Ill. App. 3d 8, 23 (Ill. App. Ct. 2009). Because Mednick may ultimately be entitled to an award of punitive damages, Precor's incomplete pre-suit offer, which failed to provide for such damages did *not* offer him *maximum* statutory relief and therefore cannot moot his claim. *Bates*, 337 Ill. App. 3d at 161-162 (despite pre-suit tender, jury award of compensatory and punitive damages affirmed on appeal).

Here, as Precor *admits* in Ms. Reamy's Affidavit, Precor was on notice that Mednick was going to litigate this matter and that he intended to pursue his claims individually and on behalf of a class. Reamy Aff, ¶ 7. Despite knowing this, Precor did nothing to effectuate its oral offer: it did not find it necessary to put its offer in writing; it did not make any tender by sending Mednick a check for his damages; it did not offer costs and attorneys fees; nor did it offer

---

[19] *See also Deposit Guaranty*, 445 U.S. at 333 (where defendants did not tender attorneys fees, plaintiffs "retained an economic interest in class certification" and case was not moot).

injunctive relief. As such, Precor never offered Mednick everything he could recover in this lawsuit and, therefore, Mednick's individual claims are not moot.

## II. PLAINTIFFS' CLAIMS ARE ADEQUATELY PLED

### A. Rule 12(b)(6) Standard Governing Sufficiency of Plaintiffs' Complaints

To survive a Rule 12(b)(6) motion, a complaint need only comply with Fed.R.Civ.P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff is "*not* required to include detailed factual allegations." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013 (emphasis added). Rather, "allegations must plausibly suggest that the plaintiff has a right to relief." *Wilson v. Price*, 624 F.3d 389, 391-392 (7th Cir. 2010). In evaluating a motion to dismiss under Rule 12(b)(6), the Court "construe[s] the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Wilson*, 624 F.3d at 391. Dismissal is proper *only* "if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Wilson*, 624 F.3d at 392.

Even to the extent Plaintiffs need to go beyond the short and plain statement required by Rule 8 (here, only with respect to the deception claim under the Illinois Consumer Fraud Act), Rule 9(b)'s heightened pleading standard does not require that Plaintiffs plead proof of fraud. *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009). As detailed below, all of Plaintiffs' claims are amply detailed, fulfill the requisite pleading requirements and are sufficient to survive the instant motion to dismiss.

**B. Plaintiffs Adequately State Claims for Consumer Fraud Under the ICFA; If the Court Finds Any Claim Insufficiently Particularized, It Should Give Plaintiffs Leave to Amend**

Precor makes a throwaway argument that Plaintiffs' ICFA claims are insufficiently particularized and thus do not meet Rule 9(b). Not so.

First, Precor fails to comprehend that Plaintiffs' claim under the ICFA is two fold: it alleges both an unfair practice and a deception claim. Mednick Compl. ¶¶48-50; Bayer Compl. ¶¶32-33, 35-36. Plaintiffs' unfair practice claim is not subject to the heightened pleading standards of Rule 9(b), *Sadowski v. Med1 Online, LLC*, 2008 U.S. Dist. LEXIS 41766, at *20 (N.D. Ill. May 27, 2008), and is premised on Precor's sales and marketing of the Touch Sensors in a manner that causes "substantial injury to consumers," a recognized criteria sufficient to state such a claim. *Robinson v. Toyota Motor Credit Corp.*, 201 I11.2d 403, 417-18 (2002). Precor does not challenge this, and thus Plaintiffs' unfairness claim should stand and the ICFA claims should proceed, even without considering Plaintiffs' ICFA claim for deceptive practices. *Mosiman v. BMW Fin. Servs. NA*, 321 Ill. App. 3d 386, 390 (Ill. App. Ct. 2001) (holding that a plaintiff may allege that a practice is unfair without alleging that it is also deceptive).

But the Court should consider Plaintiffs' ICFA deceptive practices claims too. To satisfy Rule 9(b), a plaintiff need only allege the "who," "what," "where," "when," and "how" of the alleged fraud. *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). So long as a complaint's averments are sufficiently specific as to "'provide the defendants with a general outline of how the alleged fraud scheme operated and of their purported role in the scheme,'" the requirements of Rule 9(b) are met. *Ivanhoe Fin., Inc. v. Highland Banc Corp*, 2005 U.S. Dist. LEXIS 12886, at *9 (N.D. Ill. June 9, 2005) (quoting *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 347 (N.D. Ill. 1997)).

