**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GARY MEDNICK, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:14-cv-03624 CONSOLIDATED ACTION |
| v. | ) ) ) | |
| PRECOR INC., a Delaware corporation, | ) ) | Hon. Harry D. Leinenweber |
| Defendant. | ) ) | Magistrate Judge Daniel G. Martin |
| STEVEN BAYER, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| PRECOR INC., a Delaware corporation, | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

Katrina Carroll, Esq.
*kcarroll@litedepalma.com*
Kyle A. Shamberg, Esq.
*kshamberg@litedepalma.com*
**LITE DEPALMA GREENBERG, LLC**
Chicago Office
211 W. Wacker Drive, Suite 500
Chicago, Illinois 60606
312.750.1265

Joseph J. Siprut
*jsiprut@siprut.com*
Richard L. Miller II
*rmiller@siprut.com*
Michael L. Silverman
*msilverman@siprut.com*
**SIPRUT PC**
17 North State Street, Suite 1600
Chicago, Illinois 60602
312.236.0000

Richard R. Gordon
*richard.gordon@gordonlawchicago.com*
**GORDON LAW OFFICES, LTD.**
211 West Wacker Drive, Suite 500
Chicago, Illinois 60606
312.332.5200

*Counsel for Plaintiffs and the Putative Class*

587392.1

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................1

ARGUMENT ................................................................................................................2

I.     PRECOR IMPROPERLY ARGUES THE MERITS AND ASKS THE COURT TO RESOLVE FACTUAL ISSUES IN ITS FAVOR ...............................................................2

II.    PLAINTIFFS HAVE STANDING TO PURSUE CLAIMS RELATED TO ALL OF THE EXERCISE MACHINES AT ISSUE .........................................................8

    A.    Discovery Has Shown That All Models Are Sufficiently Similar...........................8

    B.    Courts Certify Classes For Unpurchased Products Under Like Circumstances ......9

III.   THE PROPOSED CLASSES ARE ASCERTAINABLE ..................................................11

IV.   THIS CASE MEETS ALL OF THE ELEMENTS OF RULE 23 (A)...............................14

    A.    Numerosity and Adequacy are Conceded...............................................................14

    B.    Plaintiffs Are Typical Class Representatives..........................................................14

    C.    This Case Presents Numerous Common Questions Relating to the Common Touch Sensor Defect..............................................................................................18

V.    RULE 23(b)(3)'s PREDOMINANCE REQUIREMENT IS MET ..................................21

    A.    Individual Questions of Fact Do Not Predominate.................................................21

    B.    Individual Questions of Law Do Not Predominate.................................................23

        1.    Multi-State Consumer Fraud Class............................................................24

        2.    Nationwide Express Warranty Class .........................................................28

    C.    Plaintiffs' Method of Proving Class-Wide Damages Underscores the Propriety of Class Certification....................................................................................................33

VI.   PLAINTIFFS CAN PROPERLY PURSUE INJUNCTIVE RELIEF UNDER RULE 23(B)(2) .............................................................................................................34

CONCLUSION............................................................................................................35

587392.1

# **TABLE OF AUTHORITIES**

**Page(s)**

*Adair v. Sorenson*,
      134 F.R.D. 13 (D. Mass. 1991)..........................................................................8

*Affiliated Ute Citizens of Utah v. United States*,
      406 U.S. 128 (1972)........................................................................................27

*Afoa v. China Airlines Ltd.*,
      2013 U.S. Dist. LEXIS 93816 (W.D. Wash. July 3, 2013) ..............................29

*Allen v. Am. Honda Motor Co.*,
      264 F.R.D. 412 (N.D. Ill. 2009)......................................................................32

*Amchem Products, Inc. v. Windsor*,
      521 U.S. 591 (1997)..................................................................................22, 23

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
      572 F. 3d 440 (7th Cir. 2009) ..........................................................................8

*Arreola v. Godinez*,
      546 F.3d 788 (7th Cir. 2008) ..........................................................................33

*Barden v. Hurd Millwork Co.*,
      249 F.R.D. 316 (E.D. Wis. 2008) ...................................................................32

*Bd. of Mgrs. of Ocean One Condo. v. Ocean One Condo., Inc.*,
      2015 NY Misc. LEXIS 2397 (N.Y. Sup. Ct. June 16, 2015)...........................30

*Bell v. Castillo*,
      2016 U.S. Dist. LEXIS 9736 (N.D. Ill. Jan. 26, 2016) ...................................33

*Bell v. PNC Bank, N.A.*,
      800 F.3d 360 (7th Cir. 2015) ............................................................................2

*Brooks v. Remington Arms Co.*,
      2010 U.S. Dist. LEXIS 143398 (W.D. Ark. Oct. 27, 2010) ............................29

*Butler v. Sears, Roebuck & Co.*,
      727 F. 3d 796 (7th Cir. 2013) ................................................................. *passim*

*Cohen v. AM Gen. Corp.*,
      264 F. Supp. 2d 616 (N.D. Ill. 2003) ..............................................................17

*Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*,
    332 Fed. Appx. 565 (11th Cir. 2009) ...........................................................................27

*Columbia Physical Therapy, Inc. v. Benton Franklin Orthopedic Assocs.*,
    *PLLC*, 168 Wn.2d 421 (Wash. 2010) ........................................................................27

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) ..............................................................................................34

*Connick v. Suzuki Motor Co.*,
    174 Ill. 2d 482 (Ill. 1996) .............................................................................26, 27, 32

*Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*,
    250 F.3d 570 (7th Cir. 2001) .....................................................................................26

*Davidson v. Kimberly-Clark Corp.*,
    No. C 14-1783 PJH, 2014 WL 3919857 (N.D. Cal. Aug. 8, 2014) ...............................8

*De La Fuente v. Stokely-Van Camp, Inc.*,
    713 F.2d 225 (7th Cir. 1983) .....................................................................................16

*Delarosa v. Boiron, Inc.*,
    275 F.R.D. 582 (C.D. Cal. 2011) ..............................................................................20

*Dix v. American Bankers Life Assurance Co.*,
    429 Mich. 410 (Mich. 1987) ...............................................................................26, 27

*Elias v. Ungar's Food Prods., Inc.*,
    252 F.R.D. 233 (D.N.J. 2008) ...................................................................................11

*Erie R.R. Co. v. Tompkins*,
    304 U.S. 64 (1938) ...................................................................................................32

*Fleet Nat'l Bank v. Pirolli*,
    2000 Mass. Super. LEXIS 702 (Mass. Super. Ct. Aug. 28, 2000) ..............................27

*Forcellati v. Hyland's, Inc.*,
    No. CV 12-1983, 2014 U.S. Dist. LEXIS 50600 (C.D. Cal. Apr. 9, 2014) ..................27

*Fournigault v. Independence One Mortg. Corp.*,
    234 F.R.D. 641 (N.D. Ill. 2006) ...........................................................................27-28

*Garner v. Healy*,
    184 F.R.D. 598 (N.D. Ill. 1999) ...........................................................................14-15

587392.1

*Gaspar v. Linvatec Corp.*,
    167 F.R.D. 51 (N.D. Ill. 1996).................................................................................18

*German v. Federal Loan Home Mortg. Corp.*,
    885 F. Supp. 537 (S.D.N.Y 1995).............................................................................8

*Great American Ins. Co. v. Paty's, Inc.*,
    154 Mich. App. 634 (Mich. Ct. App. 1986) .............................................................31

*Grossman v. Waltham Chemical Co.*,
    14 Mass. App. Ct. 932, 436 N.E.2d 1243 (1982) ....................................................27

*Group Health Plan, Inc. v. Philip Morris Inc.*,
    621 N.W.2d 2 (2001) ...............................................................................................26

*Guido v. L'Oreal, USA, Inc.*,
    284 F.R.D. 468 (C.D. Cal. 2012) ......................................................................14, 19

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
    105 Wn.2d 778 (1986) .............................................................................................27

*Hess v. Chase Manhattan Bank, USA, N.A.*,
    220 S.W.3d 758 (Mo. 2007) ....................................................................................27

*Hope v. Nissan N. Am., Inc.*,
    353 S.W.3d 68 (Mo. Ct. App. 2011)..................................................................26, 27

*In re Aqua Dots Prods. Liab. Litig.*,
    654 F.3d 748 (7th Cir. 2011) ...................................................................................25

*In re Bridgestone/Firestone*,
    288 F.3d 1012 (7th Cir. 2002) ......................................................................23, 25, 30

*In re Caterpillar, Inc., C13 & C15 Engine Products Liab. Litig.*,
    2015 U.S. Dist. LEXIS 98784 (D.N.J. July 29, 2015)............................................30

*In re Conagra Foods, Inc.*,
    90 F. Supp. 3d 919 (C.D. Cal. 2015) ...........................................................26, 27, 33

*In re Diamond Shamrock Chems. Co.*,
    725 F.2d 858 (2d Cir. 1984).....................................................................................28

*In re FedEx Ground Package Sys.*,
    2007 U.S. Dist. LEXIS 76798 (N.D. Ind. Oct. 15, 2007).......................................8

*In re IKO Roofing Shingle Prods. Liab. Litig.*,
    757 F.3d 599 (7th Cir. 2014) ............................................................. *passim*

*In re Mercedes-Benz Tele Aid Contract Litig.*,
    257 F.R.D. 46 (D.N.J. 2009) ...................................................................26, 27

*In re MyFord Touch Consumer Litig.*,
    46 F. Supp. 3d 936 (N.D. Cal. 2014) ..............................................................30

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    725 F.3d 244 (D.C. Cir. 2013) ......................................................................34

*In re Rhone-Poulenc Rorer Inc.*,
    151 F.3d 1293 (7th Cir. 1995) ...................................................................23, 25

*In re Telectronics Pacing Sys.*,
    168 F.R.D. 203 (S.D. Ohio 1996) ..................................................................28

*In re Visa Check/Mastermoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ..........................................................................8

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F. 3d 838 (6th Cir. 2013) ................................................................. 9-10

*Jamie v. Milwaukee Public Schools*,
    668 F.3d 481 (7th Cir. 2012) ........................................................................22

*La. Firefighters' Ret. Sys. v. N. Tr. Invs., N.A.*,
    2015 U.S. Dist. LEXIS 170281(N.D. Ill. Dec. 21, 2015) ...................................33

*Latman v. Costa Cruise Lines, N.V.*,
    758 So. 2d 699 (Fla. Dist. Ct. App. 3d Dist. 2000) ...........................................26

*Leonard v. Sears, Roebuck & Co.*,
    Case Nos. 06-CV-7023, 07-CV-0412, 08-CV-1832,
    2015 WL 44766200 (N.D. Ill. Jul. 20, 2015) .............................................10, 14

*Lewis v. Casey*,
    518 U.S. 343 (1996) (Def. Opp. 24) ..............................................................11

