IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GARY MEDNICK and STEVEN
BAYER, Individually and on
Behalf of All Others
Similarly Situated,

               Plaintiffs,

     v.

PRECOR, INC., a Delaware
Corporation,

               Defendant.

Case No.  14 C 3624
CONSOLIDATED ACTION

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court is the parties' dispute over whether Plaintiffs should have the Court's permission to file an Amended Complaint [ECF Nos. 130, 141].  For the reasons stated herein, Plaintiffs are given leave to amend their Complaint subject to some limitations.

## I.  LEGAL STANDARD

A grant or denial of a motion to amend a pleading is within the discretion of the district court judge.  *Foman v. Davis,* 371 U.S. 178, 182 (U.S. 1962).  Nonetheless, Rule 15(a) of the Federal Rules of Civil Procedures instructs judges to "freely give leave when justice so requires."  Thus, in the absence of "undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment," leave to amend should and will be given. *Foman,* 371 U.S. at 182.

There is still the question of what evidence the Court may consider when reviewing a motion for leave to amend a complaint. Plaintiffs urged that the Court look solely to the pleadings and determine if their claim is "plausible on its face." (Pls.' Reply Mem. Supp. Mot. Am. Compl., ECF No. 141, p.5.) Plaintiffs say that this is because "a proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss." *Id.,* p.6 (internal quotation marks omitted). But the very case that Plaintiffs cite for this proposition, *Peoples v. Sebring Capital Corp.,* acknowledged that the above statement is only "generally" true. *Peoples v. Sebring Capital Corp.,* 209 F.R.D. 428, 430 n.1 (N.D. Ill. 2002). *Peoples* explicitly noted that the statement is not true when courts have pending before them a motion for summary judgment. *See, id.* In such circumstances, courts may consider extrinsic materials, indeed the same materials considered in summary judgment, in ruling on the motion for leave to amend. *Id.* While there is no summary judgment motion before this Court, the Court has already decided a Motion on Class Certification. As such, the Court will consider the same

materials in deciding this Motion as it did for class certification.

## II. **BACKGROUND**

The factual background of this case was discussed at length in the Court's Memorandum Opinion denying class certification on June 10, 2016. *See,* ECF No. 125, p. 1-8. Below is an account of the facts as they have unfolded since that last ruling. Other facts will be discussed in the analysis as they become relevant.

### A. **Proceedings since Denial of Class Certification**

Shortly after the denial of class certification, the parties appeared again before the Court. During this appearance on June 30, Plaintiffs' counsel said that Plaintiffs would "seek leave to file an amended complaint, your Honor, that is much narrower than the original complaint the class sought in the class cert motion." (Transcript, ECF No. 134, p. 2.) Defendant Precor's counsel replied, "We would need to see the motion, your Honor." *Id.* at 3. The Court then set the briefing schedule for the initial filing, response, and reply. *Id.* The exchange between the parties and the Court makes clear that the Court was setting the schedule for a Motion for Leave to Amend the Complaint and not for the filing of an Amended Complaint itself. The minute order issued on the same day, however, stated,

"Plaintiff to file amended complaint by 7/14/2016." (ECF No. 126.)

## B. Amended Complaint

Plaintiff filed its First Amended Complaint (the "FAC") by the deadline. (ECF No. 127.) Plaintiffs' Complaint now alleges a single cause of action: violation of the Illinois Fraud and Deceptive Business Practices Act and nine other consumer protection statutes "which are materially similar" to Illinois law. *Id.* ¶¶ 97-102. The ten states whose laws are implicated are California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington. *Id.* ¶ 99.

Plaintiffs sought to represent four different classes in their Amended Complaint. The first new class, called the "Multi-State Damages Class," was made up of all persons, not otherwise excluded, who are residents of the ten states and "who purchased a Precor *treadmill* equipped with a touch sensor heart rate monitor from either Precor or a third-party retailer." FAC ¶ 86 (emphasis added). In the alternative, Plaintiffs bring the action on behalf of an "Illinois Resident Damages Class," which is defined in the same way as the Multi-State Damages Class but is confined to residents of Illinois. *Id.* ¶ 87.

In addition to the damages classes, Plaintiffs sought to represent a Multi-State Injunctive Relief Class and an Illinois

Resident Injunctive Relief Class. These injunctive relief classes are defined in the same way as the damages classes, although presumably their members are entitled only to a remedy in equity. (FAC ¶¶ 88-89.) Plaintiffs also expanded on the injunctive relief they seek, naming five specific ways in which they would have Precor enjoined. *Id.* at 27. All five are forms of prospective injunctive relief having to do with how Precor advertises its treadmills in the future. For instance, Plaintiffs asked for an order "enjoining Precor from making representations regarding the validity, reliability or accuracy of the Touch Sensor Monitoring feature on its treadmills." *Id.*

As for money damages, Plaintiffs requested the same types of damages as in their original Complaint. These included "compensatory damages . . . and treble, multiple, disgorgement, punitive or other damages" as well as "pre-judgment and post-judgment interest" and awards of "attorney fees, expenses, and costs." (FAC at 27.)

