IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GARY MEDNICK and STEVEN BAYER, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiffs,<br><br>    v.<br><br>PRECOR, INC., a Delaware Corporation,<br><br>              Defendant. | Case No.  14 C 3624<br>CONSOLIDATED ACTION<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Because the Court finds no manifest error of law in its Order granting class certification, it denies Defendant Precor, Inc.'s ("Precor") Motion for Reconsideration [ECF No. 174].

### I.  BACKGROUND

In March 2017, the Court certified as a class Plaintiffs' consumer fraud action. *Mednick v. Precor, Inc.*, No. 14 C 3624, 2017 U.S. Dist. LEXIS 37694, at *1 (N.D. Ill. Mar. 16, 2017). The certification was limited since the Court allowed the case proceed as a class only for the purpose of determining liability and reserved issues related to damages to individual hearings. *Id.* The ruling nonetheless moved the case forward as it permits Plaintiffs to attempt to prove the merits of their allegation that Precor had deceptively marketed and sold treadmills

incorporating "touch sensors," a heart rate monitoring technology, that Precor knew did not accurately measure its users' heart rates.

The victory was hard won for Plaintiffs. To obtain it, they had significantly narrowed the proposed class. In their original Motion for Class Certification, Plaintiffs had sought to certify both a nationwide class to pursue a federal warranty claim and a multi-state class to recover under the consumer protection laws of 10 different states. Plaintiffs defined as class members all those who bought Precor's exercise equipment containing the touch sensor technology, or 20 models of treadmills, elliptical machines, and stationary bikes in all.

The Court refused to certify such a broad class. *Mednick v. Precor, Inc.,* No. 14 C 3624, 2016 U.S. Dist. LEXIS 75582, at *1 (N.D. Ill. June 10, 2016). It found that Plaintiffs had not carried their burden to show that Rule 23(b)(3)'s predominance requirement was satisfied. *See, id.* at *17-23. The Court acknowledged that whether Precor "falsely and misleadingly market[ed] the Touch Sensors . . . on the 20 Precor machines at issue despite knowing that they were 'inherently defective'" was a common issue susceptible to class treatment. *Id.* at *17-18. Nonetheless, it concluded that "[t]he nature of Plaintiffs' claims . . . prevents the Court from finding Rule 23(b)(3) satisfied." *Id.* at *23. The Court was concerned that

Plaintiffs' "breach-of-warranty action, coupled with a claim of fraud, poses serious problems about choice of law, the manageability of the suit, and thus the propriety of class certification." *Id.* (quoting *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 674 (7th Cir. 2001)) (internal quotation marks omitted). In addition, the Court found that the following questions, heavily relied upon by Precor in its Motion for Reconsideration, predominated over the issue common to the class:

> (1) [I]s th[e] unreliability [of the touch sensors, if any] attributable to a defect, or simply to human error?
>
> (2) Or is the unreliability due to some external factor, like the user's age? Or their body mass? Or weight? Or their cardio-physiology? Or the thickness or dryness of the skin on their hands? Or their average rate of exercise?
>
> (3) And if the product proves to be defective, is that defect present only on a certain type of machine (treadmill, elliptical, AMT, or stationary bike)?
>
> (4) Or is it attributable to a specific heart rate system (Alatech, Salutron, or Polar)?

*Mednick,* 2016 U.S. Dist. LEXIS 75582 at *21-22.

Having failed to obtain class certification on their first try, Plaintiffs acted to narrow the scope of their case. They entirely dropped the warranty claim, reduced the number of states for which they pursue the consumer fraud claims from ten to five, and cabined the products they allege to be deceptively

marketed to just the treadmills. (Plaintiffs also abandoned their effort to certify a class under Rule 23(b)(2) and no longer seek injunctive relief. Because these issues did not figure into the Court's decision to certify the class, the Court does not discuss them any further in this Opinion.) Thus, on the renewed Motion for Class Certification, Plaintiffs' proposed class went from being nationwide to covering just five states. The proposed class products decreased from 20 models of treadmills, ellipticals, and stationary bikes to nine models of treadmills. Moreover, with the warranty claim gone, Plaintiff's case no longer presented a problematic "breach-of-warranty action, coupled with a claim of fraud." *Szabo,* 249 F.3d at 674. Instead, it became a pure consumer fraud action, and Plaintiffs worked to show that the laws of the remaining five states were largely uniform.

