**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GARY MEDNICK, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | |
| PRECOR, INC., a Delaware corporation, | Case No. 1:14−cv−03624 |
| Defendant. | CONSOLIDATED ACTION |
| STEVEN BAYER, individually and on behalf of all others similarly situated, | Hon. Harry D. Leinenweber |
| Plaintiff, | Hon. Daniel G. Martin |
| v. | |
| PRECOR, INC., a Delaware corporation, | |
| Defendant. | |

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,
CERTIFICATION OF A SETTLEMENT CLASS, APPOINTMENT OF CLASS
COUNSEL, AND RELATED RELIEF**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION .................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................................... 2

SUMMARY OF THE PROPOSED CLASS SETTLEMENT ............................................... 4

ARGUMENT ......................................................................................................................... 8

I.      Certification Of The Settlement Class Is Appropriate ......................................... 8

      A.     This Case Satisfies All Rule 23(a) Prerequisites For Class Certification .............. 9

             1.     The Settlement Class Is Sufficiently Numerous ........................................ 9

             2.     Common Questions Of Law And Fact Affect All Settlement Class Members ..................................................................................................... 9

             3.     The Representative Plaintiffs' Claims Are Typical Of Those Held By The Settlement Class ........................................................................... 11

             4.     Plaintiffs And Class Counsel Have Adequately Protected The Settlement Class ..................................................................................... 11

      B.     The Proposed Settlement Class May Be Maintained Under Rule 23(b)(3) ........... 13

             1.     Common Questions Predominate In This Case ......................................... 13

              2.     A Class Action Is A Superior Method For Adjudication Of This Controversy .............................................................................................. 14

II.     The Proposed Settlement Warrants Preliminary Approval ............................... 15

      A.     Class Settlements Are Favored ............................................................................ 15

      B.     The Guidelines For Preliminary Approval Of Class Settlements ......................... 15

      C.     The Settlement Agreement Satisfies The Criteria For Preliminary Approval ....... 17

             1.     The Proposed Settlement Agreement Achieves Substantial And Concrete Benefits For The Settlement Class Relative To The Uncertain Outcome Of Continued Litigation ........................................... 17

2. Absent A Settlement, Intense And Costly Litigation Maya Have Likely Continued For Years.................................................................19

3. No Known Opposition To The Settlement Exists At This Stage...............20

4. The Proposed Class Counsel Has Provided Competent And Knowledgeable Guidance In This Case.....................................................20

5. The Stage Of The Proceedings And Discovery Produced Warrants Approval..............................................................................20

III. The Court Should Approve The Proposed Notice Plan.......................................21

A. The Proposed Methods For Providing Notice Meet The Criteria For Approval ...21

B. The Proposed Contents Of The Notice Meet The Requirements For Approval....22

CONCLUSION..................................................................................................................23

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980),
*overruled on other grounds, Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) . . . . . . . . .15, 16, 20

*Barragan v. Evanger's Dog & Cat Food Co.*,
259 F.R.D. 330 (N.D. Ill. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Burns v. Elrod*,
757 F.2d 151 (7th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Butler v. Am. Cable & Tel., LLC*,
No. 09 CV 5336, 2011 WL 4729789 (N.D. Ill. Oct. 6, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Butler v. Sears, Roebuck & Co.*,
702 F.3d 359 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Chapman v. Worldwide Asset Mgmt., L.L.C.*,
No. 04 C 7625, 2005 WL 2171168 (N.D. Ill. Aug. 30, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*De La Fuente v. Stokely-Van Camp, Inc.*,
713 F.2d 225 (7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
768 F.2d 884 (7th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Fournigault v. Indep. One Mortg. Corp.*,
234 F.R.D. 641 (N.D. Ill. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gautreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 20

*Holtzman v. Turza*,
No. 08 C 2014, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 14, 17, 19, 21

*In re Ocean Bank*,
No. 06 C 3515, 2007 WL 1063042 (N.D. Ill. Apr. 9, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
177 F.R.D. 216 (D.N.J. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*In re U.S. Oil & Gas Litig.*,
967 F.2d 489 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 15, 16, 19

*Kaufman v. Am. Exp. Travel Related Servs. Co.*,
264 F.R.D. 438 (N.D. Ill. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 22

*Keele v. Wexler*,
149 F.3d 589 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kessler v. Am. Resorts International's Holiday Network, Ltd.*,
No. 05 C 5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007),
*adhered to on reconsideration*, No. 05 C 5944, 2008 WL 687287 (N.D. Ill. Mar. 12, 2008) . . . 17

*Lipuma v. Am. Express Co.*,
406 F. Supp. 2d 1298 (S.D. Fla. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Mace v. Van Ru Credit Corp.*,
109 F.3d 338 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*McCabe v. Crawford & Co.*,
210 F.R.D. 631 (N.D. Ill. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mirfasihi v. Fleet Mortg. Corp.*,
356 F.3d 781 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Muro v. Target Corp.*,
No. 04 C 6267, 2005 WL 1705828 (N.D. Ill. July 15, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Allied Van Lines, Inc.*,
231 F.R.D. 280 (N.D. Ill. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Retired Chi. Police Ass'n v. City of Chi.*,
7 F.3d 584 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Reynolds v. Beneficial Nat. Bank*,
288 F.3d 277 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 12