18

Far from a basic general outline, Plaintiffs have provided highly particularized allegations to substantiate their deception claims, as Plaintiffs: (1) detail the representations claimed to be false (that the Touch Sensors are capable of accurately monitoring the user's heart rate) and Precor's material omissions in failing to disclose that the Touch Sensors were defective; (2) identify Precor as the speaker for the representations; (3) identify how and when Precor conveyed the misrepresentations and omissions to Plaintiffs and other consumers (via statements online, in brochures and in owner's manuals); (4) make specific allegations of *admissions* to Mednick confirming Precor's knowledge of its misrepresentations and the falsity of Precor's misrepresentations; and (5) allege that they relied on those misrepresentations.  Nothing more is required to meet Rule 9(b). *See Galoski*, 2014 U.S. Dist. LEXIS 113945, at *13-14 (finding fraud claim adequately pled because "[t]he Complaint clearly states the representation claimed to be false (electronic ultrasound repels pests), the entity that allegedly made the representation (the Defendant), how that was conveyed to the Plaintiff (via representations printed on the product packaging), when the representation was made (when the representations were displayed to the public), and her reliance on those representations (she bought the product to repel pests)").

To the extent the Court finds Plaintiffs' ICFA claims (or any other claims) insufficiently particularized, Plaintiffs ask that the Court not dismiss any claim with prejudice, but rather grant Plaintiffs leave to amend in accordance with Fed.R.Civ.P. 15(a)(2).  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### C.  Plaintiffs' Warranty Claims Should Stand

#### 1.  Plaintiffs' Express Warranty Claims Are Sufficiently Detailed and are not Puffery

Precor asserts that Plaintiffs have not set forth specific warranties or representations concerning the Touch Sensors sufficient to make express, implied and MMWA warranty claims.

19

Not true.  Each Complaint provides a wealth of detail of specific representations concerning the Touch Sensors' ability to instantly and accurately provide reliable heart rate monitoring results. Mednick Compl. ¶¶15-17, 21; Bayer Compl. ¶¶2, 14.  Precor also issued specific product warranties for its fitness machines, warranting "all new Precor products to be free from defects in materials and manufacture" for the warranty period (generally 5 or 10 years for "parts and wear items" and 1 year for labor).  *See* Exhibits L-S.

These highly specific representations and warranties are not mere "puffery." Even if they were, "[w]hile a seller has some latitude in 'puffing' his goods, he is *not* authorized to misrepresent them *or to assign to them benefits or virtues they do not possess*." *Gulf Oil Corp. v. Federal Trade Commission,* 150 F.2d 106, 109 (5th Cir. 1945) (emphasis added).

In any event, whether or not statements are "puffery" are issues for the finder-of-fact to contemplate, deciding the "overall, net impression made by the advertisement in determining what messages may reasonably be ascribed to it." *Federal Trade Comm'n v. U.S. Sales Corp.*, 785 F.Supp. 737, 745 (N.D. Ill. 1992) (citations and internal quotation marks omitted). The critical question is whether the "ads would be likely to mislead reasonable consumers." *Id.*  At the very least, a question of fact exists here as to whether a reasonable consumer could be expected to rely on Precor's statements and warranties concerning the Touch Sensors.  This issue of fact merits denial of Precor's motion.

### 2. Plaintiffs' Implied Warranty Claims Do Not Require Privity; Even if They Do, Plaintiffs Have Sufficiently Pled Privity

Precor also asserts that Plaintiffs' implied warranty claims fail for lack of privity but fails to inform the Court that *Illinois has applicable exceptions to the privity requirement*: "privity is not required when the remote manufacturer knows 'the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those

requirements.'" *Crest Container Corp. v. R.H. Bishop Co.*, 445 N.E.2d 19, 25 (Ill. App. Ct. 1982).[20] The relationship between Precor, Plaintiffs and the class satisfies these exceptions to privity and defeats Precor's motion to dismiss the implied warranty count.

Even if privity were required, Plaintiffs allege that Precor *directly* made all of the applicable representations and warranties concerning the Touch Sensors and that it was Precor's deceptive labeling, marketing and advertising campaign that successfully caused Plaintiffs to purchase the Precor products. Precor even acts as an informational clearinghouse by providing potential customers with information on its products through its own website. Those allegations, which this Court is required to accept as true, are sufficient for Plaintiffs to proceed on their warranty claims in discovery, as many courts have held. *Lady Di Fishing Team, LLC v. Brunswick Corp.*, 2007 U.S. Dist. LEXIS 80097, at *24 (M.D. Fla. 2007); *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig'n*, 155 F. Supp. 2d 1069, 1112 (S.D. Ind. 2001); *Mac's Eggs, Inc. v. Rite-Way Agri Distribs.*, 656 F. Supp. 720, 728 (N.D. Ind. 1986); *Kaplan v. Shure Bros.*, 153 F.3d 413, 419 (7th Cir. 1998) (breach of contract claim sufficient where allegations put defendant on notice of claim of privity).