*Mace v. Van Ru Credit Corp.*,
    109 F.3d 338 (7th Cir. 1997) .........................................................................32

*Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*,
    807 N.E.2d 1165 (Ill. App. Ct. 2004) ..............................................................17

-vi-

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ....................................................................2, 3

*Mowbray v. Waste Mgmt. Holdings, Inc.*,
    189 F.R.D. 194 (D. Mass. 1999)..............................................................30, 33

*Mullins v. Direct Digital*,
    795 F.3d 654 (7th Cir. 2015) .................................................................. *passim*

*Murphy v. Mallard Coach Co.*,
    179 A.D.2d 187 (N.Y. App. Div. 3d Dep't 1992) ....................................30, 31

*Norcold, Inc. v. Gateway Supply Co.*,
    798 N.E.2d 618 (Ohio Ct. App. 2003) ............................................................28

*Osram Sylvania, Inc. v. Townsend Ventures, LLC*,
    2013 Del. Ch. LEXIS 281 (Del. Ch. Ct. Nov. 19, 2013) ..................................30

*Panag v. Farmers Ins. Co. of Wash.*,
    166 Wn.2d 27 (2009) ......................................................................................27

*Paulson v. Olson Implement Co.*,
    107 Wis. 2d 510 (Wis. 1982) ..........................................................................31

*Payton v. Cty. Of Kane*,
    308 F. 3d 673 (7th Cir. 2001) .........................................................................11

*Pella Corp. v. Saltzman*,
    606 F.3d 391 (7th Cir. 2010).................................................................. *passim*

*Pentair, Inc. v. Wis. Energy Corp.*,
    662 F. Supp. 2d 1134 (D. Minn. 2009).....................................................29, 30

*Petitt v. Celebrity Cruises*,
    153 F. Supp. 2d 240 (S.D.N.Y. 2001)..............................................................24

*Plubell v. Merck & Co.*,
    289 S.W.3d 707 (Mo. Ct. App. 2009)..............................................................26

*Powers v. Ohio*,
    499 U.S. 400 (1991).........................................................................................11

*Ries v. Arizona Beverages USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012) ....................................................................19

*Riordan v. Smith Barney*,

587392.1

113 F.R.D. 60 (N.D. Ill. 1986) .................................................................................18, 29

*Robinson v. Kia Motors Am., Inc.*,
    2015 U.S. Dist. LEXIS 121755 (D.N.J. Sep. 11, 2015) ....................................................30

*Rosen v. J.M. Auto Inc.*,
    270 F.R.D. 675 (S.D. Fla. 2009) ..................................................................................20

*Rothe v. Maloney Cadillac, Inc.*,
    518 N.E.2d 1028 (Ill. 1988) ...................................................................................17, 31

*Saltzman v. Pella Corp.*,
    257 F.R.D. 471 (N.D. Ill 2009)............................................................................ *passim*

*Schnall v. AT&T Wireless Servs., Inc.*,
    171 Wn.2d 260 (Wash. 2011) ...............................................................................26, 27

*Seekamp v. It's Huge, Inc.*,
    2012 WL 860364 (E.D.N.Y. Mar. 13, 2012) ..................................................................29

*Slaney v. Westwood Auto, Inc.*,
    366 Mass. 688 (Mass. 1975) .......................................................................................26

*Smith v. Reed*,
    124 N.W. 489, 491 (Wis. 1910).................................................................................31

*State, Office of the Att'y Gen. v. Commerce Comm. Leasing, LLC*,
    946 So. 2d 1253 (Fla. 1st DCA 2007) ...........................................................................27

*Suchanek v. Sturm Foods, Inc.*,
    311 F.R.D. 239 (S.D. Ill. 2015) .......................................................................12, 16, 17

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) .............................................................................7, 12, 24

*Szajna v. Gen. Motors Corp.*,
    503 N.E.2d 760 (Ill. 1986) .........................................................................................17

*Terrill v. Electrolux Home Prods., Inc.*,
    295 F.R.D. 671 (S.D. Ga. 2013) ..................................................................................20

*Thorogood v. Sears, Roebuck and Co.*,
    547 F.3d 742 (7th Cir. 2008) ......................................................................................13

*United Health Group, Inc. v. Klay*,
    543 U.S. 1081 (2005)................................................................................................27

587392.1

*Varacallo v. Mass. Mut. Life Ins. Co.*,
   752 A.2d 807 (N.J. App. Div. 2000)..................................................................................27

*Wal-Mart, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)..................................................................................................20

*Weinstat v. Dentsply Internat., Inc.*,
   180 Cal. App. 4th 1213 (Cal. App. 1st Dist. 2010)..............................................................30

*Wikoff v. Vanderveld*,
   897 F.2d 232 (7th Cir. Ill. 1990)...................................................................................28

*Williams v. Chartwell Financial Services, Ltd.*,
   204 F.3d 748 (7th Cir. 2000) ......................................................................................29

*Wilner v. Allstate Ins. Co.*,
   71 A.D.3d 155 (N.Y. App. Div. 2d Dep't 2010) ..........................................................26, 27

## INTRODUCTION

Plaintiffs' opening brief reveals voluminous evidence of a common defect in Precor's "premium" exercise machines, which essentially makes the highly marketed Touch Sensor heart rate monitor feature both useless and valueless. That evidence includes:

- Admissions from Precor confirming Precor's knowledge and recognition of the defect *as early as 2008* and its continuing recognition that "hand held heart rate doesn't work while running," and is "inconvenient" while walking. *See* Exhibits 1 and 4 to Plaintiffs' Memorandum of Law in Support of Motion for Class Certification ("Pl. Mem.");

- Internal Precor documentation revealing Precor's investment of time and resources to determine the extent of the Touch Sensor problem and a conscious decision to ignore it due to "cost concerns." *Id*. at Ex. 1;

- Evidence from Precor revealing that, in 2009, Precor's sales relied "*heavily*" on the Touch Sensor feature and that its machines "have various programs that tie so tightly into [the heart rate feature] that *we need to make sure our [heart rate feature] interface works properly*." *Id*. (emphasis added); and

- Precor documents revealing that it instructed its dealers to tell consumers that "*they paid extra*" for the Touch Sensor feature. *Id*. at Ex. 2 (emphasis added).

None of this evidence, adduced from Precor's own files, makes any distinction in the Touch Sensor defect as to specific machines, platforms, model or year of manufacture. Nor does Precor's expert, Michael Garrett, deny the existence of the defect or demonstrate any relevant differences in the manifestation of the defect across Precor's various machines.

587392.1

Precor's efforts to minimize the extent of the defect across its product line are hollow. Precor wants to convince the Court that its machines are different and that different machines create "different motion artifact." But even Precor admits, as it must in the face of uncontradicted scientific authority that motion artifact during exercise is unavoidable and that the heart rate monitors on all of Precor's machines are affected by motion artifact. And even if Precor raised reasonable issues relating to the extent of the defect across the various machines, these issues are proper for the finder of fact and are not appropriately resolved at class certification.

The premier question at the certification stage is whether the common issues concerning the defect predominate over the individual issues: was there a defect in the Precor machines? The answer to this question – as admitted by Precor and as found in Precor's own expert's findings – does not differ from class member to class member. The evidence here overwhelmingly supports class certification and Plaintiffs' motion should be granted.

## ARGUMENT

## I.    PRECOR IMPROPERLY ARGUES THE MERITS AND ASKS THE COURT TO RESOLVE FACTUAL ISSUES IN ITS FAVOR

The Seventh Circuit has made clear that "[a]ny consideration of the merits at the class certification stage . . . runs the risk of supplanting the jury as the finder of fact." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 823 (7th Cir. 2012). Accordingly, "a court weighing class certification must walk a balance between evaluating evidence to determine whether a common question exists and predominates, without weighing that evidence to determine whether the plaintiff class will ultimately prevail on the merits." *Bell v. PNC Bank, N.A.*, 800 F.3d 360, 377 (7th Cir. 2015).

587392.1

Disregarding this governing maxim, Precor again and again attacks the merits of Plaintiffs' claims and evidence. One glaring example is Precor's attempt to strike Plaintiffs' Exhibit 1, the internal Precor document which confirms Precor's knowledge of the Touch Sensor defect as early as 2008. Despite the fact that this *document came directly from its own files*, Precor argues that it should be stricken because Precor's director of electrical engineering was not aware of it and does not personally believe it to be accurate. Though it is no surprise that Precor would like this document removed from the record because it is so damaging, Precor's desire to wish it away is not an adequate basis for a motion to strike. Def. Opp. at 5-6 and n.2. The document is properly before the Court, and in any event, the weight and credibility to be afforded to it are not appropriate considerations at this stage. *See Messner*, 669 F.3d at 811.

It is also inappropriate to resolve factual issues relating to the pervasiveness and scope of the Touch Sensor defect. Precor's main strategy in attacking class certification is to portray Mr. Garrett's findings as conclusive evidence that there is no Touch Sensor defect. *See* Def. Opp. at 11-15 and Exhibit 2 (Garrett Report). Not so.

Actually, Mr. Garrett concedes that motion artifact affects *any* Touch Sensor heart system, regardless of the environment, subject, or algorithm. *See* Garrett Report at 6 ("Much of this study has concentrated on how to find the QRS or R wave in the presence of *unavoidable* motion artifact, muscle artifact, and noise from the skin electrode interface which are present *for every system*"); 11 ("Due to the nature of the subject[']s ECG and how they use and move on the equipment, there is a limit to how much motion artifact can be rejected by *any system*"); 25 ("It is *not possible* to remove or filter all of the motion-induced noise created during exercise") (emphases added).

This is consistent with the opinion of Dr. Henriquez that motion artifact causes Precor's Touch Sensors to misinterpret and incorrectly record heart signals, and that this affects *all* Precor machines since they "do not have the ability to completely compensate for the motion artifact." *See* Deposition of Professor Craig Henriquez, December 1, 2015 (attached hereto as **Exhibit A**) at 26:21-24; *see also id.* at 20:14-21:2 (opining that his conclusions apply to any treadmill with Touch Sensors); 21:13-17 (opining that motion artifact would affect all machines); 23:16-25:23 (opining that uncompensated motion artifact would result in erroneous heart rate readings in all machines, including bikes).

In reaching his conclusions, Dr. Henriquez considered both of the issues raised by Precor here, including that Precor machines utilize different algorithms, Ex. A at 24:5-25:23; 26:4-24, and that the different kinds of movement engendered by treadmills, ellipticals, and stationary bikes produce different motion artifacts, *id.* at 56:1-19.