Because Plaintiffs' sole claim for relief is now predicated on the allegation that Precor engaged in unfair and misleading representations in marketing its heart rate monitors, Plaintiffs also refined and expanded on their allegations of Precor's allegedly deceptive advertising. *See,* FAC ¶¶ 5-14, 42-54. For example, Plaintiffs emphasized that, "In every product accompanying a Precor treadmill, Precor made the exact same

statement, that, *"whether you walk or run,"* the [touch sensor heart rate monitoring] feature allows the consumer to 'maximize' their workout," all the while knowing that such a statement was false. *Id.* at ¶¶ 15, 16, 45 (emphasis in original).

Plaintiffs' factual allegations may be distilled thusly: (1) "Precor's Touch Sensor Monitoring in treadmills does not work as advertised" (FAC ¶¶ 15, 26); (2) Precor knew that its Touch Sensor technology "cannot perform as advertised" (FAC ¶¶ 22, 26); and (3) by "inducing [consumers] to pay a premium price for a feature that simply could not work as advertised," Precor had violated the consumer protection laws of the ten named states (FAC ¶¶ 22, 99).

## IV. ANALYSIS

Precor raised four issues with Plaintiffs' Amended Complaint. The first is a procedural issue arising from the fact that Plaintiffs had not filed a Motion for Leave to Amend a Complaint prior to filing the Amended Complaint itself. The remaining are substantive arguments related to standing, futility, and undue prejudice. The Court will address each in turn.

### A. Procedural Error

While it is true that Plaintiffs had not filed a Motion for Leave to Amend, the Court recognized that its minute order issued on June 30 had in error allowed Plaintiffs to file an

Amended Complaint directly. *See,* Min. Order, ECF No. 137 (correcting the June 30 minute order). The Court will thus treat the parties' briefs on the issue as a Motion for Leave to Amend the Complaint. In so doing, the Court exercises its discretion and rejects Precor's attempt to have this Court deny leave solely on the procedural ground that Plaintiffs did not file a motion.

## B. Standing

As the party asserting jurisdiction, Plaintiffs bear the burden of showing standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (U.S. 1992). Moreover, "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required *at the successive stages of the litigation.*" *Id.* (emphasis added). The Court is aware that Plaintiffs have already survived a Motion to Dismiss on standing grounds. It is also mindful of the fact that the case is now two years out from the date of the Motion to Dismiss and the record before the Court is much different than it was at that point. The Court will thus consider the standing arguments raised by Precor anew.

In this case, there are two issues that raised a concern about Plaintiffs' standing to bring suit on behalf of the classes they defined. First, Plaintiffs are asserting a claim

related to Precor treadmill models that they did not buy. Second, Plaintiffs seek to represent the Injunctive Relief classes but Plaintiffs have not pled how such *prospective* injunctive relief would redress their injury.

## 1. *Standing on Unpurchased Products*

Plaintiffs are now seeking to represent a class of consumers who bought Precor treadmills with touch sensor heart rate monitors. The parties disagree on whether this is an expansion of the class for which Plaintiffs previously sought certification and how many Precor treadmill models the Amended Complaint now covers. However, the parties do not dispute that both named Plaintiffs bought the same 9.23 Model of treadmill and that the Complaint covers at least four other treadmill Models, the 9.27, 9.31, 9.33, and 9.35. The parties also do not dispute that the four unpurchased models use a different heart rate monitoring system than the 9.23. *See,* Decl. Tormay Brown, ECF No. 130, Ex. A, p. 6 Table 1.

### a. *Legal Standard*

As the Court noted in the opinion disposing of Precor's motion to dismiss, there is no uniformity across the country on the issue of standing for claims related to unpurchased products. (ECF No. 125, p. 8.) Courts that have taken up the question appear to follow one of (at least) two approaches: they either denied standing with regards to the unpurchased