The Court found that this narrow class satisfied the requirements of Rule 23. It identified as a question common to the class the issue of whether Precor engaged in representations or omissions that were likely to deceive a reasonable consumer. *See, Mednick,* 2017 U.S. Dist. LEXIS 37694, at *21-22. The Court further found that this common question "predominate[d] over any questions affecting only individual members." *See, id.* at *44-52; Fed. R. Civ. P. 23(b)(3). In arriving at this conclusion, the Court specifically addressed whether Plaintiffs' injuries could

- 4 -

be proximately caused by Precor's allegedly deceptive promotional materials. *See, id.* at *22-33. The Court concluded that when the representations were confined to those graphics found on the machines themselves and any omissions Precor failed to make to the class, Plaintiffs could carry their burden to show proximate causation with classwide proof. *See, id.* at *31-33. The Court expressly noted that it found the case at bar "analogous" to *Suchanek v. Sturm Foods, Inc.,* 764 F.3d 750 (7th Cir. 2014). *Id.* at *32.

The Court also examined the issue of damages. It decided that the class members' damages should be reserved to individual hearings. *See, Mednick,* 2017 U.S. Dist. LEXIS 37694, at *36-38. Nonetheless, mindful of what the Supreme Court said in *Comcast Corp. v. Behrend,* 133 S.Ct. 1426 (2013), the Court scrutinized Plaintiffs' damages model. *See, id.* at *44-48. Although the Court understood that the model that Plaintiffs submitted calculated a full refund as a measure of the class members' damages, the Court reasoned that this model could readily be modified to deliver a partial refund number instead. *See, id.* The Court thus found that *Comcast* did not prevent the class from being certified. Accordingly, the Court granted Plaintiffs' motion to certify the class for the purpose of determining liability.

Precor asks the Court to reconsider, asserting that the Court made multiple manifest errors of law.  The Court finds no such error upon reexamining its opinion and so denies the Motion.

## II.  <u>LEGAL STANDARD</u>

While Precor styled the current matter a Motion for Reconsideration, no such motion exists under the Federal Rules of Civil Procedure.  *Talano v. Nw. Med. Faculty Found.,* 273 F.3d 757, 760 n.1 (7th Cir. 2001).  Instead, the Court must construe Precor's request for relief either as a motion to alter or amend a judgment under Rule 59(e) or a motion for relief from a final order under Rule 60(b).  Because Precor filed the Motion within 28 days of the Court's class certification order and because it argues that the Court made manifest errors of law rather than that any new evidence has been discovered, the Court deems Precor to be moving under Rule 59(e).  *See,* Fed. R. Civ. P. 59(e) (requiring that a motion to alter or amend a judgment "be filed no later than 28 days after the entry of the judgment"); *Scott v. Bender,* 948 F.Supp.2d 859, 866 (N.D. Ill. 2013) (stating that an argument that a court committed errors of law is "the province of Rule 59(e) and *not* Rule 60(b)") (emphasis in original).

Precor bears a heavy burden in seeking to reverse the Court's prior ruling.  *See, Scott,* 948 F.Supp.2d at 866 (citing

*Caisse Nationale de Credit Agricole v. CBI Indus., Inc.,* 90 F.3d 1264, 1270 (7th Cir. 1996)). Precor can show that the Court committed a manifest error of law only by establishing that the Court engaged in "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) (internal quotation marks omitted). In attempting to carry its burden, Precor cannot advance arguments or theories that the Court has previously rejected or those that "could and should have been made before the district court rendered a judgment." *Sigsworth v. City of Aurora,* 487 F.3d 506, 512 (7th Cir. 2007) (internal quotation marks omitted); *Schilke v. Wachovia Mortg., FSB,* 758 F.Supp.2d 549, 554 (N.D. Ill. 2010). Finally, the decision to grant or deny a Rule 59(e) motion is within the "sound judgment" of the Court, and its decision is reviewed only for abuse of discretion. *In re Prince,* 85 F.3d 314, 324 (7th Cir. 1996).