*Saltzman v. Pella Corp.*,
257 F.R.D. 471 (N.D. Ill. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Smith v. Sprint Commc'ns Co., L.P.*,
387 F.3d 612 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Statutes & Rules**

Fed. R. Civ. P. 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 11, 13

Fed. R. Civ. P. 23(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

Fed. R. Civ. P. 23(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

Fed. R. Civ. P. 23(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Fed. R. Civ. P. 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 8, 13, 15

Fed. R. Civ. P. 23(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15, 16, 21, 23

Fed. R. Civ. P. 23(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Other**

3 *Newberg on Class Actions* § 8.32 (4th ed. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

4 *Newberg on Class Actions* § 11.41 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure* § 1778 (3d ed. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Manual for Complex Litigation* § 21.632 (4th ed. Supp. 2010) . . . . . . . . . . . . . . . . . . . . . . 2

*Newberg on Class Actions* § 11.53 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

## INTRODUCTION

Plaintiffs[1] brought this class action on behalf of consumers who allege economic injuries from purchasing certain treadmills[2] sold by Defendant Precor Incorporated (hereafter "Treadmills").  Plaintiffs allege that Precor made material misrepresentations and/or omissions concerning the Treadmills' handheld heart rate monitoring capabilities.  After more than two years of discovery and several rounds of arm's-length negotiations, the Parties have entered into a Settlement Agreement[3] that will resolve the litigation and provide substantial benefits to the Settlement Class.  If approved, the Settlement will permit consumers to either directly receive or submit claims for new chest straps (if they purchased a Treadmill model that did not include a chest strap at the time of purchase) or a warranty extension for consumers who purchased a Treadmill model that did include a chest strap at the time of purchase.

The Settlement was reached only after Plaintiffs engaged in a comprehensive investigation through both formal and informal discovery.  That review helped inform settlement discussions and helped both sides better appreciate the strengths and weaknesses of their respective positions.

The Seventh Circuit–as with other circuits–favors the settlement of class action litigation. *See*, *e.g.*, *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996).  With this principle in mind, Plaintiffs ask the Court to take the first step toward resolving this case – preliminarily approving the settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.  Preliminary approval is warranted here given the strength of the proposed settlement, which will conclude otherwise potentially risky litigation by providing substantial benefits to the Settlement Class.  By granting

---

[1] "Plaintiffs" are Gary Mednick and Steven Bayer.
[2] Specifically, model nos. 9.23, 9.27, 9.33, 9.35, TRM 211, TRM 223, TRM 243, TRM 425, and TRM 445.
[3] Capitalized terms have the same meanings as identified in the Settlement Agreement unless otherwise noted.

preliminary approval, the Court will be allowing the settlement process to proceed, so that the Settlement Class can receive notice and a final fairness hearing can be scheduled, with Class Members having the opportunity to opt out of the Class or to voice any objections. *See Gautreaux v. Pierce*, 690 F.2d 616, 621 n. 3 (7th Cir. 1982); *see, generally, Manual for Complex Litigation* § 21.632 (4th ed. Supp. 2010).

## FACTUAL AND PROCEDURAL BACKGROUND

On May 16, 2014, Plaintiff Mednick filed suit against Precor in the United States District Court for the Northern District of Illinois, in an action styled *Gary Mednick, et al. v. Precor, Inc.*, Case No. 1:14-cv-03624. On June 9, 2014, Plaintiff Bayer also filed suit against Precor in the United States District Court for the Northern District of Illinois, in an action styled *Steven Bayer, et al. v. Precor, Inc.*, Case No. 1:14-cv-04231. On July 14, 2016, Plaintiffs filed their First Amended Consolidated Class Action Complaint ("Plaintiffs' Amended Complaint"), consolidating both Plaintiffs' cases under Case No. 1:14-cv-03624 (hereinafter, the "Lawsuit").[4]

In the Amended Complaint, Plaintiffs, individually and on behalf of a putative class, asserted class action claims against Precor, under Illinois law (the Illinois Consumer Fraud and Deceptive Business Practices Act (the "Act")) and under the consumer protection statutes of California, Florida, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington, alleging that Precor made material misrepresentations and/or omissions concerning the heart rate monitoring capabilities of its Treadmills.

---

[4] Plaintiffs are represented by Lite DePalma Greenberg, LLC and Siprut PC (collectively "Class Counsel"), as well as Gordon Law Offices, Ltd. For purposes of the settlement and in the Settlement Agreement, Gordon Law Offices is identified as additional counsel for Plaintiffs, rather than Class Counsel.

Precor has filed an Answer to Plaintiffs' Amended Complaint, denying that it violated the Act or any consumer protection statutes of the named states, denying wrongdoing or liability on any of the claims asserted against it in the Lawsuit, and asserting various affirmative and other defenses.

On October 27, 2016, Plaintiffs filed a Renewed Motion for Class Certification in the Lawsuit, seeking to certify a class of consumers from five states: California, Illinois, Missouri, New Jersey, and New York. On March 16, 2017, over Precor's opposition, the Court certified Plaintiffs' proposed five-state class as to the issue of liability, appointed Plaintiffs Mednick and Bayer as class representatives and appointed Katrina Carroll, Joseph J. Siprut, and Richard R. Gordon as class counsel.