### 3. Plaintiffs' MMWA Claims Should Not be Dismissed

With respect to Mednick, Precor argues only that Mednick's Magnuson Moss claim should be dismissed because Precor offered him a refund. For the same reasons as articulated above, Precor did not offer Mednick full relief because the MMWA permits a Plaintiff to get injunctive relief, costs and attorneys' fees, and his claim is not moot. *Precor has not challenged*

---

[20] The nationwide trend in the law, as recognized, for example, by the Sixth Circuit, is toward rejecting the privity requirement in consumer cases like this one. *See Pack v. Damon Corp.*, 434 F.3d 810, 819 (6th Cir. 2006) ("the trend of authorities . . . [is] that a consumer can sue a manufacturer directly for economic loss resulting from a defect in a product attributable to the manufacturer").

*the merits of Mednick's MMWA claim, and that claim should proceed.*

With respect to Bayer's MMWA claim, Precor argues that Bayer has not adequately alleged an actionable express or implied warranty, has not alleged privity, and has not given notice to Precor of its breach. Bayer Mem. at 12-13. Each of these arguments may be summarily discounted.

A consumer may bring suit under the MMWA against any supplier, warrantor, or service contractor who fails to comply with an obligation under a *written warranty* or service contract. *See* 15 U.S.C. § 2310(d)(1) (emphasis added). Under the Act, a written warranty is:

> (A) Any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time; or

> (B) Any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking.

15 U.S.C. § 2301.

Here, for example, the product specifications for the 5.33 Elliptical include the following: "Warranty: 10 years parts and wear items; 1 year labor." Mednick Compl. at ¶ 17. Indeed, the product manuals for each machine in Precor's Touch Sensor product line contain express warranties for parts and wear and labor, including a "5 year parts and wear" and "1 year labor" warranty for the 9.23 treadmill Plaintiffs purchased.[21] The manuals even expressly state: "Precor Incorporated warrants all new Precor products to be free from defects in materials and manufacture for the warranty period."[22] Clearly, then, these statements constitute specific, actionable, written warranties under the MMWA's definition of a written warranty as a

---

[21] *See* Exhibits L-S.
[22] *Id.*

"promise[] that such material or workmanship will be defect free…" 15 U.S.C. § 2301(a). Accordingly, Plaintiffs have adequately stated claims for breach of warranty.

With respect to Precor's privity argument and contrary to what Precor would have this Court believe, *there is no requirement under the MMWA that the consumer demonstrate privity with the supplier and/or warrantor to bring an express warranty claim. See* 15 U.S.C. § 2301(6); *see also In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 958 (N.D. Ill. 2007) ("A written warranty as defined under the MMWA does not require privity")). Even if privity were required for Bayer's implied warranty MMWA claim, as explained above with respect to Precor's implied warranties, Bayer's allegations at this procedural stage as to privity are sufficient to survive Precor's motion to dismiss.

Precor's notice argument – that Bayer had an obligation to provide Precor notice and a reasonable opportunity to cure the defect under the MMWA, 15 U.S.C. § 2304(b), is wrong for four reasons.

First, *Mednick provided actual, pre-suit notice to Precor*, as is confirmed and documented by Ms. Reamy's Affidavit. Precor was unquestionably on notice of Plaintiffs' claims and did nothing to address them. Given Precor's receipt of *actual* notice through Mednick, Bayer was not required to give his own notice to Precor.

Second, the notice requirement does not apply if the manufacturer knew of the defect at the time of sale. *See Stella v. LVMH Perfumes & Cosmetics USA, Inc.*, 564 F. Supp. 2d 833, 837 (N.D. Ill. 2008) ("Direct notice is not required [if] the seller has actual knowledge of the defect of the particular product").[23] Here, Plaintiffs allege that Precor had *actual* knowledge of the

---

[23] *See also, Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145 (Mo. Ct. App. 2006); *Church of the Nativity of our Lord v. Watpro, Inc.*, 491 N.W.2d 1, 5 (Minn. Ct. App. 1992); *Agrarian*

defect: it made an admission to Mednick that it knew its Touch Sensors did not work, in Mednick's machine and in other fitness machines. Plaintiffs also allege that Precor was aware of a multitude of consumer complaints related to the Touch Sensors, and yet continued to misrepresent that such technology would provide accurate and reliable results. Mednick Compl., ¶ 24-26. As set forth in fn13 *supra*, Precor has also injected evidence into the record showing that it saw fit to change its disclaimer language concerning the Sensors over time. This is additional evidence of Precor's actual knowledge of the Touch Sensors' defect. Taken together, all these facts obviate any obligation for the Plaintiffs to afford Precor a reasonable opportunity to cure the defect in its Touch Sensors.