Dr. Henriquez explained that Touch Sensors on all exercise machines produce inaccurate heart rate readings because motion artifact "is ***unpredictable by any algorithm***." *Id.* at 65:2-3 (emphasis added). Precor counters that different machines create different motion artifact, but even Precor must admit that none *eliminate* motion artifact: they are all affected by some degree of motion artifact.[1] Indeed, Dr. Henriquez explained that he did not need to know the details of machine-specific algorithms to conclude that all Precor machines with Touch Sensors produce inaccurate heart rate readings.[2] *Id.* at 79:3-12 (explaining that "any potential miscalculation or

---

[1] This is analogous to the Sears washing machine case, where Sears claimed that the models minimized mold but did not eliminate it. *Butler v. Sears, Roebuck & Co.*, 727 F. 3d 796, 798-99 (7th Cir. 2013).
[2] This point is critical and is discussed in greater detail in Plaintiffs' opposition to Precor's *Daubert* motion to preclude Dr. Henriquez's testimony and strike his report, filed concurrently with this Reply. Ultimately, Dr. Henriquez need not have conducted *any testing whatsoever* on Precor's machines to reach his conclusions, as the relevant medical and bioelectrical literature uniformly acknowledges the unavoidable impact of motion and muscle artifact and noise on touch heart rate readings.

-4-

misrepresentation of the heart rate . . . didn't necessarily rely on understanding what was happening in between the sensor and the display").

Precor's contention that Dr. Henriquez "admits to having no opinions on motion artifact, except for the Alatech-based treadmills he tested," Def. Opp. at 4, is blatantly false. A plain reading of the cited testimony shows that all Dr. Henriquez said is that he did not perform *tests* on other Precor equipment, *not* that he had no opinion. To the contrary, he testified that he *does* have an opinion regarding the effect of motion artifact on ellipticals and stationary bikes based on his review of the literature and the data contained therein: they will both be impacted by motion artifact. Ex. A at 21:14-25:23. Nor did Dr. Henriquez "concede[] that the system works fine while walking." Def. Opp. at 18, 36. The system never works "fine" if a user is in motion, according to Dr. Henriquez. Even Mr. Garrett's testing reveals that subjects *walking* at 4 miles per hour received inaccurate heart rate displays. *See* Garrett Report at 52-53.

Dr. Henriquez's opinion that no Precor Touch Sensor on any machine can properly compensate for motion artifact renders irrelevant Defendant's assertion that "different people, of different ages, weights, body types, medical conditions, and cardio-physiology . . . respond differently" to Precor's heart rate system. (Def. Opp. 26; *id.* at 23 n. 7.) The import of Dr. Henriquez's opinion is that motion artifact renders Touch Sensors inaccurate irrespective of the individual using the sensors. Ex. A at 65:2-3. In fact, Mr. Garrett testified at deposition that, because noise is inevitable, results can vary even for *the same* individual. *See* Deposition of Michael C. Garrett, February 10, 2016 (attached hereto as **Exhibit B**) at 161:4-8 ("Q: So even the same person doing the same exercise on the same machine might affect that electrode interface in a different way on a different day, right? A: Typically, that could be true").

-5-

587392.1

Mr. Garrett's own test results bear Dr. Henriquez's conclusions out, showing that, the Touch Sensors yield notoriously unreliable results. Although the testing involved only comparing sensor readings to those using a chest strap and does not actually establish that the readings were accurate, the results confirm the failure of the Precor machines to deliver accurate results. Specifically, as to the 9.23 treadmill, the same model that Plaintiff s Steven Bayer and Gary Mednick own, Mr. Garrett's testing revealed a ***61.9% failure rate at 6 miles per hour*** (13 out of 21 subjects saw results that diverged more than 10% from the chest strap reading) and a ***28.7% failure rate at 4 miles per hour*** (6 out of 21 of subjects had more than 10% deviation). *Id*. at 49 (chart). For Precor's 9.33 treadmill, Mr. Garrett's testing revealed a ***62.5% failure rate at 6 miles per hour*** (10 out of 16 subjects saw readouts that diverged more than 10% from the chest strap) ***and a 12.5% failure rate at 4 miles per hour*** (2 out of 16 subjects saw such divergent results). *Id*. Those results correlated with Dr. Henriquez's conclusion, quoted above, regarding the "inherent unreliability" of defendant's treadmills at speeds above 4 miles per hour.[3]

As to the remaining subjects Mr. Garrett tested on both treadmills (except for one subject who moved at 3 mph and saw results that diverged more than 10% from the chest strap reading), and on the elliptical machine and stationary bicycle, he could say *only* that their heart rates did not deviate by more than 10% *from the chest strap* reading. *Id*. In addition, *for all but one of these treadmills, ellipticals, and stationary bikes, test subjects either exceeded the maximum heart rate or their heart rate was lost entirely during "high effort" exercise. Id.* at 54. For example, on the EFX833 elliptical, 3 out of 14 subjects were excluded due to lost heart rate at

---

[3] These results show that, contrary to Precor's representations that its Touch Sensors and Smartrate technology allow a user to stay in his or her "target zone," Pl. Mem. at 5-6, that user can easily be taken well outside of this zone when the actual heart rate varies by 10% (or 20% or 30%, as Mr. Garrett's data revealed) from the displayed output.

-6-

"maximum" intensity, *a failure rate of over 20%*.  *Id.* at 52.[4]

Of course, chest strap readings are not 100% accurate themselves.  Mr. Garrett even goes so far as to say that, in his opinion, ***they are no more reliable than the readings from the handheld monitors***.  *See* Ex. B at 83:7-21.  Thus, the only thing Mr. Garrett's results demonstrate is that, for the various machines he tested, the Touch Sensor readings deviated by either less than or greater than 10% from another imperfect measurement, *not* that they are accurate and *not* that there is no defect (which, again, are at heart merits questions).  His results certainly do not prove, as Precor claims, that the heart rate monitors provide "credible, valid result[s]."  Def. Opp. at 18.

Regardless of the degree of deviation between the Touch Sensors and the chest strap, it is the role of the finder of fact to determine whether such a deviation would be acceptable to a ***reasonable consumer***.  *See, e.g., Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 755, 762 (7th Cir. 2014) ("We discern two errors in the district court's decision to deny class certification. First, the court failed to recognize the question common to the claims of all putative class members: whether the GSC packaging was likely to mislead a reasonable consumer . . . .  A jury should have decided the question whether the packaging was likely to mislead reasonable consumers").  The view of the reasonable consumer – another of the many predominate common questions in this case – governs the analysis and, ultimately, the issue of whether Precor's Touch Sensors "work as advertised," Def. Opp. at 2, is for the jury to determine.

---

[4] Plaintiffs include quotation marks around the words "high effort" and "maximum" because Mr. Garrett's characterization of his settings as "Minimum Effort," "Medium Effort," and "High Effort" is subjective and does not accurately reflect the experience of a Precor user.  *See id.* at 46.  For example, Mr. Garrett characterizes a "4.0 mph run" on a treadmill as "High Effort" though he concedes that several subjects were *walking* at that speed.  Ex. B at 124:2-125:15.  He admitted at deposition that his use of the term "run" was not accurate.  *Id.*

In any event, these considerations are beyond the scope of the Court's decision on whether or not to certify a class, as it is axiomatic that "a district court may not weigh conflicting expert evidence or engage in 'statistical dueling' of experts" at the certification stage. *In re FedEx Ground Package Sys.,* 2007 U.S. Dist. LEXIS 76798, at *24 (N.D. Ind. Oct. 15, 2007) (quoting *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 135 (2d Cir. 2001)).

## II. PLAINTIFFS HAVE STANDING TO PURSUE CLAIMS RELATED TO ALL OF THE EXERCISE MACHINES AT ISSUE.

### A. Discovery Has Shown That All Models Are Sufficiently Similar.

In denying Precor's motion to dismiss Plaintiffs' Complaint, this Court explained that Plaintiffs have standing to pursue claims relating to "sufficiently similar" exercise machines. *See* ECF Doc. No. 38, at p. 9 (quoting *Davidson v. Kimberly-Clark Corp.*, No. C 14-1783 PJH, 2014 WL 3919857, at *6 (N.D. Cal. Aug. 8, 2014)).[5] Because Plaintiffs' claims here "rely on essentially the same misrepresentation—that the Touch Sensors are accurate" and because the Touch Sensors "fill the same function on every machine . . . are used in the same manner on every machine[, and] allegedly fail in the same manner on every machine by producing inaccurate readings," this Court ruled that Plaintiffs had "standing to pursue claims related to all nineteen products." *Id.* at 10-11. In so holding, the Court acknowledged Precor's contention that Alatech, Polar, and Salutron "manufacture Touch Sensors [for Precor] using different designs, software and algorithms," but found that Precor "failed to show [such] differences are anything more than minor." *Id.*

---

[5] The primary authority Precor relies upon to suggest that Plaintiffs lack standing is not persuasive as it does not involve products cases and does not employ the "sufficient similarity" analysis. Def. Opp. at 23, citing *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F. 3d 440, 444 (7th Cir. 2009) (plaintiff's assignment of the right to file the claim at issue to a third party); *Adair v. Sorenson*, 134 F.R.D. 13, 16 (D. Mass. 1991) (plaintiff's inability to bring private action under Securities and Exchange Act of 1934 based on misrepresentations occurring after he purchased securities at issue); and *German v. Federal Loan Home Mortg. Corp.*, 885 F. Supp. 537, 549 (S.D.N.Y 1995) (plaintiffs' inability to enjoin housing violations against defendants who did not own or manage plaintiffs' housing).

Precor's argument has not improved with the passage of time. As set forth in detail in Plaintiffs' opening brief, all 19 exercise machines were marketed uniformly, incorporate the exact same Touch Sensor design, suffer from the same defect and are subject to the same express written warranty. Pl. Mem. at 4-5. Accordingly, "sufficient similarity" exists across all 19 machines in the product line.

Precor contends that: (a) Polar and Salutron heart rate systems use algorithms to process heart rate that differ from Alatech's; and (b) treadmills involve motion artifact different from ellipticals and stationary bikes. Def. Opp. at 7-9. According to Precor, this means Plaintiffs can only sue on Alatech-supplied treadmills. *Id.* at 23. But discovery has shown—and both experts in this case agree – that ***all*** Precor exercise machines with Touch Sensors inaccurately record heart rate, irrespective of algorithm or exercise mode. *See* above discussion regarding the Henriquez and Garrett reports. As such, Precor's argument that "Plaintiffs have no evidence that the heart rate systems on all accused machines operate substantially the same ***in processing*** heart rate signals" is a red herring. Def. Opp. at 24 (emphasis added). The similarity or dissimilarity in "processing" is totally irrelevant because Plaintiffs' theory does not relate to the way information is "processed" by the internal circuitry in the various machines.

Because the defect – inaccurate heart rate readings due to uncompensated motion artifact – is the same across all of the machines, Plaintiffs have standing to sue with respect to all of the models, not just the 9.23 treadmills as Precor claims.