products, or they allowed it when the purchased and unpurchased products, as well as the alleged misrepresentations, are "substantially similar." *Compare, Holliday v. Albion Labs., Inc.,* 2015 U.S. Dist. LEXIS 178148, *5-15 (S.D. Fla. June 9, 2015) (stating that "courts in this District have consistently interpreted *Prado-Steiman* [a case by the Eleventh Circuit Court of Appeals] to preclude a named plaintiff from bringing claims involving products the named plaintiff did not purchase on behalf of a class"); *Padilla v. Costco Wholesale Corp.,* 2012 U.S. Dist. LEXIS 87222, *6-9 (N.D. Ill. June 21, 2012) (denying standing because the plaintiff "cannot use the class-action device to predicate standing on injury which he does not share") (internal quotation marks omitted); *Pearson v. Target Corp.,* 2012 U.S. Dist. LEXIS 187208, *3-4 (N.D. Ill. Nov. 9, 2012) (asking rhetorically "how could [the plaintiff] possibly have been injured by representations made on a product he did not buy?" and denying standing); *Conrad v. Nutramax Labs., Inc.,* 2013 U.S. Dist. LEXIS 133072, *5-8 (N.D. Ill. Sept. 18, 2013) (following *Padilla* and denying standing because the plaintiff "has incurred no damages as the result of any representations" made about the product that he did not buy); and *Ferrari v. Best Buy Co.,* 2015 U.S. Dist. LEXIS 61988, *15-21 (D. Minn. Mar. 13, 2015) (rejecting the "substantial similarity" approach because, as in an earlier case, "nowhere in the complaint had the

plaintiffs alleged that they ever purchased these products")
(internal quotation marks omitted); *with Davidson v. Kimberly-Clark Corp.,* 2014 U.S. Dist. LEXIS 110055, *18 (N.D. Cal.
Aug. 8, 2014) (acknowledging the split but siding with district
courts that look to see whether there are substantial
similarities and common misrepresentations); *Gubala v. Allmax
Nutrition, Inc.,* 2015 U.S. Dist. LEXIS 144583, *7-12 (N.D. Ill.
Oct. 26, 2015) (stating that in making a determination of
standing for unpurchased products, "courts analyze the
similarities of both the physical products and the alleged
misrepresentations" and finding there were not enough
similarities to warrant standing); *Cox v. Chrysler Grp., LLC,*
2015 U.S. Dist. LEXIS 133393, *44-47 (D.N.J. Sept. 30, 2015)
(refusing to dismiss claims for products that the named
plaintiffs did not buy); and *Quinn v. Walgreen Co.,* 958
F.Supp.2d 533, 541-542 (S.D.N.Y. 2013) (following what it calls
the "better approach" of analyzing whether there are substantial
similarities between purchased and unpurchased products).
Courts that take the more plaintiff-friendly view to standing
generally allow the class action to proceed past a motion to
dismiss but may consider the issue again at the certification
stage under the rubric of typicality, adequacy of
representation, or predominance. *See, e.g., Davidson,* 2014 U.S.
Dist. LEXIS 110055 at *19-21 ("Where there is sufficient

similarity between the products but also material differences among them, concerns regarding the material differences can be addressed at the class certification stage.").

While the two approaches seem at odds with one another, they are not irreconcilable. Even cases that deny standing for unpurchased products stressed the differences between the purchased and unpurchased products. *See, e.g., Padilla,* 2012 U.S. Dist. LEXIS 87222 at *8 (finding as a matter of law that the plaintiff did not have standing but nonetheless noting that the bought and unbought products "have different product formulations and labels"); *Conrad,* 2013 U.S. Dist. LEXIS 133072 at *8 (following *Padilla* and *Pearson* but stating that "[the unpurchased] CosaminASU contains additional ingredients to [purchased] CosaminDS" and therefore declining to "to hold that they are virtually the same product"); *Holliday,* 2015 U.S. Dist. LEXIS 178148 at *12-13 (dismissing the plaintiff's assertion of standing partly because "every re-seller has its own labeling and pricing scheme"); and *Ferrari,* 2015 U.S. Dist. LEXIS 61988 at *18-19 (finding that "there are many more distinguishing characteristics between models of televisions than simply size" but otherwise not rejecting the argument that "different models of a television are not separate products" had they been simply "different sizes of the same product"). This suggests that the courts are not unmindful that some differences between two goods

do not automatically make them different "products" for consideration of standing. The question then is what exactly is a product. For guidance on this question, the Court turns to antitrust law.

Antitrust regulators consider two goods to be in the same product market when they are substitutes for each other. *See,* 2-24 Antitrust Laws and Trade Regulation, 2nd Edition § 24.02 (2015) ("When defining a relevant market from the buyer's perspective, . . . [t]he essential issue is whether the products are substitutes for one another."); *see also, United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 400 (U.S. 1956). In economic parlance, substitutable goods are those goods that display a high cross-elasticity of demand. *See,* Antitrust Laws and Trade Regulation § 24.02. Goods A and B have high cross-elasticity when the demand for Product A increases significantly when the price for Product B increases (and vice versa). *Id.* n.32. Intuitively, two products are substitutes when they are relatively interchangeable in the consumer's mind. *See, E.I. du Pont,* 351 U.S. at 403 (calling substitute products "functionally interchangeable"). Thus, when the price of one product rises, consumers switch to the other, now relatively cheaper but otherwise-near-indistinguishable product. When goods are close substitutes for each other – that is, when the demand of one good drops significantly when its price increases relative to

the other good because enough consumers switch to buying the other good — then the two goods are in the same product market. *See, e.g., Malaney v. UAL Corp.,* 434 Fed. Appx. 620, 621 (9th Cir. 2011) (stating that to be in the same relevant antitrust market, "products do not have to be perfectly fungible . . . but must be *sufficiently interchangeable* that a potential price increase in one product would be defeated by the threat of a sufficient number of customers switching to the alternate product") (emphasis added).