### III. <u>ANALYSIS</u>

As a preliminary matter, the Court notes the uphill battle that Precor faces. In its Motion, Precor does not claim that any new fact has presented itself or that any new authority has been issued since the Court ruled on class certification. *Cf., Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990) ("A . . . basis for a motion to reconsider would be a controlling or significant change in the law or facts

since the submission of the issue to the Court."). Moreover, with the exception of one case, Precor has not cited any controlling precedent that the Court did not itself cite in its opinion. The opinion also recounted in detail the evidentiary record supporting class certification (so much so that the Court presumes familiarity with those facts here). As such, Precor cannot credibly argue that the Court disregarded relevant facts or failed to recognize controlling authorities.

Nonetheless, Precor asserts that the Court committed three manifest errors of law in granting Plaintiffs' Motion for Class Certification. The Court addresses the claimed errors in the order of logical antecedence. It thus first examines how the fact that the touch sensor does not uniformly fail for all users at all times affects class certification. It then discusses the remaining errors that Precor raises – those relating to proximate causation and damages.

### A. Spotty Failures

As it had in all its previous briefs, Precor stresses that the touch sensors perform differently for different individuals depending on their "individual physiology" and the heart rate system that they use. Precor argues that this means that "each member [must] be tested on each accused machine to determine whether or not that particular heart rate system is adequate for them given their individual: 1) age; 2) body mass or weight; 3)

cardio-physiology; 4) fitness level; 5) medical history; 6) how they grip the handles and move their bodies; and 7) whether a problem exists with normal exercise or only with vigorous exercise." ECF No. 176 at 17.

Not for the first time, the Court rejects such an argument. In its Order granting Plaintiffs leave to amend their Complaint, the Court explained why neither the physiological differences nor the variations between the touch sensor systems defeat the class claims:

> The fact that by Precor's own testimony, the majority of subjects experienced inaccurate heart rate readings means that Precor cannot rely on individual differences to account for the differences in performance. Insofar as Plaintiffs are alleging that Precor misrepresented that the touch sensors work "whether you walk or run," Precor cannot rely on "the type and intensity of the exercise performed" to excuse the inaccurate readings. Finally, since Garrett tested the two touch sensor systems that are present in all five of the accused products, Precor cannot claim that "the heart rate system included in the machine" determined the result.

See, Mednick v. Precor, Inc., No. 14 C 3624, 2016 U.S. Dist. LEXIS 132038, at *18-22 (N.D. Ill. Sep. 27, 2016).

The Court again provided a lengthy discussion on the issue in its order granting class certification. See, Mednick, 2017 U.S. Dist. LEXIS 37694, at *15-19, 35. Based on the evidentiary record, the Court concluded that:

> If Precor's touch sensor monitors do not work, then it appears that they do not work for the majority of individuals, not just a few who happen to have unusual

physiologies. Plaintiffs also correctly point out
that characteristics like age, height, weight, and
medical condition do not change just as a user
increases his moving speed. The physiological
differences across individuals thus cannot explain why
the touch sensor works at low speeds but not at higher
ones for the same individuals.

*Id.* at *35.