The Parties have spent over a year engaging in arm's-length settlement negotiations while simultaneously litigating the case. After an initial in-person meeting in November 2017 and many months of telephone calls and written correspondence regarding settlement, the parties engaged in an August 2018 settlement conference before Magistrate Judge Martin, the result of which, after several more months of working out the specific details, language, and structure, is the proposed Settlement Agreement, which embodies all the terms and conditions of the settlement between Plaintiffs and Precor, and which is subject to the approval of this Court.

Class Counsel have concluded, after substantial discovery, careful analysis of the laws relating to this certified class, and months of negotiations, that the proposed Settlement Agreement best benefits the interests of both Plaintiffs and the Settlement Class and avoids the uncertainties and delay of further litigation. Class Counsel consider the proposed Settlement to be fair, reasonable, and adequate and in the best interests of Plaintiffs and all Class Members, as that term

is defined in the Settlement Agreement.  Plaintiffs now present that proposed Settlement to the Court.

**SUMMARY OF THE PROPOSED CLASS SETTLEMENT**

Under the proposed Settlement Agreement (attached hereto as **Exhibit 1** and cited hereafter as "SA"), Precor will provide new chest straps for Class Members who purchased a Treadmill model that did not include a chest strap at the time of purchase or a warranty extension for Class Members who purchased a Treadmill model that did include a chest strap at the time of purchase. Precor will also pay separately for class notice and claims administration.  The Parties agreed to the certification of a Settlement Class only for purposes of this proposed Settlement.  The key terms in the Settlement Agreement are:

> *The Proposed Settlement Class*:  The Settlement Class will consist of:

>> All individual consumers who purchased from Precor or an authorized retailer of Precor in the United States, one or more of the Treadmills.  For consumers in California, Illinois, Missouri, New Jersey or New York, the Treadmill must have been purchased between May 16, 2010 and the date of this Agreement.  For consumers in the remaining 45 states, the Treadmill must have been purchased in the four years prior to the date of this Agreement.

SA ¶ 2.  The Settlement Class is an opt-out class under Rule 23(b)(3).  *Id.* ¶¶ 6 & 10(d)(2).  Class Membership can be objectively determined in part from records supplied by Defendant and its affiliates, who have agreed to provide contact information for approximately 4,000 class members who can then receive direct relief, and also by self-identification through the claims process.  *Id.* ¶ 2.

> *Payments to the Settlement Class*:  Pursuant to the Settlement, under Benefits A and B, Precor will provide new chest straps to each Class Member who purchased a Treadmill model that did not include a chest strap at the time of purchase and who can either be directly identified  on

4

the Consumer List (as defined in the Settlement Agreement) provided by Defendant or who submits an approved Claim. SA ¶¶ 3(a)-(b). Pursuant to the Settlement Agreement, under Benefit C, for Treadmill models that did include a chest strap at the time of purchase, Precor will provide a warranty extension for the chest strap. *Id.* ¶ 3(c). Class Members must proceed under one of the three options (only one of which would be applicable to the purchase of any one Treadmill). *Id.* ¶ 3.

*Separate Payment by Precor of Administration Expenses*: Under the Settlement Agreement, Precor will pay all costs related to providing notice to the Class and administering the Settlement. SA ¶ 4.

*Settlement Administration*: The Settlement will be administered by Angeion Group, a leading, national class action settlement administrator jointly selected by the Parties. Angeion's responsibilities will include: (a) sending class notice; (b) conducting reasonable searches for Class Member addresses; (c) re-mailing any notices returned as undeliverable; (d) processing claims; (e) sending payment to Class Members; (f) processing opt-out requests; and (g) providing reports about the claims process.

*The Class Notice Plan*: Consistent with Rule 23 and due process, the Parties have negotiated a notice procedure designed to provide effective notice to the Class. *See*, *generally*, Ex. E to Settlement Agreement (Notice Plan). The notice program provides for email notice, mailed notice, website outreach, and publication notice to reach as many additional Class Members as possible. SA ¶¶ 6(a)-(c); Ex. E. The Notice will notify the Settlement Class of the terms of the proposed Settlement, their right to object to the Settlement or to opt out of the Settlement, and the deadlines and procedures to object, opt out, or submit a Claim Form in connection with this Settlement. *Id.* ¶ 6(c). Angeion will cause Publication Notice to be published in People Magazine.

*Id.;* Ex. E..  Angeion will also mail direct notice to Class Members for whom mailing addresses are provided.  *Id.* ¶ 6(b).  Further, an interactive Settlement Website and Internet Banner ad campaign will be established, prior to the dissemination of the notice, to provide information to Class Members about the terms of the Settlement, their rights, as well as dates, deadlines, and related information.  *Id.* ¶ 6(c).

*Claims Period*:  The Claims Period shall begin on the date Class Notice is disseminated (the "Notice Date," i.e., no later than 60 days after the Court enters the Preliminary Approval order) and end 180 days thereafter.  SA ¶¶ 6 & 10(d).