Third, even if there is a notice requirement, a defendant must show that the plaintiff's failure to provide notice caused defendant some prejudice. *Wright v. Brooke Group Ltd.*, 114 F. Supp. 2d 797, 830 (N.D. Iowa 2000) ("it is clear to this court that the defendants were not prejudiced by the lack of notice"). There is no conceivable way that Precor can make any such showing, given its pre-suit interactions with Mednick. Knowing that Mednick was going to file a class action, Precor could have offered to fully compensate its consumers, but instead chose instead to make a half-hearted attempt to buy Mednick off. Precor was given the opportunity to make things right, but it did not. Precor certainly did not suffer any prejudice because of lost opportunity.

Fourth, above all, even if the Court has any doubt with respect to the sufficiency of Bayer's notice, such issues are typically so fact-intense that they should not be resolved as a matter of law, on a motion to dismiss. *Maldonado v. Creative Woodworking Concepts. Inc.*, 230

---

*Grain Co., Inc. v. Meeker*, 526 N.E.2d 1189, 1193 (Ind. Ct. App. 1988); *Alberti v. Gen. Motors Corp.*, 600 F. Supp. 1026 (D.D.C. 1985).

Ill.Dec. 743, 748 (1998).  All of Plaintiffs' warranty claims, including their MMWA claims, are legally sufficient and should proceed in discovery.

### III.  PRECOR'S MOTION TO STRIKE SHOULD BE DENIED; PLAINTIFFS' MULTI-STATE CLASS ALLEGATIONS ARE SUFFICIENT

#### A. Rule 12(f)(1) Standard Governing Precor's Motion to Strike

Precor's motion to strike Plaintiff's class allegations is governed by federal Rule 12(f), which permits the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Rule 12(f) simply does not apply here.  There is nothing redundant, immaterial, impertinent or scandalous about Plaintiff's multi-state class allegations and thus, no legal basis on which to strike any of them. *See Galoski*, 2014 U.S. Dist. LEXIS 113945, at \*3-4; *see also Boatwright v. Walgreen Co.,* 2011 U.S. Dist. LEXIS 22102, at \*2 (N.D. Ill. Mar. 4, 2011); *Karpowicz v. GMC*, 1997 U.S. Dist. LEXIS 7478, at \*9 (N.D. Ill. May 22, 1997).

Precor's request of this Court to strike Mednick's class allegations is yet another thinly-veiled class certification attack. Mednick Mem. at 11; Bayer Mem. at 10-12.  The sufficiency of class allegations should be confronted at the certification stage, *not* on a motion to dismiss. *See e.g. Mirfasihi v. Fleet Mortg. Corp.,* 450 F.3d 745, 750 (7th Cir. 2006) ("choice-of-law issues in nationwide class actions are rarely so uncomplicated that one can delineate clear winning and losing arguments at an early stage in the litigation") *(citing In re Rhone-Poulenc Rorer Inc.,* 51 F.3d 1293, 1300-03 (7th Cir. 1995)).

Though Precor (prematurely) makes its position on class certification clear now- that a multi-state class is unmanageable because of "material differences" in state laws- manageability is not a valid ground to strike Plaintiffs' pleadings, especially since Precor never explains why these so-called "material differences" are important at this stage.  They are not, as courts

25

routinely find even *nationwide* class allegations for claims of unjust enrichment, implied warranty of merchantability and statutory consumer fraud sufficient to pass muster. *See Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847 (N.D. Ill. 2006). This Court should reach the same result.

### B. Plaintiffs' ICFA Claims May Be Brought on Behalf of a Multi-State Class

After discovery is allowed to proceed and the parties develop a record on class certification, the Court may reach the same conclusion as other courts, including those sitting in this District, that have *certified* claims under the ICFA (and materially similar state laws) on behalf of multi-state classes. *See, e.g., Saltzman v. Pella Corp*, 257 F.R.D. 471, 480 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010) ("courts have permitted named plaintiffs to represent class members from other states in which the representatives did not reside or make purchases."); *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.*, 345 Ill.App.3d 992, 1003 (Ill. App. Ct. 2004) ("that some class members reside outside Illinois or that the laws of different states may apply to the transactions at issue does not ordinarily prevent certification of the class").