## B. Courts Certify Classes For Unpurchased Products Under Like Circumstances.

While there is a dearth of case law discussing standing on unpurchased products at the class certification stage (indeed, Precor cites none), the issue has often been subsumed in the typicality and commonality analyses under Fed. R. Civ. P. 23. *See Butler*, 727 F. 3d at 798; *In re*

-9-

*Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*., 722 F. 3d 838, 854 (6th Cir. 2013). In those cases, courts have certified classes related to a multitude of products and models not purchased by the named plaintiffs.

For example, in *Butler*, the Seventh Circuit certified a class related to ***dozens*** of models of washing machines, including several not purchased by plaintiffs, based on the common question whether the machines were "defective in permitting mold to accumulate and generate noxious odors[.]" 727 F. 3d at 798. Like here, the defendant protested that the manufacturer had "made a number of design modifications and as result different models are differently defective." *Id.* The court rejected defendant's contention, explaining:

> [Defendant] does not contend that any of the design changes eliminated the odor problem, only that they diminished it. The basic question presented by the mold claim—are the machines defective in permitting mold to accumulate and generate noxious odors?—is common to the entire mold class, although damages are likely to vary across class members.

*Id. See also Leonard v. Sears, Roebuck & Co.*, Case Nos. 06-CV-7023, 07-CV-0412, 08-CV-1832, 2015 WL 44766200, at *3, *9 (N.D. Ill. Jul. 20, 2015) (on remand from the Seventh Circuit in *Butler*, the district court rejected another challenge to class certification by defendant).

Given the Seventh Circuit's decision in *Butler* and the district court's subsequent certification of the class, Precor's claim that "in this District, the trend is away from allowing class members to sue on products they never purchased" is demonstrably false. Def. Opp. at 25.

The Sixth Circuit has reached the same result. In *Whirlpool*, the defendant objected to class certification on the basis "that commonality is defeated because [the washing machines] were built over a period of years on two different platforms, resulting in the production of twenty-one different models during the relevant time frame." 722 F. 3d at 854. Certifying the class, the Sixth Circuit explained:

> While the trial evidence may concern different [washing machine] models built on two different platforms, *the common question of whether design defects cause mold remains across the manufacturing spectrum* . . . . Plaintiff's evidence . . . confirms that the two platforms are nearly identical, the design issues concerned various models, and most of the differences in the models were related to aesthetics, not design.

*Id.* (emphasis added). [6]

Precor fails to cite authority prompting a different result on class certification. Indeed, two of Precor's cases actually support standing. *See Payton v. Cty. Of Kane*, 308 F. 3d 673, 682 (7th Cir. 2001) (Def. Opp. 25) (holding that plaintiffs *had standing* to pursue case against 19 counties because plaintiffs "were personally injured by operation of the very same statute that caused the injuries to all other members of the proposed class."); *Powers v. Ohio*, 499 U.S. 400, 415 (1991) (Def. Opp. 25-26.) (holding that criminal defendant *had standing* as a third party to bring the "equal protection claims of jurors excluded [because of race]" at his trial). Precor's other case, *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (Def. Opp. 24), is not remotely applicable because there, the incarcerated plaintiff lacked standing to bring claims on behalf of "the inmate population at large" because of his own unique circumstance in being illiterate. Plaintiffs here do not have any such unique circumstances and unquestionably have standing to pursue the claims of all class members who purchased machines equipped with defective Touch Sensors. The Court should reject Precor's argument to the contrary, as it did in deciding Precor's motion to dismiss.

## III. THE PROPOSED CLASSES ARE ASCERTAINABLE.

Plaintiffs seek certification of two classes involving purchasers of Precor fitness

---

[6] *See also Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 243-244 (D.N.J. 2008) (rejecting argument that plaintiffs had not purchased some of the relevant products because plaintiffs' claims "ar[o]se from an alleged course of conduct in selling a product with false nutritional information.").

machines equipped with a Touch Sensor heart rate monitor. Pl. Mem. at 11-12. As a preliminary matter, there is no truth to Precor's argument that Plaintiffs have defined a "wider class of more machines" in their class certification motion. Def. Opp. at 22. In their respective complaints, Plaintiffs defined their putative classes as individuals "who purchased a Precor fitness machine equipped with a Touch Sensor heart rate monitor from either Precor or a third-party retailer," and this has not changed. *Compare* ECF Doc. 1 (Mednick Complaint) with Pl Mem. at 12. These classes are objectively defined and easily ascertainable.

The Seventh Circuit conclusively holds that classes defined as purchasers of products are ascertainable. *See Mullins v. Direct Digital,* 795 F.3d 654 (7th Cir. 2015), *cert. denied*, No. 15-549, 2016 U.S. LEXIS 1538 (U.S. Feb. 29, 2016); *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 260 (S.D. Ill. 2015) (class was ascertainable where definition identified particular group of individuals (in-store purchasers of product) harmed in a particular way (defrauded by product packaging) during a specific period (from September 2010 to the present) in particular states (Alabama, California, Illinois, New Jersey, New York, North Carolina, South Carolina, and Tennessee)), *aff'd* 764 F.3d 750 (7th Cir. 2014).

The classes here are even *more* ascertainable than those in *Mullins* and *Suchanek* because they involve high-priced fitness machines retailing for over a thousand dollars apiece. Unlike people who buy relatively inexpensive retail items like health supplements or coffee and may not have proof of purchase, class members in this case can be very easily identified because: (1) Precor sold fitness machines directly to consumers and Precor presumably has purchase records relating to those sales; (2) Precor maintains warranty information relating to third-party retail sales; and (3) class members have reliable methods to demonstrate proof of purchase – for example, they can supply purchase records, owner's manuals, and/or photos of the machines.

-12-

Even in an unlikely, worst case scenario, class members could self-identify through affidavits. *See Mullins*, 795 F.3d at 669 ("Given the significant harm caused by immunizing corporate misconduct, we believe a district judge has discretion to allow class members to identify themselves with their own testimony and to establish mechanisms to test those affidavits as needed").

Precor purports to make an ascertainability argument that the proposed Classes "are not identifiable" because they allegedly include individuals who did not purchase a Precor fitness machine *based on Precor's statements*. Def. Opp. at 26. But, to be ascertainable, Plaintiffs do not have to prove why members of the class purchased Precor's machines (especially because reliance is not an element of any of their claims, as explained below). Precor reads additional requirements into ascertainability where none exist. And, if Precor's position were accepted, no class would ever be ascertainable because the definition would necessarily have to be based on subjective criteria (*i.e.* the reason why someone purchased a product). This is not the law.

This case is nothing like the case upon which Precor relies, *Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742 (7th Cir. 2008). Def. Opp. 27. First, *Thorogood* did not deal with ascertainability *at all*, limiting its discussion solely to commonality and typicality.[7] Moreover, unlike Precor's advertisements, the advertisement on the clothes dryers at issue in *Thorogood* was ambiguous – it claimed only that the dryers had a "stainless steel drum." *Id.* at 747. Accordingly, the court expressed concern that the plaintiffs, who alleged such an advertisement misrepresented the dryers' ability to eliminate rust stains, would have to testify "as to what he understands to be the meaning of [such] a label or advertisement." *Id.* Here, Precor's claim that its exercise machines can accurately monitor a user's heart rate is unambiguous. It is a well

---

[7] Precor employs this bait-and-switch tactic frequently in its Opposition, discussing a particular case or group of cases for a legal point it does not address and then contorting the ruling to fit with its current position.

known and important feature to consumers—as recognized by Precor's own personnel in Precor's internal documents. Plaintiffs' objectively defined and identifiable class is ascertainable.

## IV. THIS CASE MEETS ALL OF THE ELEMENTS OF RULE 23 (A)

### A. Numerosity and Adequacy are Conceded

Precor does not challenge the numerosity or adequacy[8] elements of Rule 23(a) and as such, these points are conceded.

### B. Plaintiffs Are Typical Class Representatives.

Precor contends that Plaintiffs are not typical because they were allegedly not defrauded by Precor's representations when purchasing their exercise equipment. Def. Opp. at 38. But where class members and class representatives purchase the same defective products and advance the same legal theories regarding those products, typicality is satisfied. *See Leonard*, 2015 WL 4476620, at *7 (finding typicality where plaintiffs' and class members' claims were similarly based on defendant's sale of defective washers); *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill 2009) ("*Pella I*") (finding typicality where class members and class representatives advanced consistent legal theories arising out of defective windows).

Here, Plaintiffs and the proposed Classes assert the same claims under the same legal theories arising from the same course of conduct—Precor's deceptive and uniform representations regarding the capabilities of its Touch Sensors and Precor's failure to conform to express warranties and Precor's written warranty. And Plaintiffs, like every Class member, were injured at the point-of-sale when they failed to receive the benefit of the bargain. *See Guido v. L'Oreal, USA Inc.*, 284 F.R.D. 468, 479 (C.D. Cal. 2012) (typicality met where plaintiffs would not have purchased or would have paid less for product if defect was known); *Garner v. Healy*,

---

[8] Precor's attacks on Plaintiffs' adequacy, Def. Opp. at 16-18, are in reality attacks on the typicality of Plaintiffs' claims, and as such are discussed immediately below.

184 F.R.D. 598 at 604 (N.D. Ill. 1999) (finding typicality satisfied where the plaintiffs, like the class, purchased one or more of the defendant's non-wax products and "believed that they were getting something more than they ultimately received").

Plaintiffs' own deposition testimony contradicts Precor's claim that Plaintiffs are not typical because they allegedly "did not read" and were not "influenced by any Precor materials" before purchasing their exercise equipment. Def. Opp. at 38. Both Plaintiffs testified that they were exposed to and relied upon Precor's Touch Sensor heart rate monitoring representations prior to purchase. *See* Deposition of Steven Bayer ("Bayer Depo."), at 24:2-10 (while shopping at Chicago Home Fitness, "[w]hen I saw the Precor 9.23, you know, I was able to step on the device, I was able to put my hands on the heart rate monitor, you know, I was able to see on the display it had the time, it had the smart heart and the heart rate number display"); Deposition of Gary Mednick ("Mednick Depo.") at 71:11-14 (while shopping at the Great Escape, "the salesman showed me [the Precor 9.23 treadmill] had Touch Sensors on it – sensor – because I told him I had just been in cardio rehab, and I had to watch my [heart rate]"). Precor's contention that Plaintiffs could not have been defrauded because their purchases were not based on Precor "materials" is factually incorrect.

Both Mr. Bayer's and Mr. Mednick's experiences show that, no matter where a consumer first learns about a Precor fitness machine—at the point-of-purchase, through sales personnel, in Precor's product brochures, on Precor's website, or on the actual exercise equipment itself—Precor uniformly represents that its Touch Sensor heart rate monitors actually work. And even if Plaintiffs' and class members' purchase experiences differed slightly, "[v]ariations among the named representatives in their perception of the [product] packaging or their motivation for ultimately purchasing [the product] simply means their claims are not completely *identical*. It

does not mean that their claims are *atypical* of the class." *Suchanek*, 311 F.R.D. at 255-56 (emphasis in original) (rejecting argument that different reasons for purchases precluded typicality and finding typicality met where class representative and other class members were similarly "duped into believing they were purchasing ground coffee, and they would not have purchased [the product] (or paid as much as they did) had they known it was actually instant coffee"); *see also De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) ("The typicality requirement may be satisfied even if there are *factual distinctions* between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.") (emphasis added) (citations omitted).