As these definitions make clear, substitutability is not only a binary concept where goods are either substitutes or they are not substitutes. Rather, there is a spectrum of substitutability, and every pair of goods can be more or less substitutable for each other. Put differently, no two goods are exactly the same product. (Is a treadmill of Model X which was purchased with free home delivery in Chicago the same product as the Model X purchased without home delivery in Springfield? If one lives in Chicago and has no car, the answer is no. For such a consumer, a treadmill of Model X with free home delivery in Chicago may be closer to being the same product as a treadmill of Model Y with free home delivery in Chicago.) Instead, any two goods are better or worse substitutes. When two physical goods are sufficiently substitutable, they may be treated as the same product for the purpose of determining standing.

By applying the logic of the product market from antitrust law to the idea of "purchased product" in the class action standing context, we reconcile the two approaches taken by courts. We do this by thinking of "substantially similar" products as products that are close substitutes for one another and clarifying that purchased and unpurchased goods are meaningfully two different products only when they are not close substitutes.

Under this conceptualization, standing should be granted when the products are near substitutes to one another. Otherwise, standing should be denied. When they are not substitutable, the goods are not "substantially similar" in the ways that matter to the consumers when making purchasing decision. In such circumstance, the products are distinct and meaningfully treated as different purchased and unpurchased products for the purpose of deciding standing.

### b. *Application to Facts*

This case provides a good application for the substitutability standard discussed above. Plaintiffs are here alleging that a part incorporated into a larger good (the touch sensor heart rate monitors contained in Precor treadmills) is deceptively marketed. Precor, on the other hand, is protesting that there are different subsystems to the heart rate sensors (the Alatech, Salutron, and Polar monitoring systems) and that

each subsystem uses a different algorithm, noise filter, and preamp for actually detecting the heart rate. Further, Precor claims that the different implementations, that is, the different models of the treadmills (the 9.23, 9.27, 9.31, 9.33, and 9.35) make a technical difference as to performance. Thus, there are multiple candidates to be considered the relevant product for deciding standing: the software to the subsystems, the subsystems, the heart rate monitors, the specific treadmill models, or all treadmills manufactured by Precor that incorporate touch sensor heart rate monitors. Without some theoretical basis for deciding which of the above is the relevant product, it seems rather arbitrary to say that Plaintiffs here bought the 9.23 Precor Model Treadmill, and so have standing to sue for this particular model, but not that, say, they bought the Alatech heart rate monitoring subsystem and so should have standing to sue for all Precor treadmills incorporating that subsystem.

Turning now to Plaintiffs' Amended Complaint, Plaintiffs here seek to represent a class of consumers who purchased "a Precor treadmill equipped with a touch sensor heart rate monitor." Plaintiffs themselves have bought the 9.23 Precor Model Treadmill. To decide whether Plaintiffs have standing as to the unpurchased models (the 9.27, 9.31, 9.33, and 9.35), this Court asks whether the complained of product – the touch sensor

heart rate monitor marketed as allowing consumers to "maximize their workouts" "whether they walk or run" – is substitutable across the different treadmill models.  If the 9.23 Precor's heart rate monitor is not a good substitute for other models' heart rate monitors, then Plaintiffs would have no standing to assert claims on the unpurchased products.  On the other hand, if the monitors are close substitutes to each other, then Plaintiffs may bring an action on behalf of the class they seek to represent.

To determine whether the 9.23 Precor's heart rate monitor is a good substitute for other four Precor models' monitors, the Court first looks to the alleged misrepresentations.  If Precor had marketed these monitoring systems in distinct ways, then this is evidence that the products are differentiated to the consumers and so are not substitutes for each other.

Plaintiffs have alleged that the representations are "uniform" and "standardized."  (FAC ¶¶ 5, 10, 14, 25, 43, 47, 62.)  Having looked through Precor's advertisements as included the record, the Court notes that none of the advertisements even mentions the different heart rate monitoring subsystems present in the different Precor models.  The Alatech, Salutron, and Polar subsystems that Precor argued made such a difference as to the performance of the monitors were not marketed as such to consumers at all.  Based on the representations, the different

model treadmills, although they contain different touch sensor heart rate monitoring systems, do not look like distinct products.

Second, the Court looks to the physical products or the treadmills' heart rate monitors themselves. The record is lacking in indicia of substitutability, including rough proxies like the price points of the different systems, their costs to Precor, or the targeted consumer bases. But there is some evidence on the systems' performance. This is relevant because the closer the systems perform to each other the more likely it is that they are substitutes.