Given the Court's prior disposal of the issue, Precor
cannot raise the same argument yet again and hope for a
different result. The Court incorporates what it has said on
the matter previously, coupled with the principle that "motions
to reconsider are not appropriate vehicles to advance arguments
already rejected by the Court," to turn back Precor's attempt to
reverse the Court's prior ruling. *Schilke,* 758 F.Supp.2d at 554
("[B]ecause judicial opinions are not intended as mere first
drafts, subject to revision and reconsideration at a litigant's
pleasure, motions to reconsider are not appropriate vehicles to
advance arguments already rejected by the Court. . . .")
(quoting *Quaker Alloy Casting Co. v. Gulfco Indus., Inc..* 123
F.R.D. 282, 288 (N.D. Ill. 1988) and *Zurich Capital Mkts., Inc.
v. Coglianese,* 383 F.Supp.2d 1041, 1045 (N.D. Ill. 2005))
(internal citations and quotation marks omitted).

To the extent Precor brings anything new, it now seems to
want to discredit its own expert's study. In its reply brief,
Precor urges the Court to look at its warranty records rather
than "what test data shows." ECF No. 181 at 11. According to

Precor, "warranty complaints were made by less than 1% of purchasers of any of its handle touch heart rate equipment." *Id.* Such records "directly contradict[] Plaintiffs' assertions that the heart rate systems do not work for the majority of users, regardless of what test data shows under those test conditions." *Id.* Precor thus seems to assume that, regardless of what its own test data shows, if a user did not make a warranty claim, then the heart rate monitor must have worked for them.

However, customers may be unhappy about the touch sensors and yet not make warranty claims for any number of reasons. Such an inference is borne out by both common sense and the evidence adduced. For one, Precor received many customer complaints about the heart rate monitor, apparently in a number that exceeded the warranty claims. *See, Mednick,* 2017 U.S. Dist. LEXIS 37694, at *11; ECF No. 149 at 3. For another, Precor concedes that class representative "Bayer never made a warranty claim or report." ECF No. 181 at 11. Yet, Bayer testified that his heart rate monitor did not work. *See,* ECF No. 149, Ex. 17 (Bayer's Dep.), at 71:7-10 ("My Precor 2.3, the heart rate monitor did not work properly and I paid more than I should have for it. . . ."), 78:7-15 (stating the basis for his belief that "this product does not work properly"). In short, since customers may forego warranty claims for reasons other

than that the heart rate monitors worked perfectly, the small number of warranty claims is no reason for the Court to rescind its prior ruling.

Finally, Precor persists in pressing that Plaintiffs have not provided answers to the questions raised in the Court's first certification opinion. As may be recalled, these questions revolved around the issue of whether the unreliability of the touch sensors was due to "human error"; "external factors" like the user's age, body mass, or weight; the type of machine being used; the specific heart rate system; or the user's average rate of exercise. *See, Mednick v. Precor, Inc.,* 2016 U.S. Dist. LEXIS 75582 at *21-22; *supra* Section I.

The most recent certification opinion answered those questions. The Court repeats itself here only for the sake of completeness. First, any "human error" leading to the heart monitor not working is neither idiosyncratic nor due to human failings alone. *See, Mednick,* 2017 U.S. Dist. LEXIS 37694, at *34-35 ("[P]articipants in Garrett's study were given [] instructions on how to use the touch sensor heart rate monitors. Yet, they still failed to get accurate heart rate measurements as they began to run. This suggests that either following Precor's instructions does not actually improve the performance of the touch sensor, or that the instructions are so difficult to follow that the majority of users cannot adhere to them.").

Second, external factors involving individual physiological differences do not explain the more-than-50% failure rate at high running speeds. *See, id.* at *35. Third, the type of machine being used no longer varies, as the class products have been cut down to just treadmills. Fourth, there is no evidence that the different heart rate monitoring systems (Alatech, Polar, and Salutron) work differently for Precor's user population at large. *See, id.* at *7-10, 15-19. Last, there is nothing to indicate that using a treadmill at a speed that it is designed to be able to handle, *i.e.,* in the vicinity of 6 mph, is abnormal, atypical, or outside the range of how a user may expect their heart rate monitor to function. *See, id.* at *41-44.