*Other Relief*:  As discussed above, the Settlement Agreement provides general guidelines for three compensation options ("Benefit A," "Benefit B," and "Benefit C"), only one of which would be applicable to the purchase of any one Treadmill.  SA ¶¶ 3(a)-(c).  In addition, Precor is currently placing (but shall not be required to place) on its cardio equipment an Advisory Notice in a form and substance similar to the language shown in the Settlement Agreement (the "Advisory Notice").  *Id.* ¶ 3(d).  The Parties agree that the Advisory Notice is sufficient to advise and notify consumers as to the limitations of the efficacy of the heart rate handle systems used in Precor treadmills, and that such language would render moot the claims made in the Lawsuit if made after the date of this Agreement.  *Id.*  Precor does not obligate itself to include the Advisory Notice on Treadmills for any set length of time.  *Id.*

*Class Member Releases*:  Upon final approval of the Settlement, all Class Members who do not opt out will provide a release as to all of their potential claims asserted relating to their Precor Treadmill purchase.  *See* SA ¶ 5.

*Class Representative Service Awards*:  Under the Settlement Agreement, in consideration of their assumption and diligent performance of the duties and responsibilities as class

representatives and the extensive time and effort they expended in connection with the Lawsuit, Plaintiffs may seek, subject to Court approval, Service Awards in a total amount not to exceed Ten Thousand Dollars ($10,000.00) each. These Service Awards are in addition to the amount of compensation Plaintiffs are entitled to receive as Class Members, *see* SA ¶¶ 10(b)-(c), and do not exclude Plaintiffs from participation in the settlement claims process. Class counsel will file a motion for the Service Awards pursuant to the schedule set forth in the Preliminary Approval Order and will support the request in detail.

***Class Counsels' Attorneys' Fees and Costs***: Subject to this Court's approval, Class Counsel will petition the Court for an award of attorneys' fees, expenses, and costs in an amount collectively not to exceed One Million Two Hundred Thousand Dollars ($1,200,000.00). Precor shall be responsible for payment to Class Counsel of the amount of attorneys' fees, costs, and expenses approved by the Court, up to that amount. The Parties agree that the Settlement Agreement is not contingent on the amount of attorneys' fees, costs, and expenses awarded by the court. As with the Service Awards above, Class Counsel will file a separate motion, pursuant to the schedule set forth in the Preliminary Approval Order, to support their fee request in detail. SA ¶ 10(a).

## ARGUMENT

## I.    Certification Of The Settlement Class Is Appropriate.

The benefits of the proposed Settlement can be realized only through certification of the Settlement Class. *Kaufman v. Am. Exp. Travel Related Servs. Co.*, 264 F.R.D. 438, 441-42 (N.D. Ill. 2009) ("[b]efore addressing the substantive provisions of the Settlement Agreement, the court must first determine whether the proposed Class can be certified"). A class may be certified solely for purposes of settlement if a settlement is reached before a litigated determination of class

certification. *Butler v. Am. Cable & Tel., LLC*, No. 09 CV 5336, 2011 WL 4729789, at *4 (N.D. Ill. Oct. 6, 2011). The standards for certification of a settlement class are less rigorous than in a litigated certification contest; "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Here, the Parties have agreed to the certification of the following Settlement Class, under Fed. R. Civ. P. 23(a) and 23(b)(3):

> All individual consumers who purchased from Precor or an authorized retailer of Precor in the United States, one or more of the Treadmills. For consumers in California, Illinois, Missouri, New Jersey or New York, the Treadmill must have been purchased between May 16, 2010 and the date of this Agreement. For consumers in the remaining 45 states, the Treadmill must have been purchased in the four years prior to the date of this Agreement.

SA ¶ 2. As discussed below, this proposed Settlement Class satisfies Rule 23's requirements.

**A.     This Case Satisfies All Rule 23(a) Prerequisites For Class Certification.**

Rule 23(a) requires that any proposed class meet four prerequisites: numerosity, commonality, typicality, and adequacy of representation. Here, each element is satisfied.

**1.     The Settlement Class Is Sufficiently Numerous.**

The members of the Settlement Class are numerous, making their individual joinder impracticable. Fed. R. Civ. P. 23(a)(1). "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002); *Muro v. Target Corp.*, No. 04 C 6267, 2005 WL 1705828, at *13 (N.D. Ill. July 15, 2005) ("[p]ermissive joinder is usually deemed impracticable where the class members number 40 or

more"). This element is easily satisfied here, as Defendants have agreed to provide the names and contact information for approximately 4,000 other Class Members.

### 2. Common Questions Of Law And Fact Affect All Settlement Class Members.

Commonality under Fed. R. Civ. P. 23(a)(2) involves an inquiry into whether class members share at least one common question of law or fact. *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). The element "does not necessitate every class member's factual or legal situation to be a carbon copy of those of the named plaintiffs." *Kaufman*, 264 F.R.D. at 442 (internal quotation marks omitted).