### C. Plaintiffs' Claims for Breach of Express and Implied Warranties are Appropriate for Multi-State Class Allegations

As with any cause of action, some courts have elected not to ultimately certify some warranty claims brought on behalf of a multi-state class, but again, these conclusions were reached after class certification was developed. The dispositive question is whether the factual and legal differences among the class members will make a multi-class or group of subclasses unmanageable. This determination is case-specific, and can only be made after such differences are sufficiently developed through the process of discovery. *See Purcell & Wardrope Chartered v. Hertz Corp.*, 530 N.E.2d 994, 998 (Ill. App. Ct. 1988). As the court aptly noted in *Purcell*:

> [E]ven questions…concerning whether the laws of different states

26

> apply to the various transactions will not ordinarily prevent the certification of a class action proceeding. *A class action may, nevertheless, still be maintained, despite these conflicting or differing state laws, and the court may simply choose to divide the class into subclasses.* Moreover, if at some later time in the litigation, the subclassification becomes unmanageable, the court, of course, always has the option to set aside the class certification or a portion of it.

*Id.* (internal citations omitted). As with Plaintiff's ICFA claims, mere variations state law are not enough to overcome certification of a multi-state warranty class if the facts make clear that the variation is immaterial. *See e.g. In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1109 (C.D. Cal. 2012) (allowing multi-state warranty class, as plaintiffs adequately alleged element of reliance irrespective of any differences among the states with regard to that element).

Precor fails to offer any authority in support of the proposition that warranty claims are inappropriate for a multi-state class *as a matter of law*.[24] To the extent Precor contends the warranty claims at issue here are not suitable for a multi-state class, Precor will have ample opportunity to defend this position at a more appropriate stage in the proceedings. *See Purcell*, 530 N.E.2d at 998. If genuine differences become apparent on class certification, the Court could always certify state sub-classes on Plaintiffs' warranty claims as it sees fit.

### D. Bayer's Magnuson-Moss Claims May Be Brought as a Multi-State Class; Precor Does Not Challenge Mednick's Multi-State MMWA Claim

With respect to Bayer's abilities to bring a multi-state MMWA claim, as is set forth above, there is no requirement that the consumer demonstrate privity. Because the MMWA has no privity requirement for an express warranty claim, Precor's attempt to show that the MMWA

---

[24] Precor misinterprets *Szabo v. Bridgeport Machs., Inc.* in support of its contention that warranty claims are not suitable for a multi-state class. 249 F.3d 672 (7th Cir. 2001). *Szabo* denied class certification because the warranty statements at issue were made not by defendant itself but by numerous, geographically-dispersed dealers, making it "unlikely that dealers in different parts of the country said the same things to hundreds of different buyers." *Id.* at 677. Not so here, where the warranties, as well as the misrepresentations, all emanated from Precor itself.

claims "hinge" on state law is simply wrong.

In any event, even assuming privity is required for an implied warranty claim, for the reasons discussed above, Plaintiffs have adequately alleged privity with Precor. If this case proceeds and Plaintiffs develop the record further as to privity and are able to show that Precor is in privity with the entire class, they will have satisfied any applicable state law-based privity requirement.

## CONCLUSION

For all the reasons set forth herein, Plaintiffs Gary Mednick and Steven Bayer respectfully submit that the Motions of Defendant Precor Incorporated to Strike and Dismiss Plaintiffs' Complaints should be denied in their entirety.


Dated: August 27, 2014                          Respectfully submitted,

                                                */s/ Katrina Carroll*

                                                Katrina Carroll, Esq.
                                                *kcarroll@litedepalma.com*
                                                Kyle A. Shamberg, Esq.
                                                kshamberg@litedepalma.com
                                                LITE DEPALMA GREENBERG, LLC
                                                211 W. Wacker Drive
                                                Suite 500
                                                Chicago, Illinois 60606
                                                312.750.1265

                                                Joseph J. Siprut
                                                *jsiprut@siprut.com*
                                                Matthew D. Savin
                                                *msavin@siprut.com*
                                                SIPRUT PC
                                                17 N. State Street
                                                Suite 1600
                                                Chicago, Illinois  60602
                                                312.236.0000
                                                Fax: 312.267.1906

Richard R. Gordon
*richard.gordon@gordonlawchicago.com*
**GORDON LAW OFFICES, LTD.**
211 West Wacker Drive
Suite 500
Chicago, Illinois 60606
312.236.5200
Fax: 312.236.7727

*Counsel for Plaintiffs and the Putative Class*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **PLAINTIFFS' OMNIBUS MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S MOTIONS TO STRIKE AND DISMISS** was filed this 27th day of August, 2014, via the electronic filing system of the United States District Court for the Northern District of Illinois, which will automatically serve all counsel of record.

*/s/ Katrina Carroll*
Katrina Carroll

30