Precor also argues that because Bayer and Mednick use their exercise equipment primarily for walking, they are allegedly not subjected to motion artifact and, thus, are not typical class representatives. Def. Opp. at 38. Wrong again. *First*, as Mr. Garrett concedes, there is no way to eliminate motion artifact, and therefore any notion that Plaintiffs' machines are not subject to motion artifact is false. *Second*, as a factual matter, both Plaintiffs experienced demonstrated failures of the Touch Sensor heart rate monitoring system even while walking. *See* Bayer Depo. at 33:25-34:15 ("Q: And in those times you have used the heart rate monitor do you recall ever being satisfied with how it was operating? A: No."); Mednick Depo. at 49:4-8 (Q: "And with respect to your dissatisfaction with the heart rate function of the 9.23, how soon after you owned that in your house did you discover you were dissatisfied? A: I would say the first week."). ***Third, Mr. Garrett's testing shows that Touch Sensors provide inaccurate heart rate readings to a user walking on a treadmill at four miles per hour***.[9]

---

[9] Garrett acknowledged that some test subjects were able to walk on a treadmill at 4.0 miles per hour. (*See* Ex. B at 124:2:11 ("Q: So at 4.0 miles per hour, you're saying that all 22 subjects were running? A: No. Q: Oh, you don't? A: Some run, some -- I don't exactly know the answer to that. Some are running at a slow cadence, and some are crossing the barrier between running and walking." Q: And some are just

-16-

*Fourth*, "when it comes to consumer fraud class actions, individual differences are to be expected." *Suchanek*, 311 F.R.D. at 255. Whether or not Plaintiffs and other members of Class have different exercise routines that result in varying levels of motion artifact does not defeat typicality. *See In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 601-02 (7th Cir. 2014) (reversing district court, in part, for mistakenly holding that class could not be certified because consumers had different experiences with defective roofing tiles); *Butler*, 727 F.3d at 798, 800 (affirming certification of class of consumers who purchased washing machines that failed to prevent the accumulation of mold even though class members did not own same model and "different models [were] differently defective").

Finally, Precor argues—for the second time in this case—that Plaintiffs cannot assert an express warranty claim because they lack privity. Def. Opp. 38. But as this Court has already determined, a plaintiff can bring a Magnuson-Moss claim if there is an express warranty under 15 U.S.C. §310(d)(1), even if privity is lacking. ECF Doc. 38, at 16 (citing *Cohen v. AM Gen. Corp.*, 264 F. Supp. 2d 616, 621 (N.D. Ill. 2003)). Precor cites to three Illinois Supreme Court cases for the proposition that a plaintiff must be in immediate privity with the seller to bring a claim for breach of an express warranty. Def. Opp. at 38. Yet, those cases *all* recognized and held that under the MMWA, vertical privity is not required. *See Szajna v. Gen. Motors Corp.*, 503 N.E.2d 760, 769 (Ill. 1986); *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1030-31 (Ill. 1988); *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 807 N.E.2d 1165, 1169 (Ill. App. Ct. 2004). Precor's owner's manuals provide near-identical written warranties for each fitness machine at issue. Notably, these warranties expressly state that "Precor Incorporated warrants

---

walking fast, right? A: Yeah.").) Garrett also admitted that even while walking/running at 4.0 miles per hour, approximately 28% of test subjects had average heart rate readings from the Touch Sensors' handgrips that varied by more than 10% when compared to heart rate readings from chest straps. *Id.* at 130:21-131:1 ("Q: But regardless, it's 28 percent -- more than a quarter of the people at 4.0 miles per hour had a heart difference of greater than 10 percent, right? A: That's what the study indicates, yes.").)

-17-

all new Precor products to be free from defects in materials and manufacture" for a specified warranty period (generally 5 or 10 years for "parts and wear items" and 1 year for labor).[10] As this Court correctly held, this statement constitutes a written warranty under the MMWA.[11] This point is discussed further below with respect to the predominance of legal issues.

"Rule 23(a)(3) mandates the typicality of the named plaintiffs' claims—not defenses. . . . [I]t is only when a unique defense will consume the merits of the case that a class should not be certified." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 58 (N.D. Ill. 1996) (quoting *Riordan v. Smith Barney*, 113 F.R.D. 60, 63 (N.D. Ill. 1986)). In this case, there are no material distinctions that set Plaintiffs apart from the class members. Plaintiffs' claims are legally and factually consistent with those sought on behalf of the proposed Classes. As a result, the class representatives' theories are typical of the class members' anticipated claims.

### C. This Case Presents Numerous Common Questions Relating to the Common Touch Sensor Defect

Plaintiffs' opening brief detailed the significant amount of factual and legal overlap on common issues, such as: (1) whether Precor machines suffer from a common design defect; (2) whether Precor falsely and misleadingly markets its Touch Sensor heart rate monitoring feature while knowing of the defect; and (3) whether Precor committed consumer fraud and/or breached written warranties by selling a defective product.

---

[10] *See* Pl. Mem., Ex. 22, at 51 (Precor 9.23 and 9.27 treadmill owner's manuals); Ex. 23, at 62 (Precor 9.31 and 9.33 treadmill owner's manuals); Ex. 24, at 74 (Precor 9.35 treadmill owner's manual); Ex. 25, at 38 (Precor EFX 5.21 and 5.23 elliptical assembly guide); Ex. 26., at 42 (Precor EFX 5.25 elliptical owner's manual); Ex. 27, at 58 (Precor 5.31, 5.33, and 5.35 elliptical owner's manuals); Ex. 28., at 47 (Precor EFX 835 assembly and maintenance instructions); Precor RBK & UBK 815 bicycle owner's manual, *available at*: http://www.precor.com/sites/precor.com/files/manuals/RBK_615_Manuals_EN.pdf.

[11] Precor correctly points out that a consumer seeking damages for breach of an implied warranty must establish privity of contract with the seller. Def. Opp. at 39. Plaintiffs, however, do not assert a claim for breach of *implied warranty*; rather, Plaintiffs seek certification under Rule 23(a), 23(b)(2), and 23(b)(3) on behalf of a nationwide class for breach of *express warranty* under the MMWA, 15 U.S.C. § 2301, *et seq*.

-18-

Precor argues that these common questions are not capable of class-wide resolution because class members may have purchased their exercise equipment for a variety of reasons. Def. Opp. at 28.  But the reasons why people purchased Precor exercise equipment are irrelevant to Plaintiffs' claims in this case and do not destroy commonality. *See Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) (holding that "variation among class members in their motivation for purchasing the product" did not defeat commonality), *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 477-78 (C.D. Cal. 2012) (rejecting defendants' argument that commonality was not satisfied because class members may have purchased the product for different reasons, finding commonality where claims arose from defendants' failure to disclose product defects); *Seekamp v. It's Huge, Inc.*, 2012 WL 860364, at *3-4 (E.D.N.Y. Mar. 13, 2012) (rejecting defendant's argument that different possible reasons for purchasing an anti-theft automobile product precluded commonality and holding that "Plaintiff is not required to demonstrate that the putative class members had *identical motivations to purchase* [the product] from Defendants.") (emphasis added).

Precor also contends that because individuals use Precor exercise equipment for different purposes (*e.g.*, walking or running on a treadmill), commonality cannot exist.  Def. Opp. at 28. But the Seventh Circuit, among other courts, has held that commonality is found even though class members' individual experiences with a defective product may be different. *See Pella Corp. v. Saltzman*, 606 F.3d 391, 392 (7th Cir. 2010) *("Pella II")* (affirming certification of class of consumers who purchased windows with design defect even though consumers' experiences may have been caused by individual variances in weather conditions or improper installation); *IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d at 601-02 (reversing because district court erroneously held that class could not be certified because class members had different

-19-

experiences with defective roofing tiles); *Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 681 (S.D. Fla. 2009) (rejecting argument that commonality precluded where class members had different experiences with cars, and recognizing that "the critical issue of whether the [airbag system] in Lexus ES 350s was defective is common to all putative class members"). Regardless of the class members' workout routines, the question of whether Precor's exercise machines suffer from a common defect, and the accompanying scientific explanation of the nature of that defect, are subject to common proof. Here, the proof shows that the defect exists even at a lesser exercise intensity such as walking at 4 miles per hour. The defect is even more pronounced as intensity increases, with wild variations in heart rate and even, in several instances, heart rates that are lost entirely.

Finally, Precor cites to *Wal-Mart, Inc. v. Dukes* for the proposition that commonality requires a showing that class members "have suffered the same injury." 131 S. Ct. 2541, 2551 (2011). However, Precor fails to acknowledge that Plaintiffs and members of the proposed Classes have, in fact, suffered the same injury: all class members purchased Precor exercise equipment suffering from the same defect. *See Terrill v. Electrolux Home Prods., Inc.*, 295 F.R.D. 671, 685-86 (S.D. Ga. 2013) (holding question of whether washing machine contained a common defect was issue capable of classwide resolution and "central to the validity of class members' legal claims"); *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 594 (C.D. Cal. 2011) (holding defendant's argument that product at issue worked for some individual class members "goes to the proof of the merits of Plaintiff's claim, not to the common question as to the overall efficacy of the product").

And contrary to what Precor would have this Court believe, Plaintiffs need not show commonality of damages. *See, e.g., Butler*, 727 F.3d at 801 ("It would drive a stake through the

-20-

heart of the class action device . . . to require that every member of the class have identical damages").

Plaintiffs have demonstrated the significant factual and legal overlap in common questions susceptible to class-wide proof.

## V.      RULE 23(b)(3)'s PREDOMINANCE REQUIREMENT IS MET

### A.      Individual Questions of Fact Do Not Predominate[12]

Precor's tired refrain that differences in individual physiology preclude a predominance finding here reflects a fundamental misunderstanding of Plaintiffs' theory of the case and of the defect alleged.  It is not true that each member of the class would need to be tested on each machine to "determine whether or not that particular heart rate system is adequate for them." Def. Opp. at 30.  As explained above, it is *undisputed* that motion artifact can and does affect *every single heart rate monitoring device*.  And Mr. Garrett testified at deposition that, because noise is inevitable, results can vary even for one individual.  *See* Ex. B at 161:4-8.  The fact is that the Touch Sensors all suffer from inherent limitations preventing them from consistently providing accurate readings for *any* user, and this common fact predominates over Precor's manufactured individual issues.