During class certification, Precor's expert, Michael Garrett, had argued that the performance of the Touch Sensors "varies based on factors including a user's physiology, the system being tested, the type and intensity of the exercise performed, and the heart rate system included in the machine." (ECF No. 125, p. 19.) The Court found Garrett's testimony persuasive. *Id.* 19-20. Such a difference in the performance of the monitoring systems suggests that users would not find the products good substitutes for one another. In light of Plaintiffs' new Complaint, the Court revisits the evidence while restricting the scope of its examination to only the class products (treadmills with a touch sensor heart rate monitor) and the class claim (deceptive misrepresentation).

The fact that the Amended Complaint retains only the deceptive misrepresentation claim does not change the Court's reading of the evidence. The claim was present in the previous Complaint and adds nothing here. Plaintiffs argued that because they dropped the warranty claim, their case no longer necessitates the finding of a common defect. (ECF No. 141, p. 2, 9.) This is true, but Plaintiffs are still alleging that the touch sensor heart rate monitoring "does not work as advertised," "cannot perform as advertised," and "could not work as advertised." (FAC ¶¶ 15, 22, 26.) Whether the touch sensors worked or not is still then an element of Plaintiffs' claim: if they worked, then the consumers could not have been deceived.

Plaintiffs asserted that *Mullins v. Direct Digital, LLC,* 795 F.3d 654 (7th Cir. 2015) compelled a different conclusion. But *Mullins* is distinguishable. In *Mullins,* the alleged misrepresentation was that the accused tablets were "clinically tested" and "scientifically formulated." *Id.* at 658, 672–73. Whether the pills were actually "clinically tested" or formulated according to some accepted scientific principles is not affected by the users' physiology, or the type, intensity, or frequency of the ingestion of the pills. The Seventh Circuit recognized this and stated, "What really matters under [Mullins'] theory is whether there is any scientific support for the assertions contained in the labels and advertising

materials." *Id.* at 673. Thus, the type of misrepresentation complained of in *Mullins* made it immaterial (as to everything but the merits of the claim) whether some users experienced health benefits. *Id.* In contrast, here, the alleged misrepresentation is that the technology did not work as represented. "A user's physiology, the system being tested, the type and intensity of the exercise performed, and the heart rate system included in the machine" could, in theory, matter if they affect how well the technology performs.

Unfortunately for Precor, the evidence in record does not bear out this theory. The testimony of Plaintiffs' and Precor's experts sheds light on the issue of performance. While the two sides' experts necessarily quibble with each other's bottom lines, they are in remarkable agreement on one point: the performance of the treadmills' heart rate monitors deteriorated sharply as the users get up to high running speeds.

Precor's own expert conducted independent testing of the heart rate monitoring technology using 22 pre-screened individuals of different ages, heights, weights and cardio-physiologies. (Expert Rep. Michael Garrett, ECF No. 98, Ex. 2, p. 47.) These subjects had their heart rates measured by the touch sensors while exercising on two different treadmills' heart rate monitoring systems (the Alatech and Polar). *Id.* at 43-44. Garrett then compared the heart rate readings from the

touch sensors to readings from a chest strap electrocardiogram ("ECG") worn by the subjects.

Test results for both treadmills showed that when the subjects ran at 6.0 mph, the majority of them (more than 60%) experienced a difference between the two readings of more than 10%. (ECF No. 98 at 49, 53-54, Fig. 28-29, Tab. 4-5.) At this high speed of running, readings from the touch sensors on the two treadmills diverged significantly from the ECG chest strap readings for the majority of tested subjects. Thus, assuming that the ECG readings are accurate, the touch sensors' measurements were inaccurate for most subjects when they ran.

The fact that by Precor's own testimony, the majority of subjects experienced inaccurate heart rate readings means that Precor cannot rely on individual differences to account for the differences in performance. Insofar as Plaintiffs are alleging that Precor misrepresented that the touch sensors work "whether you walk or run," Precor cannot rely on "the type and intensity of the exercise performed" to excuse the inaccurate readings. Finally, since Garrett tested the two touch sensor systems that are present in all five of the accused products, Precor cannot claim that "the heart rate system included in the machine" determined the result.

In sum, the evidence before the Court suggests that the touch sensor heart rate monitors across the different models of

treadmills are good substitutes for each other.  They were not marketed differently from one another and they performed similarly under testing.  Based on this evidence, Plaintiffs have individual standing to pursue claims related to the five treadmill models.  Of course, Precor remains free to challenge Plaintiffs' ability to satisfy Rule 23 at the certification stage.

### *2. Standing for Prospective Injunctive Relief*

As the Supreme Court explained, a plaintiff seeking injunctive relief must show the following elements:  "that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (U.S. 2009). In turn, "to establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of *future violations* of their rights." *Scherr v. Marriott Int'l,* 703 F.3d 1069, 1074 (7th Cir. 2013) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983)) (emphasis added).  To show redressability, plaintiffs must establish that "the relief sought would, if granted, reduce the probability [of

injury]." *Elk Grove Village v. Evans,* 997 F.2d 328, 329 (7th Cir. 1993).