In sum, the Court finds no manifest error of law in its treatment of the heart rate monitors' spotty failure rates. Simply put, that the heart rate monitor performance is not uniform across the class is not by itself a reason to deny certification. *See, Mullins v. Direct Dig., LLC,* 795 F.3d 654, 672-74 (7th Cir. 2015) (affirming class certification and stating that "whether the [defendant's] representations were false or misleading is a common question suitable for class treatment, even if [the accused product] Instaflex relieved joint discomfort for some consumers").

## B. Proximate Causation

Precor next complains about the Court's proximate causation analysis. Precor acknowledges that the Court addressed the issue at length in its certification order. *See,* ECF No. 176 at 10-11; *Mednick,* 2017 U.S. Dist. LEXIS 37694, at *23-33. Still, the company asserts that because class members' "reasons for purchasing their treadmills varied widely," it was manifest error to certify the class. ECF No. 176 at 13-14. That is, because individual inquiries into why a class member bought a treadmill are needed to weed out those "who were not deceived by the heart rate graphics on the Precor treadmills," the Court abused its discretion in permitting classwide proceeding. *Id.* at 13.

The Court disagrees. As it stated in its prior opinion, the Seventh Circuit's decision in *Suchanek* guides the disposition of the issue in this case. *See, Mednick,* 2017 U.S. Dist. LEXIS 37694, at *31-33. The Court reviews that case in detail so as to satisfy Precor that no error of law was committed. The plaintiffs in *Suchanek* brought a class action complaining that the defendant marketed its coffee pods in a misleading manner so as to deceive consumers into thinking that the pods were just like the competitor's high-quality pods rather than containing undesirable instant coffee. *See, Suchanek,* 764 F.3d at 752-54. As in this case, the alleged

misrepresentations in *Suchanek* were found on the product itself, and, as in this case, the Seventh Circuit determined that whether "the [product] packaging was likely to mislead a reasonable consumer is common to the claims of every class member." *Id.* at 756-58. However, the district court had refused to certify the class on the ground that Precor here advances for the Court to undo class certification, namely that "individualized inquiries on causation" are required. *Id.* at 759.

The Seventh Circuit reversed. It held that the lower court committed an error of law when it denied certification. *See, Suchanek,* 764 F.3d at 759. As the Seventh Circuit stated, if individual inquiries necessitated denial of class proceedings, then "it would never be possible to certify a consumer class action." *Id.* at 752. But such a result would run against prior teachings of both the Seventh Circuit and the Supreme Court. *See, Pella Corp. v. Saltzman,* 606 F.3d 391, 393 (7th Cir. 2010) ("While consumer fraud class actions present problems that courts must carefully consider before granting certification, there is not and should not be a rule that they never can be certified."); *Amchem Prods. v. Windsor,* 521 U.S. 591, 625 (1997) ("Predominance is a test readily met in certain cases alleging consumer or securities fraud. . . ."); *see also,* McLaughlin on Class Actions § 5:54 ("[I]n most contexts individuals choose

consumer goods or services based on disparate knowledge and varied beliefs and reasons.") (as quoted in *Suchanek v. Sturm Foods, Inc.,* 311 F.R.D. 239, 255 (S.D. Ill. 2015)).

The Seventh Circuit further explained that a class may be certified despite some class members not having been harmed by a defendant's misrepresentation. *See, Suchanek,* 764 F.3d at 757-58 ("If the court thought that no class can be certified until proof exists that every member has been harmed, it was wrong."). The court distinguished between "class members who were not harmed and those who could not have been harmed." *Id.* at 758 (internal quotation marks omitted). If class members *could not* have been harmed – because they could not have seen the misrepresentations or because some other element of the statute relied on for liability was not met – then this would be a reason to refuse classwide treatment. *See, id.* But the same reasoning does not hold when class members were not, but could have been, harmed. *See, id.* at 758 (explaining that "in-store purchasers that were exposed to the allegedly deceptive packaging could have been injured by it, even if it turns out later that a few were not. This was not a legitimate basis for denying certification.").