The case comfortably satisfies this minimal standard. Here, the Court would be asked to address a series of identical questions. For example, as alleged in Plaintiffs' Amended Complaint, common questions of law and fact exist as to:

- Whether Precor's representations, omissions, and conduct regarding the marketing and sale of its products with Touch Sensor Monitoring systems were unfair, misleading, or false;

- Whether Precor engaged in deception in its marketing and sale of products with Touch Sensor Monitoring systems;

- Whether Precor's representations, omissions and conduct regarding treadmills with Touch Sensor Monitoring systems were likely to deceive a reasonable consumer;

- Whether a reasonable person would have considered Precor's misrepresentations material;

- Whether Plaintiffs and members of the Settlement Class were deceived by Defendant's representations, omissions, and conduct regarding the Precor products with Touch Sensor Monitoring systems;

- Whether Precor violated the laws alleged herein;

- Whether the members of the Settlement Class have been injured by Precor's conduct;

- Whether the members of the Settlement Class have sustained damages and are entitled to restitution as a result of Precor's wrongdoing and, if so, what is the proper measure and appropriate formula to be applied in determining such damages and restitution; and

- Whether the members of the Settlement Class are entitled to the following declaratory and injunctive relief: (1) a declaration that the Touch Sensor Monitoring feature on Precor's treadmills does not provide valid, reliable, or accurate heart rate readings; (2) a declaration that the Touch Sensor Monitoring feature on Precor's treadmills may underestimate the user's heart rate at higher exercise speeds; (3) enjoining Precor from making representations regarding the validity, reliability, or accuracy of the Touch Sensor Monitoring feature on its treadmills; (4) ordering Precor to remove from its advertising any and all representations regarding the validity, reliability, or accuracy of the Touch Sensor Monitoring feature on its treadmills; and (5) enjoining Precor from placing the word "SmartRate" or any other reference to a heart rate monitoring feature on its treadmills.

*See* Dkt. No. 127, at ¶ 92. Underlying these basic common questions is a common nucleus of operative facts pertaining to the conduct by Defendant arising from the manufacture, marketing, and sale of allegedly defective Treadmills. These central issues are common to all members of the Settlement Class, and thus the Settlement Class satisfies the commonality requirement of Fed. R. Civ. P. 23(a). Plaintiffs further note that the Court has already certified, on a contested motion, a class that is substantially similar to the Settlement Class.

### 3. The Representative Plaintiffs' Claims Are Typical Of Those Held By The Settlement Class.

The typicality requirement under Rule 23(a)(3) is "liberally construed" and easily satisfied. *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005) (typicality is a "low hurdle" requiring "neither complete coextensivity nor even substantial identify of claims"). A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that

gives rise to the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

Here, typicality is satisfied because Plaintiffs' claims and those of the Settlement Class Members they seek to represent derive from the same operative facts. Plaintiffs each purchased a Treadmill (Model 9.23) for personal use in their homes during the Settlement Class Period, and Plaintiffs allege that they, like the other Settlement Class Members, incurred damages as a result of the alleged misrepresentations regarding the handheld heart rate monitors on those machines. These allegations form the basis of claims held by all members of the Settlement Class, and all claims are based on the same legal theory: Defendant's violation of consumer protection statutes. As a result, Plaintiffs' claims are typical of those of the Settlement Class.

### 4. Plaintiffs And Class Counsel Have Adequately Protected The Settlement Class.

Rule 23(a)'s final requirement is that class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy analysis asks whether: (1) the plaintiff has a "sufficient interest in the outcome to ensure vigorous advocacy" of the case; (2) does "not have interests that conflict with those of the class;" and (3) the class representatives' lawyers are "qualified, experienced, and able to conduct the litigation." *Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909, at *5 (N.D. Ill. Oct. 14, 2009) (quoting *Chapman v. Worldwide Asset Mgmt., L.L.C.*, No. 04 C 7625, 2005 WL 2171168, at *4 (N.D. Ill. Aug. 30, 2005)); *see also Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993).

Plaintiffs' interests and claims are entirely consistent with those held by the Settlement Class, and logic, along with the history of this litigation, indicates that Plaintiffs have and will continue to vigorously advocate for Class Members. *See In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 343 (N.D. Ill. 2010) ("ensure that there is no inconsistency

11

between the named parties and the class they represent"). Since neither conflicting nor antagonistic claims exist, there are no conflicts of interest, let alone disqualifying ones. *Rosario*, 963 F.2d at 1018. Further, the adequacy requirements are modest at best and described as "not particularly demanding." *In re Ocean Bank*, No. 06 C 3515, 2007 WL 1063042, at *8 (N.D. Ill. Apr. 9, 2007). Plaintiffs are adequate representatives – they have each sat for deposition, have had their treadmills inspected in their homes by experts from both sides, and aided Class Counsel in litigating this case for nearly five years, through two rounds of class certification motion practice.

Class Counsel are reputable and highly experienced litigators, having successfully led numerous nationwide consumer products class actions. *See* Firm Resumes for Lite DePalma Greenberg, LLC and Siprut, P.C., attached as **Exhibit 2** and **Exhibit 3**, respectively. In this case, they and other counsel aggressively litigated the case, including pursuing discovery from Precor, reviewing voluminous document production, taking depositions of Defendant's employees, successfully opposing a motion to dismiss and filing two motions for class certification, attending a settlement conference before Magistrate Judge Martin, and negotiating the terms of the settlement at arms'-length for several months thereafter. Counsel also produced documents on behalf of the named Plaintiffs. All told, Plaintiffs' attorneys have devoted hundreds of hours and substantial resources towards investigating the underlying facts, researching the applicable law, prosecuting the case, and negotiating the Settlement. Plaintiffs and their attorneys have demonstrated that they are fully capable of litigating this case and that the interests of the Settlement Class have been and will be fairly and adequately protected.