For example, Precor contends that there are individualized questions regarding whether a class member read the "disclaimer" – essentially stating that the Touch Sensors may or may not work – but that disclaimer was standard and appeared in writing in the owner's manual provided with every machine Precor sold (as did Precor's written warranty).  Thus, like the written warranty, whether that language is deemed to have been a part of the basis of the bargain between the parties is actually a *common* question across the entire class: each class member was exposed to the language in the same manner at the same time.

---

[12] Precor does not challenge the superiority component of Rule 23(b)(3).

Plaintiffs have parried many of Precor's remaining predominance attacks in their discussion of commonality. *See Pella I*, 257 F.R.D. at 485 ("Considerable overlap exists between the court's determination of commonality and a finding of predominance. A finding of commonality will likely satisfy a finding of predominance because, like commonality, predominance is found where there exists a common nucleus of operative facts"). *Pella* is particularly instructive as it undercuts Precor's suggestion that the *manifestation* of the defect – in this case, the extent of the defect's impact on each user/class member – is the critical and predominant question of fact. In *Pella*, the court certified a class of window purchasers that included individuals whose windows had rotted thoroughly as well as those whose windows had, to that point, exhibited no outward sign of the alleged defect. *Pella II*, 606 F.3d 392. Recognizing that the existence of some individual questions is inevitable, the Seventh Circuit nevertheless concluded that the central question of *whether* the windows suffered from a common defect predominated over the question of *how* that defect affected each class member (if it had at all). *Id.* at 393.

In this case, because motion artifact is inherently unavoidable, it can and does affect every user of Precor's machines, making the showing of predominance even more straightforward than in *Pella*. Precor's authority, on the contrary, deals with disparate factual scenarios not at all analogous to the warranty and consumer fraud claims at issue here. *See, e.g., Jamie v. Milwaukee Public Schools*, 668 F.3d 481, 497 (7th Cir. 2012) (finding class certification inappropriate in Individuals with Disabilities Education Act action because compliance with the IDEA is "a complex and inherently child-specific undertaking" requiring an analysis of the reasons each child was denied benefits); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 609, 623-24 (1997) (asbestos personal injury claims, based on varying products, exposure histories,

587392.1

questions of causation, injury, and damages not susceptible to class-wide proof); *In re: Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1304 (7th Cir. 1995) (reversing order certifying class in a nationwide class action brought on behalf of hemophiliacs infected by the AIDS virus as a consequence of using defendant's blood solids, noting, consistent with *Amchem*, that "[m]ost federal courts . . . refuse to permit the use of the class-action device in mass-tort cases"). Precor's failure to cite a single comparable case in support of its predominance discussion is telling, and fatal. Moreover, in addition to the defect issue, Plaintiffs have identified a number of other common factual issues that predominate over any questions individual to members of the class. *See supra* and Plaintiff's Memorandum of Law in Support of Class Certification at 16-18.

### B. Individual Questions of Law Do Not Predominate

Aside from making blanket statements regarding "numerous material differences" and "different legal standards," Def. Opp. at 32, Precor fails to actually show that individual state laws differ such that predominance is defeated. In fact, with the exception of making a fleeting reference to reliance, Precor fails to even identify *any* differences in state laws. Even as to reliance, however, Precor raises this alleged difference in state law *only* as it pertains to the express warranty class. Def. Opp. at 35. With respect to the multi-state consumer fraud class, Precor is completely silent and Plaintiffs are left to guess the phantom differences in state law to which Precor alludes. The Court should reject Precor's vague arguments because, as shown *infra*, this case is hardly one where state law differences create an "unmanageable nightmare," Def. Opp. at 32.

Without explanation, the only Seventh Circuit case upon which Precor heavily relies is a mass tort case (*In re Bridgestone/Firestone*, 288 F.3d 1012 (7th Cir. 2002)) that relied on another mass toxic tort case (*In re Rhone-Poulenc Rorer Inc.,* 151 F.3d 1293 (7th Cir. 1995)). These

cases are wholly inapplicable here because "[i]n such cases, causation is often difficult or impossible to establish" since "the germ or contaminant in question may originate from an indefinite number of sources." *Petitt v. Celebrity Cruises*, 153 F. Supp. 2d 240, 260 (S.D.N.Y. 2001) (collecting cases). Common sense dictates that the issues at bar are not *remotely* as complex because highly individualized considerations of exposure and personal susceptibility that necessarily arise in mass tort and toxic tort cases are simply not implicated. Furthermore, the Seventh Circuit has expressly rejected the notion that predominance is defeated even when causation raises individual issues. *See Suchanek*, 764 F.3d at 759-760 (a finding "'that showing reliance or causation—as required to establish liability—requires an investigation of each purchaser.' [is] an error of law. . . Every consumer fraud case involves individual elements of reliance or causation. As we commented in *IKO Roofing*, a rule requiring 100% commonality would eviscerate consumer-fraud class actions."); *Butler,* 727 F.3d at 801 (granting class certification where there existed "a single, central, common issue of liability: whether the Sears washing machine was defective.").

Precor shows its hand by diminishing or completely ignoring other Seventh Circuit cases that are right on point and indistinguishable, like *Pella II* and *Mullins*, where the Seventh Circuit affirmed class certification of six-state and ten-state consumer fraud classes. Precor's utter failure to even identify differences in state law and its cherry picking of inapposite cases is telling of the strength of its arguments.

### 1. Multi-State Consumer Fraud Class

Precor's arguments against predominance for the multi-state consumer class are entirely premised on cases where plaintiffs sought *nationwide* certification. Def. Opp. at 32-34. This is

-24-

puzzling not only because these cases are distinguishable on other bases[13], but also because Plaintiffs seek to certify *a multi-state* consumer fraud class under the consumer laws of the following specific states: California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington. These states' laws do not materially differ in any way, and the Seventh Circuit has already upheld class certification for an ***identical*** class. *See Mulllins*, 795 F.3d at 674.

Aside from relying on inapposite case law, Precor (having no other way to distinguish this case from *Mullins*) tries to diminish the importance of *Mullins* by misrepresenting to the Court that "in *Mullins* there was no challenge to the 10 states," Def. Opp. at 32. This is simply false, and one must look no further than the table of contents of the brief filed in opposition to plaintiff's class certification motion to see that. *See Mullins*, Docket No. 1:13-cv-01829 (N.D. Ill. 2013), ECF. Doc. 64, Direct Digital's Memorandum in Opposition to Plaintiff's Motion for Class Certification at i. Direct Digital made the same weak argument as Precor here: disparities in state laws defeat predominance. *Id.* at 24-25. This was clearly a losing argument. In the District Court's decision granting class certification, the only mention of any differences in state law is in a footnote that points to the differing statute of limitations among the consumer protection laws of the ten states. *Mullins*, 2014 U.S. Dist. LEXIS 155018, at *6 n.1 (N.D. Ill. September 30, 2014). That is because the differences in state law begin and end there.[14] And the

---

[13] As noted *supra*, *In re Bridgestone/Firestone* and *In re Rhone-Poulenc Rorer* were mass tort cases. In fact, the Court in *In re Bridgestone/Firestone* rejected plaintiffs' attempt to construe the case as one based in contract. 288 F.3d at 1017. The only other case relied upon by Precor to defeat certification of the 10-state consumer class is *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011), where the central issues were (1) whether a class action is superior when plaintiffs had an easily obtainable remedy because the defendant recalled the toxic product and instituted a refund program, and (2) "whether a product's distributor should pay punitive damages for a problem caused by a foreign supplier's unauthorized substitution." Neither of these inquiries is at issue here.

[14] The statutes of limitations of the ten consumer laws at issue are 3 years (Illinois, New York), 4 years (California, Florida, Massachusetts, Washington), 5 years (Missouri) and 6 years (Michigan, Minnesota,

appellate opinion in *Mullins* does not so much as mention the phantom differences in state law inferred by Precor because there simply are no material differences in these states' consumer protection laws.[15]

First, all of these consumer protection laws create a private right of action.[16] Second, none of these consumer laws require reliance.[17] Third, proving materiality is identical under

New Jersey).  However, differences in statutes of limitation do not defeat predominance.  *See Saltzman v. Pella Corp.*, 257 F.R.D. 471, 486 (N.D. Ill. 2009) *aff'd*, 606 F.3d 391 (7th Cir. 2010) ("this Court has rejected the per se prohibition against certification based upon statute of limitations differences").  In *Pella*, the District Court certified a multi-state consumer fraud class consisting of six states, *all* of which are in the 10-state class proposed here: California, Florida, Illinois, Michigan, New Jersey, and New York.  The Seventh Circuit affirmed that certification.  *Pella Corp. v. Saltzman*, 606 F.3d 391, 393 (7th Cir. 2010).  *See also In re Conagra Foods, Inc.*, 90 F. Supp. 3d 919, 983 (C.D. Cal. 2015) (certifying consumer claims under the consumer laws of California, Florida, Illinois, and New York).

[15] California (Cal. Bus. & Prof. Code §17200, *et seq.*); Florida (Fla. Stat. §501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws §445.901, *et seq.*); Minnesota (Minn. Stat. §325F.67, *et seq.*); Missouri (Mo. Rev. Stat. §407.010, *et seq.*); New Jersey (N.J. Stat. §56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §349, *et seq.*); and Washington (Wash. Rev. Code §19.86.010, *et seq.*).

[16] *See* Cal. Bus. & Prof. Code § 17203; Fla. Stat. Ann. § 501.211; 815 Ill. Comp. Stat. 505/10a, Mass. Gen. Laws Ch. 93A, § 9(1); Mich. Comp. Laws §445.911; Minn. Stat. §8.31(3a); Mo. Rev. Stat. §407.025; N.J. Stat. §56:8-19; N.Y. Gen. Bus. Law §349(h); Wash. Rev. Code §19.86.090.

[17] *See In re Conagra Foods, Inc.*, 90 F. Supp. 3d 919, 983 (C.D. Cal. 2015) ("a California class suing under the state's consumer protection statutes need not show individualized reliance"); *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 703 (Fla. Dist. Ct. App. 3d Dist. 2000) (finding FDUTPA does not require reliance and reversing denial of class certification); *See Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 576 (7th Cir. 2001) ("[T]he Illinois Supreme Court has repeatedly held that, unlike a claim for common law fraud, reliance is not required to establish a consumer fraud claim.") (citing *Connick v. Suzuki*, 174 Ill.2d 482 (1996)); *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 703 (Mass. 1975) ("in the statutory action proof of actual reliance by the plaintiff on a representation is not required"); *Dix v. American Bankers Life Assurance Co.*, 429 Mich. 410, 418 (Mich. 1987) ("a class proceeding under the Consumer Protection Act need not individually prove reliance on the alleged misrepresentations"); *Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2 (2001) (requiring individual reliance "in the guise of causation would reinstate the strict common law reliance standard that we have concluded the legislature meant to lower for these statutory actions."); *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 83 (Mo. Ct. App. 2011) (declining to reverse class certification of MMPA claims and noting "evidence of each physician's or consumer's reliance on Merck's misrepresentation was not required as 'reliance is not an element of deception or misrepresentation' under the MMPA's regulations and Missouri's case law.") (quoting *Plubell v. Merck & Co.*, 289 S.W.3d 707, 713-714 (Mo. Ct. App. 2009) (MMPA does not require reliance or " an unlawful practice cause a 'purchase.'")); *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 74 (D.N.J. 2009) (NJCFA does not require reliance); *Wilner v. Allstate Ins. Co.*, 71 A.D.3d 155, 161-162 (N.Y. App. Div. 2d Dep't 2010) (GBL § 349 does not require reliance); *Schnall v. AT&T Wireless Servs., Inc.*, 171 Wn.2d 260, 277 (Wash. 2011) ("firmly reject[ing] the principle that reliance is necessarily an element of the plaintiff's" CPA claim under Washington law).