In this case, Plaintiffs have made no allegations that they are likely to suffer future harm from Precor's deceptive misrepresentations. They alleged only that they had "lost money" when they were fooled by Precor's misrepresentations into buying treadmills with heart rate monitors that did not work. But "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lujan,* 504 U.S. at 564 (U.S. 1992). Plaintiffs here made no allegation that they continue to be harmed by Precor's misrepresentations or that they are likely to be injured by them in the future. Plaintiffs certainly do not allege that, having discovered Precor's deception, they may still buy Precor's products.

In fact, Plaintiffs specifically alleged facts suggesting that it is extremely unlikely that they will purchase Precor's supposed defective machines again. Both Plaintiffs stressed how important the heart rate monitoring feature was to them in selecting their exercise equipment. As Mednick recounted in the Complaint, "[a]fter suffering a heart attack in 2013, Plaintiff Mednick had been advised by his physician to purchase a home exercise machine capable of monitoring his heart rate while

exercising. . . . Upon receiving this advice, Plaintiff Mednick went to the marketplace to purchase exercise equipment that provided heart rate monitoring capabilities. . . . After purchasing the Precor treadmill, Plaintiff Mednick soon learned that its Touch Sensor Monitoring feature did not work." Mednick thus alleged that he needed exercise equipment that "provided heart rate monitoring capabilities" and that Precor's treadmill failed to do exactly that. Likewise, Plaintiff Bayer alleged that he "would not have purchased the treadmill had he known the Touch Sensor Monitoring feature . . . was actually unreliable and inaccurate." Here, as in *Davidson,* "[i]t seems clear from the allegations in the complaint" that Plaintiffs have "no plans to purchase the *same product* as to which [they] seek[] prospective injunctive relief, at the same price, even were [Precor] to remove" the alleged misrepresentations. *Davidson,* 2014 U.S. Dist. LEXIS 110055 at *16 (emphasis in original).

Under such circumstance, district courts have found that plaintiffs lack standing to seek prospective injunctive relief. *See, e.g., Davidson,* 2014 U.S. Dist. LEXIS 110055 at *14 ("To establish standing to seek prospective injunctive relief in connection with a consumer products claim alleging false advertising, a plaintiff must allege facts showing that she intends to purchase the product at issue in the future."); *Gershman v. Bayer HealthCare LLC,* 2015 U.S. Dist. LEXIS 60835,

*22 (N.D. Cal. May 8, 2015) ("In false advertising cases, 'where a plaintiff has no intention of purchasing the product in the future, a majority of district courts have held that the plaintiff has no standing to seek prospective injunctive relief.'"); and *Bohn v. Boiron, Inc.,* 2013 U.S. Dist. LEXIS 107928, *7-11 (N.D. Ill. Aug. 1, 2013) (finding no standing when the plaintiff alleged that she "would not have purchased Defendants' Product" had she known the truth about its misrepresentations).

The Court finds *Bohn* and its line of cases persuasive. The Court cannot see how the constitutional command of injury-in-fact can be skirted in a case like this one where the named Plaintiffs have made no allegation of risk of future harm. While it is desirable that Precor's prospective customers not be deceived by the company's allegedly false advertising, the named Plaintiffs "cannot rely on the prospect that *other* consumers may be deceived" to boost their own standing. *See, Bohn,* 2013 U.S. Dist. LEXIS 107928 at *8 (N.D. Ill. Aug. 1, 2013) (citing *Campbell v. Miller,* 373 F.3d 834, 836 (7th Cir. 2004)).

It is true that not all courts follow the same approach. *See, e.g., Leiner v. Johnson & Johnson Consumer Cos.,* 2016 U.S. Dist. LEXIS 3896, *1-4 (N.D. Ill. Jan. 12, 2016) and *Le v. Kohl's Dep't Stores, Inc.,* 2016 U.S. Dist. LEXIS 14999, *25-35 (E.D. Wis. Feb. 8, 2016). Generally, courts that have found

standing seem sympathetic to the argument that if "the complaining consumer's standing dissipated the moment she discovered the alleged deception and could no longer be fooled," then "the injunctive provisions of consumer protection statutes such as ICFA could never be invoked to enjoin deceptive practices." *See, Leiner,* 2016 U.S. Dist. LEXIS 3896, *3-4 (N.D. Ill. Jan. 12, 2016) (collecting cases where courts have been persuaded by this public policy concern). However, other courts have addressed this public policy concern – which is, in any case, trumped by the constitutional requirement of standing, *see, id.* – by pointing out that denying standing under these circumstances does not "thwart consumer fraud statutes because plaintiffs may be able to bring such claims in state court, and there are also various state and federal regulatory agencies that can be solicited to take action on consumers' behalf to police such wrongdoings." *In re Fluidmaster,* 149 F.Supp.3d 940, 958 (N.D. Ill. 2016) (quoting from *Richardson v. L'Oréal USA, Inc.,* 991 F.Supp.2d 181, 192 n.10 (D.D.C. 2013)).