Precor here complains only about class members who were not harmed. In its brief, Precor lists six categories of purchasers who it says "*were not* deceived by the heart rate graphics on the

Precor treadmills at issue." *See,* ECF 176 at 13-14 (emphasis added). These include "Purchasers who did not see, notice or focus on the challenged graphics before their purchase"; "Purchasers who only intended to walk on the treadmills, using them at low speeds where the heart rate monitors are . . . highly accurate"; and "Purchasers who made their purchasing decision for reasons completely unrelated to the heart rate monitoring feature." *Id.* As these representative categories make clear, these are people who could have been injured but, for one asserted reason or another, turned out unharmed. Put differently, the presence of such consumers does not require the Court to decertify the class because, while to show that the people on Precor's list were or were not harmed requires individualized proof, to show that they could have been harmed requires only common evidence. They require looking into matters like "Were the graphics present to be noticed? Could the treadmills have been used at higher speed? Is it plausible that the heart rate monitoring feature is one of the reasons for choosing a particular treadmill?".

In addition, the people who could have been harmed by Precor's representations are not confined to the named Plaintiffs. This makes Plaintiffs' cause of action like that found in *Suchanek* and unlike the cases relied on by Precor. *See, Suchanek,* 764 F.3d at 758 (distinguishing *Thorogood v.*

*Sears, Roebuck & Co.,* 547 F.3d 742, 747 (7th Cir. 2008) and *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 514 (7th Cir. 2006) on the ground that "this is not a case where few, if any, of the putative class members share the named representative's grievance against the defendant").

Here, the evidence shows that the named Plaintiffs are not atypical in claiming that they were misled by Precor's representations into buying treadmills with sporadically malfunctioning heart rate monitors. For one, Precor's internal records indicate that the heart rate monitoring feature was an important feature for many users. *See,* ECF No. 149, at 2-3; ECF No. 149, Ex. 2, 3, & 6. For another, the nature of the heart rate monitoring technology was such that whether it would work for a particular user is generally unknown at the point of purchase, where the consumers were exposed to Precor's allegedly deceptive advertisement.

Typical consumers, like the named class representatives, may have stepped on the treadmills and seen that they were getting a heart rate measurement. However, unless they had some other heart rate monitor on hand to corroborate the reading, they likely cannot tell whether the measurement they just received is correct. Likewise, regardless of whatever disclaimers Precor provided (which were generally not given at the point of sale), a typical user is not likely to know, say,

whether the thickness of the skin on his hands or his heart rate amplitude was such that the touch sensors would have difficulty measuring his heart rate. *See, Mednick,* 2017 U.S. Dist. LEXIS 37694, at *33-34 ("As Plaintiffs point out, the disclaimers are not provided at the point of sale. It is possible, therefore, that the disclaimers do not nullify the effect of any alleged misrepresentations on the reasonable consumer."); ECF No. 164 at 7 (drawing attention to the fact acknowledged by Precor's own expert that "one cannot know the amplitude of an individual's heart rate at their hands without hooking them up to a machine and running a test") (internal quotation marks omitted). As such, insofar as Precor's representations (or omissions) convey that the touch sensors accurately measure one's heart rate, they may mislead the reasonable consumer.

Because *Suchanek* is directly on point, Precor recognizes that it must distinguish the case to have any chance at prevailing on the Court to reconsider its order. Yet Precor's effort to distinguish *Suchanek* falls flat. Precor can only say that the Seventh Circuit did not hold that the district court must certify the class on remand. While that is true, it does not mean that the court of appeals did not provide any guidance in its opinion. As with many precedential decisions, the court of appeals set principles that this Court followed in applying the law to the particular facts before it, even if the higher

court did not itself reach the factual application. Indeed, if any more proof is needed as to what those principles compel, the district court certified the class upon remand. *See, Suchanek,* 311 F.R.D. at 264.