**B.      The Proposed Settlement Class May Be Maintained Under Rule 23(b)(3).**

Once Rule 23(a) is satisfied, the Court must proceed to consider the predominance and superiority requirements of Rule 23(b)(3), whether "questions of law or fact common to the class

predominate over any [individualized questions], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs satisfy these requirements.

### 1. Common Questions Predominate In This Case.

The first part of Rule 23(b)(3) is satisfied when "common questions represent a significant aspect of a case and . . . can be resolved for all members of a class in a single adjudication." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778 (3d ed. 2011)). "Considerable overlap exists between the court's determination of commonality and a finding of predominance. A finding of commonality will likely satisfy a finding of predominance because, like commonality, predominance is found where there exists a common nucleus of operative facts." *Pella*, 257 F.R.D. at 484 (quoting *Fournigault v. Indep. One Mortg. Corp.*, 234 F.R.D. 641, 644 (N.D. Ill. 2006)).

Here, key common questions make the Settlement Class cohesive and would drive the resolution of the litigation, including whether the heart rate monitoring systems of the Treadmills that members of the Settlement Class purchased were marketed in the manner in which they alleged, and whether, as alleged by Plaintiff, the heart rate monitoring systems of the Treadmills are incapable of performing as marketed. In other words, Plaintiffs claim that Defendant "engaged in standardized conduct that violated laws that are common [to the proposed Settlement Class], and the class and subclasses will therefore be cohesive." *AT & T Mobility*, 270 F.R.D. at 345 (citing *Amchem Prod.*, 521 U.S. at 623). Further, because a settlement class is sought here and there will be no trial, the Court need not inquire whether the case, if tried, would present

manageability problems with individualized issues. *Smith v. Sprint Commc'ns Co., L.P.*, 387 F.3d 612, 614 (7th Cir. 2004).

### 2.     A Class Action Is A Superior Method For Adjudication Of This Controversy.

The second Rule 23(b) element–superiority of class adjudication–is easily fulfilled here. "A class action is the more efficient procedure for determining liability and damages in a case such as this, involving a defect that may have imposed costs on tens of thousands of consumers yet not a cost to any one of them large enough to justify the expense of an individual suit." *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 362 (7th Cir. 2012). Rule-makers designed the class action device for a case like this: a large number of claims, in the hundreds of thousands, which would be uneconomical to pursue on an individual basis. As the Supreme Court stressed:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Prod.*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

In this case, the members of the Settlement Class are far too numerous, likely ranging in the tens of thousands, and the typical individual claim is likely to be too small, for Class Members to pursue their claims separately. The class action device is the only viable vehicle by which the vast majority of persons injured by Defendant's allegedly wrongful conduct may obtain a remedy. A class action is the appropriate and superior method for adjudication of these claims, and, as such, Rule 23(b)(3) is satisfied.

## II.     The Proposed Settlement Warrants Preliminary Approval.

### A.     Class Settlements Are Favored.

Rule 23(e) requires judicial approval for the compromise of claims brought on a class basis. The 7th Circuit has held that "[f]ederal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). "Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980), *overruled on other grounds, Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (settlement is particularly favored in class actions, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential class benefit). Here, a settlement will provide an appropriate resolution of the issues.

### B.     The Guidelines For Preliminary Approval Of Class Settlements.

At this juncture, Plaintiffs request that the Court grant preliminary approval of the Settlement so that notice may be sent to the Class. "District court review of a class action settlement proposal is a two-step process." *Armstrong*, 616 F.2d at 314. As the Seventh Circuit explains:

> The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. If the district court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard.

*Id.*

In deciding whether to preliminarily approve a class settlement, courts should consider: (1) the strength of plaintiffs' claims compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (*citing Isby*, 75 F.3d at 1199). In addition, the court should consider the defendant's ability to pay. *Armstrong*, 616 F.2d at 314 (*citing Manual for Complex Litig.*, § 1.46, at 56 (West 1977)).

A finding of fairness is bolstered where, as here, the proposed Settlement was reached only after zealous, arm's-length negotiations over several months that took place over several in-person meetings and telephonic sessions, as well as with the assistance of Judge Martin. *See 4 Newberg on Class Actions* § 11.41 (fairness of a class settlement may be initially presumed when the settlement has been arrived at by arm's-length bargaining, among other considerations). A reviewing court "do[es] not focus on individual components of the settlements, but rather view[s] them in their entirety in evaluating their fairness," and considers the facts "in the light most favorable to the settlement." *Armstrong*, 616 F.2d at 315.

At this preliminary approval stage, however, the review is abbreviated. "[T]he court's task is to 'determine whether the proposed settlement is within the range of possible approval,' not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards . . ." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011) (citation omitted). As a result, courts in this district perform "a more summary version" of the final fairness inquiry at the preliminary approval stage. *Kessler v. Am. Resorts International's Holiday Network, Ltd.*, No. 05 C 5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov.

14, 2007), *adhered to on reconsideration*, No. 05 C 5944, 2008 WL 687287 (N.D. Ill. Mar. 12, 2008); *see also AT & T Mobility*, 270 F.R.D. at 346 (citing *Kessler*).