-26-

these ten state laws because the materiality of a misrepresentation is judged by the reasonable person standard and is sufficient to prove causation on a class-wide basis.[18]

As in *Pella* and *Mullins*, there simply are no material differences in the consumer fraud laws of the ten states at issue here, and certification for this limited subclass is warranted. *See United Health Group, Inc. v. Klay*, 543 U.S. 1081 (2005) (noting advantages for grouping state laws and certifying subclasses accordingly); *Fournigault v. Independence One Mortg. Corp.*, 234

---

[18] *In re Conagra Foods, Inc.*, 90 F. Supp. 3d 919, 983 (C.D. Cal. 2015) (California's Unfair Competition Law "allows plaintiffs to establish materiality and reliance (i.e., causation and injury) by showing that a reasonable person would have considered the defendant's representation material.") (citing *Forcellati v. Hyland's, Inc.*, No. CV 12-1983, 2014 U.S. Dist. LEXIS 50600 at *9 (C.D. Cal. Apr. 9, 2014)); *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 Fed. Appx. 565, 567 (11th Cir. 2009) (pursuant to the "FDUTPA . . . the plaintiff must prove that 'the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances.'") (quoting *State, Office of the Att'y Gen. v. Commerce Comm. Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. 1st DCA 2007)); *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 505 (Ill. 1996) ("A material fact exists . . . if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase."); *Fleet Nat'l Bank v. Pirolli*, 2000 Mass. Super. LEXIS 702, *38 (Mass. Super. Ct. Aug. 28, 2000) (""The 'failure to disclose any fact, the disclosure of which may have influenced a person not to enter into a transaction, is a violation of c. 93A.'") (quoting *Grossman v. Waltham Chemical Co.,* 14 Mass. App. Ct. 932, 436 N.E.2d 1243, 1245 (1982))*; Dix v. American Bankers Life Assurance Co.*, 429 Mich. 410, 418 (1987) ("We hold that members of a class proceeding under the Consumer Protection Act need not individually prove reliance on the alleged misrepresentations. It is sufficient if the class can establish that a reasonable person would have relied on the representations."); *Columbia Physical Therapy, Inc. v. Benton Franklin Orthopedic Assocs., PLLC*, 168 Wn.2d 421, 442 (Wash. 2010) (pursuant to Washington's Consumer Protection Act, "[a]n act is deceptive if it has "the capacity to deceive a substantial portion of the public.' Even accurate information may be deceptive 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer.'") (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 785 (1986) and *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 50 (2009)); *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 773 (Mo. 2007) ("MPA regulations define 'material fact,' in pertinent part, as 'any fact which a reasonable consumer would likely consider to be important in making a purchasing decision . . .' 15 C.S.R. 60-9.010(1)(C). This definition of material is broader than the materiality requirement of common law fraud."); *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. at 74 (to pursue a claim under the NJCFA "'[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable [purchaser] might have considered them important in the making of [his or her] decision. This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact.'" (quoting *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972) and citing *Varacallo v. Mass. Mut. Life Ins. Co.*, 752 A.2d 807, 818 (N.J. App. Div. 2000)); *Wilner v. Allstate Ins. Co.*, 71 A.D.3d at 161-162 (GBL § 349 requires only that misconduct which is deceptive and materially misleading to a reasonable consumer, [] causes actual damages."); *Schnall v. AT&T Wireless Servs., Inc.*, 171 Wn.2d at 277 (a plaintiff bringing a CPA claim under Washington law is only required to "establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury").

-27-

F.R.D. 641 (N.D. Ill. 2006); (certifying 7-state breach of contract subclass); *In re Diamond Shamrock Chems. Co.*, 725 F.2d 858, 861 (2d Cir. 1984) (subclasses can be created corresponding to variations in state law); *In re Telectronics Pacing Sys.*, 168 F.R.D. 203, 221 (S.D. Ohio 1996) (where the class action proponent shows that state law variations can be effectively managed through the creation of subclasses grouping the states that have similar legal doctrines, class certification is appropriate).

## 2. Nationwide Express Warranty Class

Once again, Precor fails to identify differences in state laws or explain why these differences would predominate over the many common liability issues in this case. Aside from making another misrepresentation[19] to the Court by stating that Plaintiffs cannot meet "common reliance" because "they did not rely on Precor materials for making their purchases," Def. Opp. at 35, Precor fails to identify any actual differences in state warranty laws. As such, the Court should certify a nationwide breach of warranty class.

Precor is wrong to suggest that "common reliance" is a predominant individual issue, completely ignoring that it issued ***written express warranties*** to end-users that warranted its products to be free from defects. *See* fn. 10, *supra*. Because these claims are premised on uniform written express warranties, they are ***contractual*** in nature and as such, ***there is no reliance element***. This is why the Seventh Circuit clearly holds that reliance, which is promulgated by the "basis of the bargain" rule outlined in § 2-313 of the U.C.C., "is not applicable to situations where the warranties are clear and express." *Wikoff v. Vanderveld*, 897 F.2d 232, 241 (7th Cir. Ill. 1990); *see also Norcold, Inc. v. Gateway Supply Co.*, 798 N.E.2d 618, 601 (Ohio Ct. App. 2003) (the basis of the bargain rule "is relevant to the question of whether an

---

[19] As stated in Plaintiffs' moving brief and above, both Mr. Mednick and Mr. Bayer relied on the reliability of the Touch Sensors in making their respective purchases.

587392.1

express warranty has been created, and [] *is not applicable to situations where written warranties are clear and express*.") (emphasis added).

Here, not only is Precor's warranty made part of every purchase because it issues a written express warranty against defects but also because Precor's exercise equipment prominently displays a picture of a heart where the user can see his or her heart rate, as well as the word "Smartrate," which Precor markets as a feature that allows users to stay within their target heart rate zones. *See* Pl. Mem. at 5-6. Precor thus warrants the reliability of the Touch Sensors on the very face of its products and in the accompanying express written warranty. Reliance under these circumstances is not necessary.[20]

The distinctions between written express warranties and warranties created through representations in advertisements is key:

> [T]here are express factual representations that may or may not be warranties and then there are "express warrant[ies] . . . given in express terms as a part of the contract of sale . . . ." Without widely recognized terms for distinguishing between "reliance-created" express warranties and "express" express warranties, it is not surprising that the distinction is not always clearly articulated. But the distinction is nevertheless evident in Wisconsin case law.
> . . .
>
> The Court therefore concludes that, when a party such as Pentair has unquestionably bargained for, and received, an express warranty as a part of a contract, that party need not prove reliance in order to recover for breach of that warranty.

---

[20] According to Plaintiffs' research, the only states that require reliance even when there is a written express warranty are Arkansas and Washington. *Brooks v. Remington Arms Co.*, 2010 U.S. Dist. LEXIS 143398, *15-16 (W.D. Ark. Oct. 27, 2010); *Afoa v. China Airlines Ltd.*, 2013 U.S. Dist. LEXIS 93816, *7 (W.D. Wash. July 3, 2013). If the Court deems it appropriate, subclasses of states with similar laws could be created to accommodate any differences in breach of warranty law. *See Williams v. Chartwell Financial Services, Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000); *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 477 (N.D. Ill. 2009). However, individual issues related to reliance should not defeat class certification altogether. *See Riordan v. Smith Barney*, 113 F.R.D. 60, 65 (N.D.Ill.1986) ("It is well established that individual issues of reliance do not thwart class actions.").

*Pentair, Inc. v. Wis. Energy Corp.*, 662 F. Supp. 2d 1134, 1143-1144 (D. Minn. 2009) (internal citations omitted).[21]

Since Precor's warranty is made part of every purchase, Plaintiffs' claims "do[ ] not require a showing of reliance because it is *presumed* that such a warranty is a basis of the bargain." *In re Caterpillar, Inc.*, *C13 & C15 Engine Products Liab. Litig.*, 2015 U.S. Dist. LEXIS 98784, at *90 (D.N.J. July 29, 2015) (emphasis added).[22] Any other finding **"would, in**

---

[21] Analyzing a claim for breach of express written warranty under contract principles makes logical sense, as courts often dismiss separately stated breach of contract claims as duplicative of claims for breach of an express written warranty, or vice versa. *See, e.g., Robinson v. Kia Motors Am., Inc.*, 2015 U.S. Dist. LEXIS 121755, at *41 (D.N.J. Sep. 11, 2015) ("The Court agrees with Kia that Plaintiffs' breach of contract claim fails as duplicative. Plaintiffs have identified no contract between the parties other than the express warranty alleged in Count 5. Accordingly, this claim must be dismissed as duplicative"); *Osram Sylvania, Inc. v. Townsend Ventures, LLC*, 2013 Del. Ch. LEXIS 281, at *16-18 (Del. Ch. Ct. Nov. 19, 2013) ("At the outset, I find that OSI's breach of warranty claim is duplicative of its breach of contract claim and, therefore, should be dismissed. OSI alleges breach of warranty as to exactly the same provisions of the SPA upon which it bases its breach of contract claim. Any breach of an express warranty also would qualify as a breach of contract, however, and the remedies available under either claim are equivalent"); *Bd. of Mgrs. of Ocean One Condo. v. Ocean One Condo., Inc.*, 2015 NY Misc. LEXIS 2397, at *9-10 (N.Y. Sup. Ct. June 16, 2015) ("Turning to the branches of the motion by Ocean One, Rosemill, Miller, and Rose to dismiss the causes of action for breach of express warranties asserted against Ocean One, said causes of action are dismissed as duplicative of the breach of contract and specific performance claims against Ocean One since they are based on the same construction defects and seek the same relief").