In addition, the two cases from this circuit that have allowed plaintiffs to seek injunctive relief even when they were unlikely to purchase the defendants' products again are distinguishable from the case at bar. Although *Leiner* dismissed the challenge to plaintiff's standing on a 12(b) motion, the court expressly reserved the question of "[w]hether plaintiff is

an appropriate class representative with respect to some or all of these claims" to "after discovery and briefing on class certification." *Leiner,* 2016 U.S. Dist. LEXIS 3896 at *4.  The case before this Court has already gone to class certification, so there is no reason to defer the issue further.  *Le* conceded even more, stating that the defendant's standing argument "may be appropriate in the context of a product-specific complaint." *Le,* 2016 U.S. Dist. LEXIS 14999 at *31-32.  It rejected the argument because the allegation of false advertising in *Le* is "company-wide," affecting "housewares" as well as "men's apparel" and "holiday sales" alongside with "day-to-day offers." *Id.*  In contrast, Plaintiffs in this case are complaining about Precor's treadmills, "a product-specific complaint."

Finally, even if Plaintiffs had alleged a sufficient threat of future harm (which they have not), they cannot show how the relief they seek would "if granted, reduce the probability" of harm.  Plaintiffs have requested that Precor be forced to change the way it markets the touch sensor heart rate monitors, essentially to convey the message that the sensors "do not provide valid, reliable, or accurate heart rate readings." (FAC at 27.)  But by Plaintiffs' own allegations, Plaintiffs have already discovered this on their own.  At the end of the day, even if the relief is granted, Plaintiffs will still own (allegedly) defective treadmills that they know to be defective.

As the court explained in *In re Fluidmaster,* "there is a disconnect between the alleged harm and the requested relief" in such a case. Ordering a defendant to cease his false advertising would not change the fact that the plaintiff has a product he knows to be faulty in his home. *In re Fluidmaster,* 149 F.Supp.3d at 959. Such a disconnect is fatal to the plaintiff's standing. *Id.*

Because the Court finds that Plaintiffs lack standing to seek prospective injunctive relief, Plaintiffs may not bring a lawsuit on behalf of the Injunctive Relief classes as defined in their Complaint.

## B. Futility

The Court has already ruled that Plaintiffs' multi-state consumer misrepresentation claim was not amendable to class treatment. *See,* ECF No. 125, p. 21. In particular, the Court found that "[t]he nature of Plaintiffs' claims," a multi-state class action involving multiple state laws, "prevents the Court from finding Rule 23(b)(3) satisfied." *Id.* This is because "such actions require the application of numerous, materially different state laws" that "pose[] serious problems about choice of law, the manageability of the suit, and thus the propriety of class certification." *Id.* (internal quotation marks omitted). Given that the same ten state laws are now implicated, and Plaintiffs have not alleged any new basis to challenge the

Court's conclusion, it would be futile to allow the exact same claim rejected previously to go forward now.

Plaintiffs again lean on *Mullins* to argue otherwise. But *Mullins* was completely silent on the issue of whether the ten state laws at issue are sufficiently similar. The only mention in that opinion of the state statutes was in the single sentence, "Mullins asserts that Direct Digital is liable for consumer fraud under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.,* and similar consumer protection laws in nine other states." *Mullins,* 795 F.3d at 658. The court did not even bother to name what these states were. This is unsurprising given that the court's attention was on an entirely different legal question. *See, id.* at 658 (stating that the court granted the appeal "*primarily* to address the developing law of ascertainability" and spending 15 out of 17 pages of the opinion discussing ascertainability, not commonality) (emphasis added). Instead of relying *Mullins'* silence to draw an affirmative conclusion about the laws of ten states, the Court looks to see whether the state laws are, in fact, materially similar.

In a case alleging deceptive advertising such as this one, "[a]ll elements of each state's consumer protection statute must be considered." *Marshall v. H&R Block Tax Servs.,* 270 F.R.D. 400, 408 (S.D. Ill. 2010). Moreover, "Plaintiffs cannot

sidestep this required analysis by . . . focusing on only two elements — reliance and materiality — to the exclusion of others, such as proximate cause, wrongful intent, damages, and statutes of limitations." *Id.* This sidestep is what Plaintiffs attempted to do in this case. Plaintiffs represented to the Court in their briefing on class certification that "none of these [ten states'] laws require reliance" and "proving materiality is identical under all of them." (Pls' Reply Memo. Support Class Certification, ECF No. 118, p.26 n.21, p.27 n. 22.) But this representation was done to the exclusion of other elements of Plaintiffs' claim, including proximate cause, intent, damages, and statutes of limitations.