Even weaker still, Precor claims that this case is different from *Suchanek* because the coffee pods in *Suchanek* contained "conspicuous misrepresentations," while "the present case involves very small graphics, in a discrete area on a very large machine." ECF No. 176 at 15. The Court does not see why this is a difference that necessitates decertification of the class. At best, the size of the alleged misrepresentations affects their materiality. But materiality is judged on an objective, reasonable person standard. *See,* ECF No. 149, Ex. 20. As the Court previously explained, this means that the issue is resolvable with classwide proof and should be left to the merits stage of the case. *See, Mednick,* 2017 U.S. Dist. LEXIS 37694, at *22. It does not affect class certification.

Other cases that Precor cites likewise do not detract from the power of *Suchanek.* Many of them are not binding on this court and are unpersuasive to boot. For example, *Williams v. Ford Motor Co.,* 192 F.R.D. 580 (N.D. Ill. 2000), *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.,* Nos. MDL-1703, 05 C 4742, 05 C 2623, 2007 U.S. Dist. LEXIS 89349 (N.D. Ill. Dec. 4, 2007), *Stephens v. Gen. Nutrition Cos.,* No. 08 C

6296, 2010 U.S. Dist. LEXIS 126008 (N.D. Ill. Nov. 23, 2010), and *Lipton v. Chattem, Inc.*, 289 F.R.D. 456 (N.D. Ill. 2013), are all district court decisions that predate *Suchanek*. Each seems to endorse the proposition – since then rejected by the Seventh Circuit – that "no class can be certified until proof exists that every member has been harmed." *Suchanek*, 764 F.3d at 757. Such an approach would obliterate the class action as a mechanism for vindicating claims of consumer fraud, and the Court cannot follow it.

The two cases that either control this Court or postdate *Suchanek* are distinguishable. First, *Siegel v. Shell Oil Co.*, 612 F.3d 932 (7th Cir. 2010), is the one case that the Court did not discuss in its certification order that Precor cites in the Motion for Reconsideration. The omission is not outcome-determinative. The plaintiff in *Siegel* was not complaining that he was misled by the defendant's advertising. Instead, he alleged that the defendants colluded to price gouge their customers. *Id*. at 933-34. The test for proving fraud in such an instance is different from what is required in this case. *See, id*. at 935 (stating that Siegel has to show that the defendants' prices "(1) violate public policy; (2) [are] so oppressive that the consumer has little choice but to submit; and (3) cause consumers substantial injury" – elements not found

in this matter). *Siegel* thus offers little guidance to the matter at hand.

Second, *Langendorf v. Skinnygirl Cocktails, LLC,* 306 F.R.D. 574 (N.D. Ill. 2014), is a case from this district decided shortly after *Suchanek*. The court there refused to certify the particular class action before it because the plaintiff "produced no *evidence* to show that causation will be defeated only as to 'a few' class members." *Id.* at 583 (emphasis in original). As discussed *supra,* the Court determined that Plaintiffs here have adduced such evidence. There is thus no inconsistency between the Court's ruling and *Langendorf.*

Ultimately, despite the label of its argument, Precor seems to be pressing for more than just proximate causation. Instead, Precor appears to argue for actual reliance – in essence, that class members must have been persuaded by the misrepresentation in making their purchasing decisions or else Plaintiffs' consumer fraud claim must fail. This cannot be correct, as actual reliance is not an element of the relevant consumer fraud statutes. *See,* ECF No. 149, Ex. 20; *Connick v. Suzuki Motor Co.,* 174 Ill. 2d 482, 501 (1996) (stating that under Illinois law "Plaintiff's reliance is not an element of statutory consumer fraud"). As such, the Court finds no error in having declined to adopt Precor's interpretation of the law.

### C. Damages

Lastly, Precor dredges up an argument that it raised in full previously. In its brief opposing class certification, Precor argued that Plaintiffs' damages model does not satisfy *Comcast,* 133 S.Ct. at 1433, because "class members are not deprived of *all* value as set forth in the damage theories of Plaintiffs' damage theory expert." ECF No. 158 at 31-32 (emphasis in original). The Court analyzed that argument and rejected it. *See, Mednick,* 2017 U.S. Dist. LEXIS 37694, at *44-48. This should suggest to Precor that the same argument brought again will be futile. *See, Schilke,* 758 F.Supp.2d at 554.