Here, the proposed Settlement meets all criteria for preliminary approval. As illustrated below, Plaintiffs make a showing that the proposed Settlement is within the range of possible approval and provides important benefits to the Settlement Class. Further, there is no evidence whatsoever of collusion or overreaching; to the contrary, the proposed Settlement was the product of protracted and extensive arm's-length negotiations conducted by experienced counsel.

**C.    The Settlement Agreement Satisfies The Criteria For Preliminary Approval.**

      **1.    The Proposed Settlement Agreement Achieves Substantial And Concrete Benefits For The Settlement Class Relative To The Uncertain Outcome Of Continued Litigation.**

Comparing concrete settlement benefits with hypothetical litigation outcomes is an inexact science. As the Seventh Circuit stresses, "[a] high degree of precision cannot be expected in valuing a litigation, especially regarding the estimation of the probability of particular outcomes." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 285 (7th Cir. 2002). Further, the evaluation of the costs and benefits of settlement must be tempered by the recognition that any comprise involves concessions from all parties. Indeed, "[t]he essence of settlement is compromise." *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985).

Here, the Settlement strikes a compromise that affords fair recompense to Class Members. The Settlement is uncapped in the sense that there is not a settlement fund from which Class Members would seek compensation – each Class Member is entitled to receive the full relief offer without any proration or other reduction. The proposed Settlement also provides for the separate payment by Precor of administrative expenses. The relief offered by the proposed Settlement is

substantial and puts Class Members in the position that they would have been absent Precor's purported misrepresentations.

If the case had not settled, the outcome may have ended up being drastically different and to the detriment of the Settlement Class. To be clear, Plaintiffs believe that their claims are meritorious and are confident of prevailing on the merits, but candidly acknowledge that there are significant hurdles to obtaining a class-wide judgment for the full value of the Settlement Class' claims.

First, Precor has stated its intention, absent settlement, to move for decertification of the current class on personal jurisdiction grounds. While Plaintiffs believe that they can and would successfully oppose such a motion, there is a risk that the Court will agree with Defendant and decertify the Class.

Second, the Court's class certification order certified a liability-only class. Certification of a damages class, which the Court did not foreclose, would be hotly contested by Defendant, and absent certification of a damages class individual damages hearings for class members would be time-consuming and potentially complicated.

Third, on the merits, Plaintiffs' claims will be subject to a "battle of the experts." Although Plaintiffs believe expert and other evidence on their side would support their claims that Precor's Treadmills' heart rate monitoring systems do not perform as marketed, Defendant would doubtlessly engage qualified experts, and there is always the risk that a finder-of-fact could side with Precor's experts.

In short, complex litigation such as this is inherently risky, there is always a genuine chance that Plaintiffs may not succeed on the merits or, even if they do, they may not obtain the measure of relief they seek. See *AT & T Mobility*, 270 F.R.D. at 347. Given the challenges and difficulties

that Plaintiffs would face in protracted litigation, new chest straps for consumers who purchased a Treadmill model that did not include a chest strap at the time of purchase or a warranty extension for consumers who purchased a Treadmill model that did include a chest strap at the time of purchase are certainly within the range of reasonable outcomes and provide Class Members with exactly what they have always sought through this lawsuit – Treadmills that are capable of accurately monitoring their heart rates during exercise.

> **2.    Absent A Settlement, Intense And Costly Litigation May Continue For Years.**

Had this case not settled, litigation could have continued for years. Through protracted, heated, and contentious battles over discovery and pleadings issues, Defendant and its aggressive legal team have proved to be tenacious adversaries. In addition to Defendant's intention to move for decertification, if the case nevertheless proceeds to trial, any recovery could be delayed still longer on appeal. *See Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). Further, continued litigation would require continued merits discovery, and summary judgment motions would also be likely.

In short, in complex cases like this, continued litigation comes at considerable expense to both sides, and at significant expense of the limited resources of the Court. Here, as in *Isby* and other cases, continued litigation would require resolution of complex issues at considerable expense and would absorb many days of trial time. All the while, Plaintiffs and the members of the Settlement class would be forced to sit idly with defective and/or inoperative heart rate monitoring systems on their Treadmills or pay for heart rate monitoring systems with no guarantee of recompense in the future.

19

### 3. No Known Opposition To The Settlement Exists At This Stage.

At this preliminary approval stage, there is no known opposition to the Settlement Agreement. Although Plaintiffs anticipate that the Settlement Class will be generally pleased with the Settlement, they will respond to any concerns that may be raised during the settlement process.

### 4. The Proposed Class Counsel Has Provided Competent And Knowledgeable Guidance In This Case.

Courts are "entitled to rely heavily on the opinion of competent counsel . . ." *Gautreaux*, 690 F.2d at 634 (quoting *Armstrong*, 616 F.2d at 325). Plaintiffs' Class Counsel have extensive experience and have protected numerous consumer products liability class actions in this Court and other courts. With this experience in mind, Class Counsel strongly recommend the proposed Settlement Agreement because it ensures substantial compensation to the Class in lieu of a severely delayed resolution of Plaintiffs' complex class claims.