[22] *See also In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 972-73 (N.D. Cal. 2014) ("Also, many of the cases cited by Ford are distinguishable because they did not involve written warranties delivered in connection with a sale (as here). Where there is an express written warranty, an assertion that the warranty was not part of the deal between the issuing party and receiving party is far less persuasive."); *Weinstat v. Dentsply Internat., Inc.*, 180 Cal. App. 4th 1213, 1230 (Cal. App. 1st Dist. 2010) ("Under Dentsply's view of express warranty law, the company would not be obliged to stand by any statement it made in the Directions, including the printed 'limited warranty' guaranteeing against defects in manufacture and workmanship. *Surely this is not the law*.") (emphasis added); *In re Bridgestone/Firestone Inc. Tires Products* (S.D. Ind. 2001) 205 F.R.D. 503, 527 & fn. 31, revd. on other grounds in (7th Cir. 2002) 288 F.3d 1012) ("Whether the consumer was aware of the terms of the written warranty before the purchase or not, it was certainly part of the bargain, in that the warranty was part of what the seller sold to the buyer."); *Mowbray v. Waste Mgmt. Holdings, Inc.*, 189 F.R.D. 194, 200 (D. Mass. 1999) ("A decisive majority of courts that have considered the issue, however, have held, as this Court did in the April 26 Order with respect to Illinois law, that reliance is not an element of a claim for breach of warranty, when the fact that the warranty was created is not in dispute."); *Murphy v. Mallard Coach Co.*, 179 A.D.2d 187, 193 (N.Y. App. Div. 3d Dep't 1992) ("To accept the manufacturer's argument that in order to be part of the basis of the bargain the warranty must actually be handed over during the negotiation process so as to be said to be an actual procuring cause of the contract, is to ignore the practical realities of consumer transactions wherein the warranty card generally comes with the goods, packed in the box of boxed items or handed over after purchase of larger, non-boxed goods and,

-30-

*effect, render almost all consumer warranties an absolute nullity.*"  *Murphy,* 179 A.D.2d at 193 (emphasis added).

Precor has not made a showing of any other relevant differences in state law but, for the sake of completeness, Plaintiffs will address privity and notice of breach.  The Court should not concern itself with considerations of privity for the same reason it should ignore the reliance issue: Precor provides written express warranties to its end-users.  As the Illinois Supreme Court acknowledged, "privity of contract [] exists between a manufacturer and consumer when the manufacturer makes a contractual promise (express warranty) directly to the consumer."  *Rothe v. Maloney Cadillac, Inc.,* 119 Ill. 2d 288, 294-95, 518 N.E.2d 1028, 1030-31 (Ill. 1988).  In *Rothe*, the Court found that "the contractual relationship (between the manufacturer/express warrantor and consumer) is sufficient to impose upon the manufacturer/express warrantor liability," and that "under Magnuson-Moss, GM's express warranty made directly to plaintiff provides him with a basis to assert GM's breach of implied warranties."  *Id.* at 295.  It would be completely nonsensical for the MMWA to extend privity to the manufacturer/end-user relationship in the context of *implied* warranty claims, but not *express* warranty claims.  *See e.g. Great American Ins. Co. v. Paty's, Inc.,* 154 Mich. App. 634, 641 (Mich. Ct. App. 1986) ("the defendant here bound itself directly to the plaintiff's subrogor by offering an express warranty on the parts and workmanship of the combine to the first retail buyer."); *Paulson v. Olson Implement Co.*, 107 Wis. 2d 510, 518-519 (Wis. 1982) (where the Court held that a manufacturer's express warranty "formed a unilateral contract with the plaintiffs which was accepted and became binding when the plaintiffs signed the sales contract with [the dealer]. That

---

accordingly, not available to be read by the consumer until after the item is actually purchased and brought home.");  *Smith v. Reed*, 124 N.W. 489, 491 (Wis. 1910) ("It is true that if an express warranty had been given in express terms as a part of the contract of sale, no proof of reliance thereon would have been necessary.").

-31-

sales contract furnished the underlying consideration for the warranty contract between [the manufacturer] and the plaintiffs.  We have no difficulty, in law or equity, in finding privity between these parties.").

With respect to notice of breach, the Seventh Circuit unequivocally holds that "Federal courts in diversity actions apply state substantive law and federal procedural law." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 346 (7th Cir. 1997) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).  Since, a state consumer statute's notice requirement is a "procedural, not substantive [requirement], [] Rule 23, with no notice provision, applies."  *Mace*, 109 F.3d at 347 (finding that the notice provision of the Wisconsin Consumer Act was procedural in nature and vacating the district court's order denying class certification).[23]

Should the Court find, however, that differences in state warranty laws raise manageability concerns, it should create subclasses because courts in this District and elsewhere routinely afford plaintiffs the opportunity to move for state-specific classes.  *See Butler*, 727 F.3d at 802 ("Complications aris[ing]. . . from separate state warranty laws . . . can be handled by the creation of subclasses."); *Allen v. Am. Honda Motor Co.*, 264 F.R.D. 412, 429 (N.D. Ill. 2009) (finding that "[t]hough the court will be called upon to address the laws of multiple jurisdictions, the laws are similar enough that the case will be manageable," and certifying a 24-state breach of express warranty subclass) *rev'd on other grounds*, 300 F.3d 813 (7th Cir. 2010); *Barden v. Hurd Millwork Co.*, 249 F.R.D. 316, 321 (E.D. Wis. 2008) (certifying a 21-state breach of express warranty subclass where "class members purchased similar products and received the

---

[23] Even if the Seventh Circuit had not already squarely addressed this issue in *Mace*, this Court correctly recognized in denying Precor's motion to dismiss that notice is not required where the seller has actual knowledge of the defect at issue.  Dkt. No. 38 at 17 (citing *Connick*, 675 N.E.2d at 589).  Any discussion of notice is superfluous because there is no potential for prejudice caused by lack of notice where a manufacturer knows of the defect.  Under the circumstances of this case, Precor's notice defense (if it raised one) is a pure sham concocted only to defeat class certification.

same standard warranty" and the plaintiffs claimed that all the products suffered from the same defect); *In re Conagra Foods*, Inc., 90 F. Supp. 3d 919 (C.D. Cal. 2015) (certifying a 3-state breach of warranty subclass); *Mowbray v. Waste Mgmt. Holdings, Inc.,* 189 F.R.D. 194, 195 (D. Mass. 1999) *aff'd*, 208 F.3d 288 (1st Cir. 2000) (certifying a 10-state breach of warranty subclass).

### C. Plaintiffs' Method of Proving Class-Wide Damages Underscores the Propriety of Class Certification

In devoting its entire damages argument to pointing out purported flaws in the model proposed by Plaintiff's expert, Jonathan Schwartz, Precor completely ignores the basic tenet that "the need for individual damages determinations does not, in and of itself, require denial of [plaintiffs'] motion for certification." *Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008). Perhaps cognizant of this, Precor cites to cases from the District of Columbia, Pennsylvania, New Jersey, and Illinois state court but *zero* cases from this court or the Seventh Circuit on this well-settled point. *See, e.g., Butler*, 727 F.3d at 801; *Bell v. Castillo*, 2016 U.S. Dist. LEXIS 9736, at *36 (N.D. Ill. Jan. 26, 2016) ("Even if it were necessary to conduct individual damages determinations in this case, that would not require denial of class certification") (citing *Mullins*, 795 F.3d at 671) ("It has long been recognized that the need for individual damages determinations at [a] later stage of the litigation does not itself justify the denial of certification"); *La. Firefighters' Ret. Sys. v. N. Tr. Invs., N.A.*, 2015 U.S. Dist. LEXIS 170281, at *29 (N.D. Ill. Dec. 21, 2015) ("though damages may have to be determined individually, that is not a basis for denying class certification").

Plaintiffs therefore need not offer a class-wide method for assessing damages. Nevertheless, they have, and Precor's criticism of these damages models Mr. Schwartz sets forth (by suggesting that they rely on the flawed premise that the monitoring systems have no value

because the systems "work perfectly well for" some class members) goes to the merits of the damages theory, not whether it can be applied on the basis of common, class-wide proof. In any event, Precor's contention that the systems work fine for some class members is also a determination on the merits that is not supported by the evidence regarding motion and muscle artifact applicable to every system, as discussed above.

Even *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), upon which Precor relies, merely held that the damages model at issue must relate to the underlying theory of the case. *Id.* at 1433 ("It follows that a model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3). Calculations need not be exact, but at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case") (internal citations and quotations omitted).[24] That is exactly what we have here: Plaintiffs allege that Precor's Touch Sensor heart rate monitors do not function as warranted and that, as a result, Plaintiffs and members of the class have been injured in an amount equal to the value of those monitors. Plaintiffs therefore *can* prove class-wide damages.

## VI. PLAINTIFFS CAN PROPERLY PURSUE INJUNCTIVE RELIEF UNDER RULE 23(B)(2)

Precor does not raise any challenge to Plaintiffs' request for certification of an injunctive

---

[24] The pithy quip Precor attributes to the Supreme Court's *Behrend* ruling – "no damages model, no predominance, no class certification" – is not in that decision, or any Supreme Court decision. It actually appears *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013), a non-binding circuit court opinion which expressly departs from controlling Seventh Circuit law on the necessity of a class-wide damages model at the certification stage.

relief class.  *See generally* Def. Opp.  Plaintiffs' motion should therefore be granted to the extent it seeks certification pursuant to Fed. R. Civ. P. 23(b)(2) for all of the reasons discussed in Plaintiffs' opening brief.

## CONCLUSION

Because this case turns on common factual and legal issues which will be proven or disproven by evidence common to the Class, certification is warranted. Accordingly, Plaintiffs' Nationwide and Multi-State Class should be certified; Plaintiffs Mednick and Bayer should be appointed Class Representatives; and Katrina Carroll (Lite DePalma Greenberg, LLC), Joseph J. Siprut (Siprut PC) and Richard R. Gordon (Gordon Law Offices), should be appointed Class Counsel.

Dated:  March 7, 2016

Respectfully submitted,

*/s/  Katrina Carroll*
Katrina Carroll, Esq.
*kcarroll@litedepalma.com*
Kyle A. Shamberg, Esq.
*kshamberg@litedepalma.com*
**LITE DEPALMA GREENBERG, LLC**
211 W. Wacker Drive, Suite 500
Chicago, Illinois 60606
Phone: 312.750.1265
Fax: 312.212.5919

Joseph J. Siprut
*jsiprut@siprut.com*
Richard L. Miller II
*rmiller@siprut.com*
Michael L. Silverman
*msilverman@siprut.com*
**SIPRUT PC**
17 N. State Street, Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.477.0553

Richard R. Gordon, Esq.

-35-

*richard.gordon@gordonlawchicago.com*
**GORDON LAW OFFICES, LTD.**
211 W. Wacker Drive, Suite 500
Chicago, Illinois 60606
Phone: 312.332.5200
Fax: 312.236.7727

***Attorneys for Plaintiffs Gary Mednick and
Steven Bayer and the Putative Class***

-36-