The statutes of limitations under the different states' consumer protection laws are plainly different. They range from three years (in Illinois and New York) to six years (in Michigan, Minnesota, and New Jersey), with the remaining states at four (California, Florida, Massachusetts, and Washington) and five years (Missouri). *See,* Cal Bus & Prof Code § 17208, Fla. Stat. § 95.11(3), 815 ILCS 505/10a, ALM GL ch. 260, § 5A, MCLS § 445.911(7), § 516.120 R.S.Mo., N.J. Stat. § 2A:14-1, NY CLS CPLR § 214, and Rev. Code Wash. (ARCW) § 19.86.120. While differences in statutes of limitations are not insurmountable, they nonetheless weigh against class certification. *See, Marshall,* 270 F.R.D. at 408 (stating that "individualized

statute of limitations determinations weigh against certification under Rule 23(b)(3)").

The availability of different damages measures also varies from state to state. For example, the California consumer protection statute allows only for restitution and injunctive relief. *See, Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1144, 1148-48 (Cal. 2003). This flies against Plaintiffs' request for treble, multiple, (non-restitutionary) disgorgement, and punitive damages. Other states do allow for such damage measures. Even here, however, there are differences. For example, Illinois provides for punitive damages at the discretion of the district court; Massachusetts provides for not less than doubled but not more than trebled actual damages in case of willful conduct; and New Jersey mandates trebling of damages in cases of ascertainable loss. *See,* 815 ILCS 505/10a; ALM GL ch. 93A, § 9; and N.J. Stat. § 56:8-19.

Plaintiffs alleged that Precor not only made affirmative misrepresentations, but also that the company engaged in materially misleading omissions. *See,* FAC ¶¶ 13, 19-21, 68, 71, 85, 92, 99. The element of wrongful intent differs from state to state with regards to such omissions. Some states require that a defendant must have intended the plaintiff to rely on the omission whereas others forego such a requirement. For example,

New Jersey directs a plaintiff to demonstrate that the defendant intended such reliance but California does not. *Compare, Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17-18 (N.J. 1994) with *In re Tobacco II Cases,* 207 P.3d 20, 29 (Cal. 2009).

"No class action is proper unless all litigants are governed by the same legal rules." *In re Bridgestone/Firestone Tires Prods. Liab. Litig.,* 288 F.3d 1012, 1015 (7th Cir. 2002). Plaintiffs have not satisfied the Court that the unnamed members of the class action they proposed indeed are "governed by the same legal rules." The Court thus dismisses Plaintiffs' ten-state misrepresentation claim. The Court will allow Plaintiffs to amend their Complaint to cover a smaller number of states, provided that Plaintiffs establish that all the elements under these states' laws are sufficiently similar so that the class may be certified.

### C. Undue Prejudice

Bafflingly enough, two and a half years into litigation, the parties cannot agree on what products are part of the class. Plaintiffs take the position that the accused products include all Precor treadmill models with touch sensor heart rate monitors and that all these treadmills have been part of the class since their original Complaint. Precor, on the other hand, claims that only five models of the treadmills (the 9.23, 9.27, 9.31, 9.33, and 9.35) were part of the original Complaint

and that they are unclear on whether Plaintiffs expanded this to cover more treadmill models in their Amended Complaint (and if so, which ones?).

The Court will leave the issue to the parties. The Court will note, however, that the more the class expands beyond the five listed Precor treadmill models, the longer this litigation will drag on and the more likely it is that Precor will be unduly prejudiced by delays. Plaintiffs have represented to the Court in their most recent briefing that they "will not require extensive additional discovery" before they are ready to submit a motion for class certification again. (Pls' Reply Memo. Support Mot. Leave to File First Amend. Compl., ECF No. 141, p.13.) In fact, Plaintiffs stated that they can file that motion "within 30 days of the Court's ruling" on the current matter. *Id.*

The Court thus expects this case – first filed in 2014 – to proceed expeditiously. The Court will hold Plaintiffs to the briefing schedule they proposed. Under such circumstance, the Court finds that there is no undue prejudice to Precor to allow this Motion to Amend.

## IV.  CONCLUSION

For the reasons stated herein, Plaintiffs have leave to amend their complaint insofar as they seek to represent the Illinois Resident Damages Class. Plaintiffs may also bring

their lawsuit on behalf of a Multi-State Damages Class, but this class must be narrowed to those states whose consumer protection statutes are materially similar to Illinois law on all elements of a misrepresentation claim. Plaintiffs are cautioned that they bear the burden of affirmatively showing such similarities. Finally, in the interest of not unduly prejudicing Defendant Precor, Plaintiffs' Amended Complaint must be contained to those class products that will not necessitate prolonging discovery beyond the short period of time that Plaintiffs represented that they need in this motion.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: September 27, 2016