The Court nonetheless devotes a few words to the issue. First, Precor has not provided the Court with any binding authority which holds that if a damages expert advocates for a full refund damages model (on the theory that class members got no value from the complained-of product, here heart rate monitors) when a partial refund model may be more appropriate (because the heart rate monitors sometimes gave accurate readings), then a court must deny class treatment. In place of such authorities, Precor relies on out-of-circuit district court cases.

While the Court gives its sister courts all due respect, it cannot adopt wholesale their approach where their reasoning is

inapposite to the case at hand.  For example, Precor cites the central district of California case of *In re POM Wonderful, LLC,* No. ML 10-02199 DDP (RZx), 2014 U.S. Dist. LEXIS 40415 (C.D. Cal. Mar. 25, 2014).  The court in that case applied such exacting scrutiny that it rejected both a full refund model and a partial refund model (what it called a "price premium model"). *See, id.* at *11-22.  The court did so because it thought that a full refund model "depends upon the assumption that not a single consumer received a single benefit" from the defendant's product.  *Id.* at *14 n.2.  This is incorrect.  If a full refund model indeed depends on such a stringent assumption, then a full refund can never be an appropriate measure of damages.  As long as a defendant can show that a single class member – however idiosyncratic in his preferences or unique in his circumstances – received a single benefit, however slight, then the assumption fails and the model must be tossed.  The court further rejected a partial refund model because it found the expert's testimony supporting that measure of damages to be inadmissible under *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579 (1993).  *Id.* at *22 n.7.  Precor did not raise a *Daubert* challenge to Plaintiffs' expert testimony in this case, and the Court declines to subject the testimony to that review *sua sponte*.  *See, Kleen Prods. LLC v. Int'l Paper Co.,* 831 F.3d 919, 922 (7th Cir. 2016) ("Defendants did not challenge Purchasers' experts under *Daubert*

and Federal Rule of Evidence 702, and so we accept their reports for what they are worth at th[e] [class certification] stage."). In short, the Court does not find that *In re POM Wonderful* requires reversal of its certification order.

Second, the Court is more persuaded by the approach the district court in *Suchanek* took after the case was remanded. The court there reasoned that "if there was ever a case where this theory [allowing for a full refund] was appropriate," the matter before the court "may be it." *See, Suchanek,* 311 F.R.D. at 257-58. Nonetheless, the court held that "[t]o the extent that a partial refund turns out to be the correct measure of damages, the [plaintiffs' proffered] Retail Damages model could simply be offset." *Id.* at 259. The court thereupon certified the class as to liability, even though it remained unresolved whether "each class member will receive a full refund or a partial refund." *Id.* at 259, 264.

This Court followed the same approach in certifying Plaintiffs' class to determine liability. While it thought that a partial refund model was appropriate to the case, the Court explained how a simple modification or "offset" to Plaintiffs' damages model could return such a calculation. *See, Mednick,* 2017 U.S. Dist. LEXIS 37694, at *47-48. The Court does not see why it should deny certification merely because Plaintiffs may choose to make that modification (instead of, say, continuing to

press that a spottily malfunctioning heart rate monitor has zero value because consumers put a large premium on reliability). Plaintiffs still have to prove damages during the merits stage of the case, so to the extent that Precor wants to challenge the final damages model, it still has the opportunity to do so.

As with its previous arguments, Precor has not convinced the Court that it made a manifest error of law. The company did not scale the uphill battle it sets for itself, and the Court reaffirms its finding that Plaintiffs' class action may be certified.

## IV. **CONCLUSION**

For the reasons stated herein, Defendant Precor's Motion for Reconsideration [ECF No. 174] is denied.

**IT IS SO ORDERED.**


_____
Harry D. Leinenweber, Judge
United States District Court

Dated: June 16, 2017