### 5. The Stage Of The Proceedings And Discovery Produced Warrants Approval.

"The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong*, 616 F.2d at 325.

Class Counsel have developed an informed understanding of this case through discovery and independent investigation. Both parties have engaged in years of discovery, as described above and, as a result, were able to engage in meaningful settlement negotiations. Having brought similar class actions before against companies that made alleged misrepresentations regarding their products, Class Counsel understand the applicable law as well as the strengths and weaknesses of their case. The Court and counsel are in an excellent position, therefore, to evaluate the merits of the proposed Settlement versus the risks and costs associated with continued litigation.

### III. The Court Should Approve The Proposed Notice Plan.

Rule 23(e) requires the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(e). Courts have consistently recognized that Rule 23(e) and due process do not require that every class member receive actual notice, as long as the selected method will likely apprise interested parties. *Newberg on Class Actions* § 11.53; *Burns v. Elrod*, 757 F.2d 151, 157 (7th Cir. 1985) (notice must be reasonably calculated to reach most interested parties); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 234 (D.N.J. 1997) (due process does not require perfection). "The contents of a Rule 23(e) notice are sufficient if they inform the class members of the nature of the pending action, the general terms of settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing." *AT & T Mobility*, 270 F.R.D. at 351 (quoting 3 *Newberg on Class Actions* § 8.32 (4th ed. 2010)). The Notice Plan, as discussed in further detail below, is consistent with Rule 23 and Due Process. *See*, *generally*, Exhibit 1 at Ex. E (Notice Plan).

### A. The Proposed Methods For Providing Notice Meet The Criteria For Approval.

As set forth in the Settlement Agreement, the Class Notice Plan, developed by Angeion, a well-respected notice and claims administrator, establishes a vigorous and informative methodology for providing notice to the Class. *First*, notice will be emailed directly to members of the Settlement Class on the Consumer List as defined in the Settlement Agreement. *Second*, if the email notice bounces back as undeliverable or if Precor only has a mailing address for certain Settlement Class Members, then notice will be mailed directly to those members of the Settlement Class for whom Precor has a mailing address. *Third*, notice will be published in People Magazine, a national publication, with the goal of maximum exposure. This publication was strategically targeted to provide the best possible notice to the applicable demographics of Class Members.

**Fourth**, the Settlement Administrator will establish and administer an interactive Settlement Website and Internet Banner ad campaign, which will post a variety of information about the Settlement. **Fifth**, a toll-free telephone line will be established to provide direct support for Class Members.

The Class Notice's various components satisfy Due Process. *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (approving a notice for a nationwide class that consisted of publication in one publication of national circulation and the posting of the notice on a website set up by a settlement administrator); *Kaufman*, 264 F.R.D. at 446 (publication of notice in "a national newspaper of wide circulation, plus an online publication, constitutes sufficient notice by publication").

**B.    The Proposed Contents Of The Notice Meet The Requirements For Approval.**

The Class Notice provides the Settlement Class with critical information about Settlement terms in a concise and neutral way and: (a) explains how members of the Settlement Class can seek payments; (b) describes the Settlement; (c) explains how members of the Settlement Class may opt out; (d) informs members of the Settlement Class of the right to object; (e) discloses the intended fee application of Class Counsel; (f) provides the applicable deadlines and the date of the Final Approval Hearing; and (g) explains how to get more information about the case, settlement, notice, or rights under the Settlement Agreement. *See* Exhibit 1 at Ex. C (Class Notice). As such, the Class Notice more than satisfies the requirements for Rule 23(e) and Due Process.

## CONCLUSION

Based upon the foregoing, and because the proposed Settlement is fair, reasonable, and adequate and falls within the range of what might ultimately be approved, Plaintiffs respectfully request that the Court enter the Preliminary Approval Order submitted herewith.

Dated: January 10, 2019          Respectfully submitted,

By:     */s/ Katrina Carroll*

Katrina Carroll, Esq.
*kcarroll@litedepalma.com*
Kyle A. Shamberg, Esq.
*kshamberg@litedepalma.com*
Katlyn C. Mathy, Esq.
*kmathy@litedepalma.com*
LITE DEPALMA GREENBERG, LLC
111 W. Washington Street, Suite 1240
Chicago, Illinois 60602
Phone No. (312) 750-1265
Fax No. (312) 212-5919

Joseph J. Siprut, Esq.
*jsiprut@siprut.com*
Michael Chang, Esq.
*mchang@siprut.com*
SIPRUT PC
17 N. State Street, Suite 1600
Chicago, Illinois 60602
Phone No. (312) 236-0000
Fax No. (312) 878-1342

*Proposed Class Counsel*

Richard R. Gordon, Esq.
*rrg@gordonlawchicago.com*
GORDON LAW OFFICES, LTD.
111 W. Washington Street, Suite 1240
Chicago, Illinois 60602
Phone No. (312) 332-5200
Fax No. (312) 242-4966

*Additional Plaintiffs' Counsel*

23

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiffs' Motion For Preliminary Approval Of Settlement, Certification Of A Settlement Class, Appointment Of Class Counsel, And Related Relief** was electronically filed with the Clerk of the Court via the CM/ECF system, which served copies on all interested parties registered for electronic service, on January 10, 2019.

*/s/ Katrina Carroll*