**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GARY MEDNICK, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | |
| PRECOR, INC., a Delaware corporation, | Case No. 1:14–cv–03624 |
| Defendant. | CONSOLIDATED ACTION |
| STEVEN BAYER, individually and on behalf of all others similarly situated, | Hon. Harry D. Leinenweber |
| Plaintiff, | Hon. Daniel G. Martin |
| v. | |
| PRECOR, INC., a Delaware corporation, | |
| Defendant. | |

---

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT, SERVICE AWARDS, AND ATTORNEYS' FEES AND EXPENSES**

---

781301.1

## INTRODUCTION

Plaintiffs Gary Mednick and Steven Bayer brought this class action on behalf of consumers who allege economic injuries from purchasing certain treadmills sold by Defendant Precor Incorporated, specifically Model Nos. 9.23, 9.27, 9.33, 9.35, TRM 211, TRM 223, TRM 243, TRM 425, and TRM 445 (hereafter "Treadmills"). Plaintiffs allege that Precor made material misrepresentations and/or omissions concerning the Treadmills' handheld heart rate monitoring capabilities. After nearly five years of litigation and several rounds of arm's-length negotiations, the Parties entered into a Settlement Agreement[1] that will resolve the litigation and provide substantial benefits to the Settlement Class. If approved, the Settlement will permit consumers to either directly receive or submit claims for new chest straps (if they purchased a Treadmill model that did not include a chest strap at the time of purchase) or a warranty extension for consumers who purchased a Treadmill model that did include a chest strap at the time of purchase.

On January 15, 2019, this Court preliminarily approved the Settlement, finding the Settlement was fair, just, reasonable and adequate, subject to further consideration at a final approval hearing. Dkt. 224. The Court also conditionally certified the Settlement Class, ordered that Notice be disseminated, set opt out and objection deadlines of May 13, 2019, and set a Final Approval Hearing for June 12, 2019. For the reasons set forth below, the Court should grant final approval of the Settlement.

---

[1] Capitalized terms have the same meanings as identified in the Settlement Agreement unless otherwise noted.

781301.1

## FACTUAL AND PROCEDURAL BACKGROUND

On May 16, 2014, Plaintiff Mednick filed suit against Precor in the United States District Court for the Northern District of Illinois, in an action styled *Gary Mednick, et al. v. Precor, Inc*., Case No. 1:14-cv-03624.  On June 9, 2014, Plaintiff Bayer also filed suit against Precor in the United States District Court for the Northern District of Illinois, in an action styled *Steven Bayer, et al. v. Precor, Inc*., Case No. 1:14-cv-04231.  On July 14, 2016, Plaintiffs filed their First Amended Consolidated Class Action Complaint ("Plaintiffs' Amended Complaint"), consolidating both Plaintiffs' cases under Case No. 1:14-cv-03624 (hereinafter, the "Lawsuit").

In the Amended Complaint, Plaintiffs, individually and on behalf of a putative class, asserted class action claims against Precor, under Illinois law (the Illinois Consumer Fraud and Deceptive Business Practices Act (the "Act")) and under the consumer protection statutes of California, Florida, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington, alleging that Precor made material misrepresentations and/or omissions concerning the heart rate monitoring capabilities of its Treadmills.

Precor filed an Answer to Plaintiffs' Amended Complaint, denying that it violated the Act or any consumer protection statutes of the named states, denying wrongdoing or liability on any of the claims asserted against it in the Lawsuit, and asserting various affirmative and other defenses.

On October 27, 2016, Plaintiffs filed a Renewed Motion for Class Certification in the Lawsuit, seeking to certify a class of consumers from five states: California, Illinois, Missouri, New Jersey, and New York.  On March 16, 2017, over Precor's opposition, the Court certified Plaintiffs' proposed five-state class as to the issue of liability, appointed Plaintiffs Mednick and Bayer as class representatives and appointed Katrina Carroll of Lite DePalma Greenberg, LLC and

Joseph J. Siprut of Siprut PC as class counsel, and Richard R. Gordon of Gordon Law Offices, Ltd. as additional counsel.

The Parties spent over a year engaged in arm's-length settlement negotiations while simultaneously litigating the case. After an initial in-person meeting in November 2017 and many months of telephone calls and written correspondence regarding settlement, the parties participated in an August 2018 settlement conference before Magistrate Judge Martin, the result of which, after several more months of working out the specific details, language, and structure, is the proposed Settlement Agreement, which embodies all the terms and conditions of the settlement between Plaintiffs and Precor.

Class Counsel have concluded, after substantial discovery, careful analysis of the laws relating to this certified class, and months of negotiations, that the proposed Settlement Agreement best benefits the interests of both Plaintiffs and the Settlement Class and avoids the uncertainties and delay of further litigation. Class Counsel consider the proposed Settlement to be fair, reasonable, and adequate and in the best interests of Plaintiffs and all Class Members. Plaintiffs now seek final approval of the Settlement.

## SUMMARY OF THE PROPOSED CLASS SETTLEMENT

Under the Settlement Agreement (attached to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement as Exhibit 1 and cited hereafter as "SA"), Precor will provide new chest straps for Class Members who purchased a Treadmill model that did not include a chest strap at the time of purchase or a warranty extension for Class Members who purchased a Treadmill model that did include a chest strap at the time of purchase. Precor will also pay separately for class notice and claims administration. The Parties agreed to the certification of a Settlement Class only for purposes of this proposed Settlement. The key terms in the Settlement Agreement are:

781301.1

***The Proposed Settlement Class***:  The Settlement Class will consist of:

> All individual consumers who purchased from Precor or an authorized retailer of Precor in the United States, one or more of the Treadmills.  For consumers in California, Illinois, Missouri, New Jersey or New York, the Treadmill must have been purchased between May 16, 2010 and the date of this Agreement.  For consumers in the remaining 45 states, the Treadmill must have been purchased in the four years prior to the date of this Agreement.

SA ¶ 2.  The Settlement Class is an opt-out class under Rule 23(b)(3).  *Id.* ¶¶ 6 & 10(d)(2).  Class Membership can be objectively determined in part from records supplied by Defendant and its affiliates, who agreed to provide contact information for approximately 4,000 class members who can then receive direct relief, and also by self-identification through the claims process.  *Id.* ¶ 2. Notice was subsequently sent to the Settlement Class, as set forth in the accompanying Declaration of Steven Weisbrot.

***Payments to the Settlement Class***:  Pursuant to the Settlement, under Benefits A and B, Precor will provide new chest straps to each Class Member who purchased a Treadmill model that did not include a chest strap at the time of purchase and who can either be directly identified on the Consumer List (as defined in the Settlement Agreement) provided by Defendant or who submits an approved Claim.  SA ¶¶ 3(a)-(b).  Under Benefit C, for Treadmill models that did include a chest strap at the time of purchase, Precor will provide a warranty extension for the chest strap.  *Id.* ¶ 3(c).  Class Members must proceed under one of the three options (only one of which would be applicable to the purchase of any one Treadmill).  *Id.* ¶ 3.

***Separate Payment by Precor of Administration Expenses***:  Under the Settlement Agreement, Precor will pay all costs related to providing notice to the Class and administering the Settlement.  SA ¶ 4.

***Settlement Administration***:  The Settlement will be administered by Angeion Group, a leading, national class action settlement administrator jointly selected by the Parties.  Angeion's responsibilities will include: (a) sending class notice; (b) conducting reasonable searches for Class Member addresses; (c) re-mailing any notices returned as undeliverable; (d) processing claims; (e) sending payment to Class Members; (f) processing opt-out requests; and (g) providing reports about the claims process.

***The Class Notice Plan***:  Consistent with Rule 23 and due process, the Parties negotiated a notice procedure designed to provide effective notice to the Class.  *See*, *generally*, Ex. E to Settlement Agreement (Notice Plan).  The notice program provides for email notice, mailed notice, website outreach, and publication notice to reach as many additional Class Members as possible. SA ¶¶ 6(a)-(c); Ex. E.  The Notice informed the Settlement Class of the terms of the proposed Settlement, their right to object to the Settlement or to opt out of the Settlement, and the deadlines and procedures to object, opt out, or submit a Claim Form in connection with this Settlement.  *Id.* ¶ 6(c).  Angeion caused the Publication Notice to be published in *People Magazine*.  Weisbrot Decl. ¶ 23.  Angeion also emailed and paper-mailed direct notice to Class Members for whom mailing addresses were provided – approximately 3,432 individuals – who will receive direct relief without the need to submit a claim.  *Id.* ¶¶ 11-19.  Further, Angeion established an interactive Settlement Website and Internet Banner ad campaign, prior to the dissemination of the notice, to provide information to Class Members about the terms of the Settlement, their rights, as well as dates, deadlines, and related information.  *Id.* at ¶¶ 20-22, 24-26.  The deadline for Class Members to submit claims is September 11, 2019.  *Id.* ¶ 29.

***Other Relief***:  In addition to the compensation options, Precor is currently placing (but shall not be required to place) on its cardio equipment an Advisory Notice in a form and substance

781301.1

similar to the language shown in the Settlement Agreement (the "Advisory Notice"). *Id.* ¶ 3(d). The Parties agree that the Advisory Notice is sufficient to advise and notify consumers as to the limitations of the efficacy of the heart rate handle systems used in Precor treadmills, and that such language would render moot the claims made in the Lawsuit if made after the date of this Agreement. *Id.* Precor does not obligate itself to include the Advisory Notice on Treadmills for any set length of time. *Id.*

*Class Member Releases*: Upon final approval of the Settlement, all Class Members who do not opt out will provide a release as to all of their potential claims asserted relating to their Precor Treadmill purchase. *See* SA ¶ 5.

*Class Representative Service Awards*: Under the Settlement Agreement, in consideration of their assumption and diligent performance of the duties and responsibilities as class representatives and the extensive time and effort they expended in connection with the Lawsuit, Plaintiffs seek Service Awards of [$10,000] for each Plaintiff. The support for those Service Awards is set forth in Section IV below.

*Class Counsels' Attorneys' Fees and Costs*: Precor agreed to be responsible for payment to Class Counsel of the amount of attorneys' fees, costs, and expenses approved by the Court, up to $1,200,000. However, the Parties agree that the Settlement Agreement is not contingent on the amount of attorneys' fees, costs, and expenses awarded by the court. Class Counsel's support for an award of $1,200,000 in attorneys' fees, costs and expenses is set forth in Section V below.

781301.1

## ARGUMENT

I. **The Settlement Class should be certified because it meets all the requirements of Rule 23.**

To certify a class under Rule 23, the Court must find that the proposed class meets the elements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2) or (3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997) ("In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)."). "Settlement is relevant to class certification" and is "a factor in the calculus." *Id.* at 619, 622. Indeed, the Supreme Court "has expressly approved the use of the class settlement device." *Id.* at 618. A class may be certified solely for purposes of settlement if a settlement is reached before a litigated determination of class certification. *Butler v. Am. Cable & Tel., LLC*, No. 09 CV 5336, 2011 WL 4729789, at *4 (N.D. Ill. Oct. 6, 2011). The standards for certification of a settlement class are less rigorous than in a litigated certification contest; "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In this case, Plaintiffs seek certification of the Settlement Classes under Rule 23(b)(3), which requires that (i) the questions of law or fact common to all class members predominate over issues affecting only individual members, and (ii) the maintenance of a class action be superior to other available methods for the fair and efficient adjudication of the controversy. *Id.* at 615; *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). Plaintiffs request that the Court, for the purposes of settlement, certify the Settlement Class as defined:

> All individual consumers who purchased from Precor or an authorized retailer of Precor in the United States, one or more of the Treadmills. For consumers in California, Illinois, Missouri, New

781301.1

> Jersey or New York, the Treadmill must have been purchased between May 16, 2010 and the date of this Agreement. For consumers in the remaining 45 states, the Treadmill must have been purchased in the four years prior to the date of this Agreement.

SA ¶ 2. Each of the proposed Settlement Classes meet the requirements of Rules 23(a) and (b), and therefore, certification is appropriate.

### A. This case satisfies all Rule 23(a) prerequisites for class certification.

Rule 23(a) requires that any proposed class meet four prerequisites: numerosity, commonality, typicality, and adequacy of representation. Here, each element is satisfied.

#### 1. The Settlement class is sufficiently numerous.

The members of the Settlement Class are numerous, making their individual joinder impracticable. Fed. R. Civ. P. 23(a)(1). "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002); *Muro v. Target Corp.*, No. 04 C 6267, 2005 WL 1705828, at *13 (N.D. Ill. July 15, 2005) ("[p]ermissive joinder is usually deemed impracticable where the class members number 40 or more"). This element is easily satisfied here, as Precor provided the names and contact information for approximately 4,000 Class Members.

#### 2. Common questions of law and fact affect all Settlement Class members.

Commonality under Fed. R. Civ. P. 23(a)(2) involves an inquiry into whether class members share at least one common question of law or fact. *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). The element "does not necessitate every class member's factual or legal situation to be a carbon copy of those of the named plaintiffs." *Kaufman*, 264 F.R.D. at 442 (internal quotation marks omitted). In fact, the threshold for commonality is not high. *Scholes v. Stone, McGuire, &*

781301.1

*Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992) (granting class certification, characterizing the commonality requirement as "a low hurdle" easily surmounted). Rather, commonality exists if a common nucleus of operative fact exists, even if as to one question of law or fact. *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011) ("[C]ommonality requires that the claims of the class simply "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."); *Whitten v. ARS Nat'l Servs. Inc.*, No. 00 C 6080, 2001 WL 1143238, *3 (N.D. Ill. Sept. 27, 2001) (commonality is often found where "Defendants have engaged in standardized conduct toward the members of the proposed class").

Here, the Settlement Class shares numerous common questions of fact and law, including:

- Whether Precor's representations, omissions, and conduct regarding the marketing and sale of its products with Touch Sensor Monitoring systems were unfair, misleading, or false;

- Whether Precor engaged in deception in its marketing and sale of products with Touch Sensor Monitoring systems;

- Whether Precor's representations, omissions and conduct regarding treadmills with Touch Sensor Monitoring systems were likely to deceive a reasonable consumer;

- Whether a reasonable person would have considered Precor's misrepresentations material;

- Whether Plaintiffs and members of the Settlement Class were deceived by Defendant's representations, omissions, and conduct regarding the Precor products with Touch Sensor Monitoring systems;

- Whether Precor violated the laws alleged herein;

- Whether the members of the Settlement Class have been injured by Precor's conduct;

- Whether the members of the Settlement Class have sustained damages and are entitled to restitution as a result of Precor's wrongdoing and, if so, what is the

781301.1

proper measure and appropriate formula to be applied in determining such damages and restitution; and

- Whether the members of the Settlement Class are entitled to declaratory and injunctive relief concerning the reliability of the Touch Sensor Monitoring feature on Precor's treadmills.

*See* Dkt. No. 127, at ¶ 92. Underlying these basic common questions is a common nucleus of operative facts pertaining to the conduct by Defendant arising from the manufacture, marketing, and sale of allegedly defective Treadmills. These central issues are common to all members of the Settlement Class, and thus the Settlement Class satisfies the commonality requirement of Fed. R. Civ. P. 23(a). Plaintiffs further note that the Court has already certified, on a contested motion, a class that is substantially similar to the Settlement Class.

### 3.  Plaintiffs' claims are typical of those held by the Settlement Class.

The typicality requirement under Rule 23(a)(3) is "liberally construed" and easily satisfied. *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005) (typicality is a "low hurdle" requiring "neither complete coextensivity nor even substantial identify of claims"). A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

Here, typicality is satisfied because Plaintiffs' claims and those of the Settlement Class Members they seek to represent derive from the same operative facts. Plaintiffs each purchased a Treadmill (Model 9.23) for personal use in their homes during the Settlement Class Period, and Plaintiffs allege that they, like the other Settlement Class Members, incurred damages as a result of the alleged misrepresentations regarding the handheld heart rate monitors on those machines. These allegations form the basis of claims held by all members of the Settlement Class, and all

claims are based on the same legal theory: Defendant's violation of consumer protection statutes. As a result, Plaintiffs' claims are typical of those of the Settlement Class.

### 4. Plaintiffs and Class Counsel adequately protect the Settlement Class.

Rule 23(a)'s final requirement is that class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy analysis asks whether: (1) the plaintiff has a "sufficient interest in the outcome to ensure vigorous advocacy" of the case; (2) does "not have interests that conflict with those of the class;" and (3) the class representatives' lawyers are "qualified, experienced, and able to conduct the litigation." *Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909, at *5 (N.D. Ill. Oct. 14, 2009) (quoting *Chapman v. Worldwide Asset Mgmt., L.L.C.*, No. 04 C 7625, 2005 WL 2171168, at *4 (N.D. Ill. Aug. 30, 2005)); *see also Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993).

Plaintiffs' interests and claims are entirely consistent with those held by the Settlement Class, and logic, along with the history of this litigation, indicates that Plaintiffs have and will continue to vigorously advocate for Class Members. *See In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 343 (N.D. Ill. 2010) ("ensure that there is no inconsistency between the named parties and the class they represent"). Since neither conflicting nor antagonistic claims exist, there are no conflicts of interest, let alone disqualifying ones. *Rosario*, 963 F.2d at 1018. Further, the adequacy requirements are modest at best and described as "not particularly demanding." *In re Ocean Bank*, No. 06 C 3515, 2007 WL 1063042, at *8 (N.D. Ill. Apr. 9, 2007). Plaintiffs are adequate representatives – they have each sat for deposition, have had their treadmills inspected in their homes by experts from both sides, and aided Class Counsel in litigating this case for nearly five years, through two rounds of class certification motion practice.

Class Counsel are reputable and highly experienced litigators, having successfully led numerous nationwide consumer products class actions. *See* Firm Resumes for Lite DePalma Greenberg, LLC and Siprut, P.C., attached as **Exhibit 1** and **Exhibit 2** respectively. In this case, they and other counsel aggressively litigated the case, including pursuing discovery from Precor, reviewing voluminous document production, taking depositions of Defendant's employees, successfully opposing a motion to dismiss and filing two motions for class certification, attending a settlement conference before Magistrate Judge Martin, and negotiating the terms of the settlement at arms'-length for several months thereafter. Counsel also produced documents on behalf of the named Plaintiffs. Plaintiffs' attorneys have devoted hundreds of hours and substantial resources towards investigating the underlying facts, researching the applicable law, prosecuting the case, and negotiating the Settlement. Plaintiffs and their attorneys have demonstrated that they are fully capable of litigating this case and that the interests of the Settlement Class have been and will be fairly and adequately protected.

**B.     The proposed Settlement Class may be maintained under Rule 23(b)(3).**

Once Rule 23(a) is satisfied, the Court must proceed to consider the predominance and superiority requirements of Rule 23(b)(3), whether "questions of law or fact common to the class predominate over any [individualized questions], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs satisfy these requirements.

**1.     Common questions predominate in this case.**

The first part of Rule 23(b)(3) is satisfied when "common questions represent a significant aspect of a case and . . . can be resolved for all members of a class in a single adjudication." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (quoting Charles

Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778 (3d ed. 2011)).
"Considerable overlap exists between the court's determination of commonality and a finding of
predominance. A finding of commonality will likely satisfy a finding of predominance because,
like commonality, predominance is found where there exists a common nucleus of operative facts."
*Pella*, 257 F.R.D. at 484 (quoting *Fournigault v. Indep. One Mortg. Corp.*, 234 F.R.D. 641, 644
(N.D. Ill. 2006)).

 "Predominance . . . is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, 727 F.3d
796, 800 (7th Cir. 2013). In this case, common questions predominate for the Settlement Class
because Defendants' alleged unlawful conduct presents common questions with regard to all
proposed Settlement Class Members. *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir.
2013); *In re Synthroid Marketing Litig.*, 188 F.R.D. 287, 292 (N.D. Ill. 1999) (acknowledging that
plaintiff's allegations of defendant's standardized conduct involved "'a common course of conduct
that leads to injury of all the class members.'") (quoting *Toney v. Rosewood Care Ctr., Inc. of
Joliet,* No. 98 C 0693, 1999 WL 199249, at *9 (N.D. Ill. Mar. 31, 1999). Here, key common
questions make the Settlement Class cohesive and would drive the resolution of the litigation,
including whether the heart rate monitoring systems of the Treadmills that members of the
Settlement Class purchased were marketed in the manner in which they alleged, and whether, as
alleged by Plaintiffs, the heart rate monitoring systems of the Treadmills are incapable of
performing as marketed. In other words, Plaintiffs claim that Defendant "engaged in standardized
conduct that violated laws that are common [to the proposed Settlement Class], and the class and
subclasses will therefore be cohesive." *AT & T Mobility*, 270 F.R.D. at 345 (citing *Amchem Prod.*,
521 U.S. at 623).

781301.1

**2.      A class action is a superior method for adjudication of this controversy.**

The Settlement Class also satisfies the second Rule 23(b) element—superiority of class adjudication.  Rule 23(b)(3) provides that matters pertinent to a finding of superiority include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3). When settling a class action, Plaintiff does not have to prove manageability under Rule 23(b)(3) as if the case were being fully litigated because settlement may "eliminate all the thorny issues that the court would have to resolve if the parties fought out the case." *Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 660 (7th Cir. 2004) (citing *Amchem,* 521 U.S. at 620); *see also Smith v. Sprint Commc'ns Co., L.P.*, 387 F.3d 612, 614 (7th Cir. 2004).

 "A class action is the more efficient procedure for determining liability and damages in a case such as this, involving a defect that may have imposed costs on tens of thousands of consumers yet not a cost to any one of them large enough to justify the expense of an individual suit." *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 362 (7th Cir. 2012).  As the Supreme Court stressed:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Prod.*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

781301.1

In this case, the members of the Settlement Class are far too numerous, over four thousand individuals, and the typical individual claim is likely to be too small, for Class Members to pursue their claims separately. Absent a class action, it would be difficult, if not impossible, for individual members of the Class to obtain effective relief. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658 (7th Cir. 2015) ("[I]n cases involving relatively low-cost goods or services . . . the class device is often essential 'to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'") (quoting *Amchem*, 521 U.S. at 617). The class action device is the only viable vehicle by which the vast majority of persons injured by Defendant's allegedly wrongful conduct may obtain a remedy. A class action is the appropriate and superior method for adjudication of these claims, and, as such, Rule 23(b)(3) is satisfied.

## II.     The Settlement is fair and should receive final approval.

Both judicial and public policies strongly favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996); *Armstrong v. Bd. Of Sch. Dirs. Of the City of Milwaukee,* 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."); *Du Puy v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor,* 519 F.2d 536, 541 (7th Cir. 1975) ("[G]eneral policy is in favor of settlement of litigation by compromise and settlement procedures"). Courts look upon the settlement of lawsuits with favor because such settlements promote "the interests of litigants by saving them the expense and uncertainties of trial, as well as the interests of the judicial system by making it unnecessary to devote public resources to disputes that the parties themselves can resolve with a mutually agreeable outcome." *Hispanics United of DuPage Cty. v. Vill. Of*

*Addison, Ill.*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997). Indeed, compromise is particularly appropriate in complex class action cases. *See id.*.

In determining whether a district court should exercise its discretion to approve a class settlement as "fair," the Seventh Circuit has explained that district courts should "consider the facts in the light most favorable to the settlement," *Isby*, 75 F.3d at 1199 (citing *Armstrong*, 616 F.2d at 315), and has identified several factors for analyzing whether a class action settlement should be given final approval including: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997) (affirming finding that settlement was fair under similar six-factor analysis); *Am. Civil Liberties Union of Ill. v. U.S. Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 818 (N.D. Ill. 2002) (same). All of these factors weigh in favor of final approval of this Settlement.

### A. Strength of the case measured against the Settlement.

"The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Wong*, 773 F.3d at 864. The Supreme Court has cautioned, however, that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) ("The district court should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal

16

rights"), *cert. denied*, 478 U.S. 1004 (1986); *Isby*, 75 F.3d at 1196-97 (declining objecting members' invitation to determine merits of legal issues that remain unresolved, stating this was a "necessary consequence of settlement"). Instead, a court's inquiry should be "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby,* 75 F.3d at 1196), Likewise, the Seventh Circuit has urged district courts to be mindful that "[t]he essence of settlement is compromise," so "the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution *after* trial." *Hiram Walker*, 768 F.2d at 889 (emphasis in original). Indeed, a district court should not reject a settlement "solely because [the settlement] does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200.

Here, the Settlement strikes a compromise that affords fair recompense to Class Members. The Settlement is uncapped in the sense that there is not a settlement fund from which Class Members would seek compensation – each Class Member is entitled to receive the full relief offer without any proration or other reduction. The Settlement also provides for the separate payment by Precor of administrative expenses. The relief offered by the Settlement puts Class Members in the position that they would have been absent Precor's purported misrepresentations.

On the other hand, if the case had not settled, the outcome may have ended up being drastically different and to the detriment of the Settlement Class. While Plaintiffs believe their claims are meritorious and are confident of prevailing on the merits, Plaintiffs recognize there are significant hurdles to obtaining a class-wide judgment for the full value of the Settlement Class' claims.

First, Precor has stated its intention, absent settlement, to move for decertification of the current class on personal jurisdiction grounds. While Plaintiffs believe that they can and would

successfully oppose such a motion, there is a risk that the Court will agree with Defendant and decertify the Class.

Second, the Court's class certification order certified a liability-only class. Certification of a damages class, which the Court did not foreclose, would be hotly contested by Defendant, and absent certification of a damages class individual damages hearings for class members would be time-consuming and potentially complicated.

Third, on the merits, Plaintiffs' claims will be subject to a "battle of the experts." Although Plaintiffs believe expert and other evidence on their side would support their claims that Precor's Treadmills' heart rate monitoring systems do not perform as marketed, Defendant would doubtlessly engage qualified experts, and there is always the risk that a finder-of-fact could side with Precor's experts.

In short, complex litigation such as this is inherently risky, there is always a genuine chance that Plaintiffs may not succeed on the merits or, even if they do, they may not obtain the measure of relief they seek. See *AT & T Mobility*, 270 F.R.D. at 347. Given the challenges and difficulties that Plaintiffs would face in protracted litigation, new chest straps for consumers who purchased a Treadmill model that did not include a chest strap at the time of purchase or a warranty extension for consumers who purchased a Treadmill model that did include a chest strap at the time of purchase are certainly within the range of reasonable outcomes and provide Class Members with exactly what they have always sought through this lawsuit – Treadmills that are capable of accurately monitoring their heart rates during exercise. One of the factors to be considered as to the fairness of a class action settlement is a defendant's willingness and ability to mount just such a vigorous defense, as it demonstrates that the class may not have recovered all (or any) of what it sought at trial.

781301.1

Therefore, while Plaintiffs believe that their claims are strong, Plaintiffs are also aware of the inherent risks and costs of continuing with complex litigation of this nature. If Defendants were to prevail on their asserted defenses, Class Members, including Plaintiffs, would receive *no relief at all*. Given this possibility, the Settlement Agreement, which makes every Class Member whole, is a meaningful achievement and provides a tangible benefit to all those affected by Defendant's conduct.

### B. The complexity, length, and expense of continued litigation.

Due to the nature of Plaintiffs' case, trial will require the collection of evidence and witness testimony from across the country. Precor intends to assert several defenses that it contends bars Plaintiffs' claim in whole or in part, which Plaintiffs would necessarily attempt to rebut. The uncertainty as to whether these defenses apply in this case creates substantial risk for both sides. Plaintiffs and Class Counsel also recognize that the expense, duration, and complexity of protracted litigation would be substantial, and would require further briefing on numerous substantive issues, evidentiary hearings, further discovery, and the gathering of witnesses. In addition to Defendant's intention to move for decertification and the protracted proceedings that may be required to conduct individual damages hearing given the Court's certification of a liability-only class, if the case nevertheless proceeds to trial, any recovery could be delayed still longer on appeal. *See Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). Further, continued litigation would require continued merits discovery, and summary judgment motions would also be likely. In the meantime, Plaintiffs and the Settlement Class would receive nothing, and be forced to sit idly with defective and/or inoperative heart rate monitoring systems on their Treadmills or pay for heart rate monitoring systems with no guarantee

of recompense in the future, bypassing the opportunity to obtain the relief they have at all times sought in this litigation: accurate heart rate measurements while they exercise.

### C. The Settlement Class's reaction and amount of opposition to the Settlement

Plaintiffs will address this factor in a supplemental brief following the expiration of the deadline for opt outs and objections, which is May 13, 2019.

### D. Class Counsel's opinion

"The opinion of competent counsel is relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23." *Schulte*, 805 F. Supp. 2d at 586-87 (N.D. Ill. 2011). Courts are "entitled to rely heavily on the opinion of competent counsel . . . ." *Gautreaux*, 690 F.2d at 634 (quoting *Armstrong*, 616 F.2d at 325). Here, Class Counsel has extensive experience in consumer class actions and complex litigation, and has settled (with court approval) numerous cases. *In re Capital One,* 80 F. Supp. 3d at 792 (Holderman, J.) ("The court accepts that Class Counsel in this case are experienced litigators . . . and that they strongly support the settlement . . . this factor weighs in favor of approval."); *Walgreen*, 311 F.R.D. at 495 ("Class counsel in this case are highly experienced class action litigators who strongly support the proposed settlement. This factor weighs in favor of approval.").

Based upon proposed Class Counsel's analysis of the information obtained from Defendant during discovery and the mediation before Judge Martin, the Settlement Agreement represents a significant recovery for the Settlement Class, especially when weighed against Precor's anticipated defenses and the inherent risks of litigation. Class Counsel believes that the Settlement confers a substantial benefit to the Settlement Classes and satisfies the requirements of Rule 23.

**E. The stage of the proceedings and the amount of discovery completed.**

Based upon discovery conducted by the Parties, Plaintiffs believe they possess the evidence needed to evaluate the strengths and weaknesses of the case. Extensive discovery has taken place in this litigation. As explained *supra*, the Class Counsel has reviewed nearly 30,000 pages of documents, taken the deposition of four corporate witnesses, including Precor's representative, served third-party subpoenas on Precor's authorized retailers, engaged in prolonged discovery conferences and communications with defense counsel and briefed two rounds of class certification motions. Precor has likewise taken extensive discovery from the Plaintiffs, who have both responded to document requests, allowed experts into their homes to conduct inspections of their Treadmills (taking several hours), and sat for class representative depositions. The Parties have collectively spent several thousand hours, over the course of half a decade, litigating this matter and evaluating its ins and outs. In sum, counsel for each party has sufficient information to assess the strengths, weaknesses, and likely expense of taking this case to trial.

While the Parties have both formally and informally exchanged information critical to evaluating the strength of Plaintiffs' contentions (and Precor's defenses), the amount of discovery taken is not a prerequisite to a class action settlement. Courts have noted that, "the label of 'discovery' [either formal or informal] is not what matters. Instead, the pertinent inquiry is what facts and information have been provided." *Schulte*, 805 F. Supp. 2d at 587 (internal citation omitted); *Chase Bank*, 2016 WL 806549, at *9 (Feinerman, J.) ("Although this settlement-directed discovery is not identical to the full merits discovery that would enable counsel to better evaluate the merits of plaintiffs' claims, extensive formal discovery would entail substantial cost and might not have placed the parties in a materially better position than they are now to determine an appropriate settlement value.") (internal citations and quotations omitted); MANUAL FOR COMPLEX

LITIGATION (Fourth), § 11.423 (2004) (noting that informal discovery is a recognized method of minimizing the cost, delay and burden associated with formal discovery).

Here, the Parties engaged in substantial formal and informal discovery over five years that was critical to evaluating the strength of Plaintiffs' contentions and Defendant's defenses. In addition, the Parties reached this Settlement after a mediation before Judge Martin, who provided input and guidance in crafting its terms. Further, Class Counsel engaged with the Settlement Administrator to analyze Defendant's class data and determine whether effecting notice on the Classes was practicable, and the best practical manner to effect such notice. There is more than sufficient information for the Parties make a reasonable and informed decision as to the Settlement. Indeed, the Parties are well-equipped not just to make a reasonable and informed decision as to whether to settle on behalf of the Class, but also what the terms of such settlement would be.

## III. The Court-approved Notice program satisfies due process

Rule 23(e) requires the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(e). Courts have consistently recognized that Rule 23(e) and due process do not require that every class member receive actual notice, as long as the selected method will likely apprise interested parties. *Burns v. Elrod*, 757 F.2d 151, 157 (7th Cir. 1985) (notice must be reasonably calculated to reach most interested parties); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 234 (D.N.J. 1997) (due process does not require perfection); *Newberg on Class Actions* § 11.53. "The contents of a Rule 23(e) notice are sufficient if they inform the class members of the nature of the pending action, the general terms of settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing." *AT & T Mobility*, 270 F.R.D. at 351 (quoting 3 *Newberg on Class Actions* § 8.32 (4th ed. 2010)).

781301.1

The Parties effectuated class notice in a reasonable manner that was calculated to reach as many Settlement Class Members as possible who would be bound by the Settlement. In this case, the Settlement Administrator—Angeion, a well-respected notice and claims administrator—established and implemented a vigorous and informative methodology for informing the Settlement Class. Specifically:

- On March 15, 2019, the Settlement Administrator initiated an interactive Settlement Website and Internet Banner Ad campaign, which posted a variety of information about the settlement. As of April 28, 2019, the website had received 2,760 visits (Weisbrot Decl. ¶¶ 24-26);

- On March 15, 2019, the Settlement Administrator caused notice to be emailed directly to 2,459 Settlement Class Members (*Id.* at ¶ 12);

- From March 15 to March 22, 2019, the Settlement Administrator mailed Notice directly to 1,306 Class Members, which consisted of those Class Members whose email Notices bounced back as undeliverable and those Class Members for whom Precor only had a mailing address (*Id.* ¶¶ 14-19);

- On March 15, 2019, the Settlement Administrator caused the Notice to be published in *People Magazine,* a national publication which was selected to provide the best possible notice to the applicable demographic of Class Members (*Id.* ¶ 23);

- On March 12, 2019 the Settlement Administrator established a toll-free number where Settlement Class Members may call and receive Settlement information 24/7 through an Interactive Voice Response (IVR) system. As of April 28, 2019, the Settlement Administrator has received 36 calls. (*Id.* ¶¶ 20-21).

This robust notice plan, which was approved by the Court on January 15, 2019 (Dkt. No. 224), provided the best notice practicable to apprise the Settlement Classes of the pendency of this action. Indeed, the Settlement Administrator estimates that banner-ad notice alone reached approximately 71% of the Class Members. Weisbrot Decl. ¶ 22.[2]

---

[2] The Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide recommends a target of at least 70% reach for class action notice campaigns. Courts have used this figure to determine the success of notice campaigns. *See, e.g., In re: Cathode Ray Tube (Crt) Antitrust Litig.,* MDL No. 1917, 2016 WL 721680, at *31 (N.D. Cal. Jan. 28, 2016) (finding that 83% notice reach to be "well-within the acceptable range"); *Swift*

23

The Notice provided the Settlement Class with critical information about the Settlement and explained (a) how members of the Settlement Class can seek payments; (b) how members of the Settlement Class may opt out; (d) how members of the Settlement Class could object; (e) the intended fee application of Class Counsel; (f) the applicable deadlines and the date of the Final Approval Hearing; and (g) how to get more information about the case, settlement, notice, or rights under the Settlement Agreement. This fully complied with due process, as already found in the Court's preliminary approval order. (Dkt. No. 224 at ¶5.) Accordingly, the form and method of notice given to class members satisfies all the legal requirements of Rule 23, as well as the constitutional due process requirements.

## IV. The Court should approve service awards to Plaintiffs Mednick and Bayer.

The Settlement Agreement allows for incentive awards to be paid to each of the five Settlement Class Representatives. SA ¶ 10(b). "In deciding whether an incentive award is proper, and if so, in what amount, 'relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, at *11 (N.D. Ill. Aug. 26, 2013) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir.1998)).

Class Counsel respectfully submit the incentive awards in the amount of $10,000 are appropriate here. Each of the Class Representatives was instrumental in assisting Class Counsel with the initial investigation of the case and Precor's alleged heart rate misrepresentations. Indeed, Precor made Mr. Mednick a pre-suit settlement offer that he rejected in order to correct those

---

*v. Direct Buy, Inc.,* No. 11-cv-401, 2013 WL 5770633, at *3 (N.D. In. Oct. 24, 2013) ("The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class.").

781301.1

misrepresentations on behalf of the Class. *See* ECF Doc. 22-1, at 7. Both Messrs. Mednick and Bayer were asked to provide detailed information concerning their purchase of the Treadmills, their communications with Precor, their use of the Treadmill and experience with the handheld heart rate monitors; both had experts come into their homes to dismantle, test, and reassemble their Treadmills; and both provided deposition testimony in support of their claims and duties as Class Representatives. This information was crucial in reaching the Settlement Agreement. Given their contributions, awards of $10,000 from the Settlement Fund for each Class Representative are appropriate. *See In re Sw. Airlines Voucher Litig.*, 2013 WL 4510197, at *11 (awarding incentive award of $15,000 where discovery from plaintiffs "improved the prospects of a favorable settlement"). Class Counsel will come prepared to the Final Approval Hearing to further discuss the issue with the Court.

## V.     The Court should approve attorneys' fees and expenses

### A.  Lodestar vs. percentage methods

In class action settlements, the district court has discretion to measure an award of attorneys' fees in an equitable manner, by either the lodestar with multiplier method (based on the hours expended by class counsel advocating for the class) or the percentage method (in relation to the total benefits available to the class where the value of those benefits are capable of reasonable calculation). *Americana Art China Company, Inc. v. Foxfire Printing and Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014); *see also Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994) (holding that both the lodestar approach and the percentage approach are appropriate ways to determine attorneys' fee awards, and the decision of which method to use remains in the discretion of the court.); *In re Trans Union Corp. Privacy Litig.*, 2009 U.S. Dist. LEXIS 116934, *13 (N.D. Ill. Oct. 1, 2009) (awarding attorneys' fees based on a percentage of the recovery or

25

lodestar remains within the discretion of the district court). As detailed below, the lodestar method, which was the method used in the most recent Seventh Circuit case to examine an award of attorneys' fees in a consumer class action settlement, is the most appropriate and equitable method for measuring the amount of the attorneys' fees under the circumstances presented by this case, particularly because certain aspects of the settlement, including the extended warranty relief made available to all purchasers of Treadmills that came with a chest strap, are difficult to value.

Under the lodestar method, the court calculates a base lodestar by multiplying a reasonable hourly rate by the number of hours reasonably expended. *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). The court then adjusts the base lodestar using the following twelve factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.; see also Hensley v. Eckerhart*, 461 U.S. 424, 430 n. 3 (1983). Many of these factors usually are subsumed, however, within the initial calculation of hours reasonably expended at a reasonable hourly rate. *In re Southwest Airlines Voucher Litig.*, 2013 U.S. Dist. LEXIS 143146 at *34-35 (N.D. Ill. Oct. 3, 2013) (citing *Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir.2009)). The key factors arguably not subsumed in the lodestar calculation in the present case are the novelty/complexity of the legal issues involved, the degree of success obtained, the public interest advanced by the litigation, the fact that fees were contingent on the outcome of the case, and to a lesser extent the preclusion of certain Class Counsel from working

26

on other cases. *Southwest*, 2013 U.S. Dist. LEXIS 143146 at *35 (citing *Gastineau*, 592 F.3d at 748). Each of these factors readily supports the fees requested in the instant case, which represent a negative multiplier from Class Counsel's hourly rates and time expended.

### B. The lodestar method is appropriate under Seventh Circuit jurisprudence

The "touchstone" for a district court's calculation of attorneys' fees is the lodestar method. *Gastineau*, 592 F.3d at 748; *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 856 (7th Cir. 2009). The Seventh Circuit has recognized that the lodestar approach has certain advantages over the percentage method, including that it alleviates "concerns that a percentage approach result[s] in over-compensation for attorneys," it provides "greater accountability" for the attorneys by requiring an explicit accounting of their hours and rates, and it allows for reasonable compensation based on both the hours worked and the risk assumed in undertaking the case. *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991). Indeed, the most recent Seventh Circuit decision to examine a fee request in a class action utilized the lodestar with multiplier method to calculate attorneys' fees, even in the context of a coupon settlement subject to the Class Action Fairness Act ("CAFA"), which often receive enhanced scrutiny.

In *In re Southwest Airlines Voucher Litig.*, 799 F.3d 701 (7th Cir., 2015), the parties reached a settlement where the class received only $5 drink coupons to be used on future Southwest flights, and no actual cash benefits. Defendant Southwest also agreed, pursuant to a "clear sailing" agreement, to pay class counsel fees of up to $3 million, which represented a multiple of 2.63 on class counsel's reported lodestar. *Southwest*, 2013 U.S. Dist. LEXIS 143146 at *7. Despite the lack of an adversarial filing by defendant Southwest, the district court applied the lodestar method, made certain adjustments to class counsel's lodestar, and ultimately awarded approximately $1.65 million in attorneys' fees, which represented a 1.5 multiplier on class counsel's adjusted lodestar.

*In re Southwest Airlines Voucher Litig.*, 2014 U.S. Dist. LEXIS 84072 at *40 (N.D. Ill. June 20, 2014)(amending earlier holding).

Class-member objectors appealed the district court's use of the lodestar-plus-multiplier award. *Southwest*, 799 F.3d at 704. The objectors argued that the district court erred in using the lodestar method, that fees were disproportionately high when compared to the benefits actually claimed by settlement class members, and that the fee should be calculated *only* as a percentage of the benefits actually claimed by class members. *Id*. In rejecting these arguments, the Seventh Circuit held that even in a pure coupon settlement subject to CAFA, which itself raises red flags not present in the instant case as more fully described herein, the lodestar method is a proper method to evaluate attorneys' fees. *Id*. The court noted that while the settlement did involve coupons, the class members received "essentially complete relief" (just as class members in the instant case will receive) and that such a settlement "is the model for an adequate settlement." *Id*. at 711. The court further held that in such cases, class counsel "should be compensated accordingly." *Id*. at 712. Such is also the case here.

### C. The lodestar method is the most equitable approach

Where, as here, there is no inherent conflict of interest between class counsel and the class with respect to the amount of fees, where class counsel litigated on behalf of the class for five years (initially having class certification denied, then filing an amended complaint and renewing the motion for class certification, which was granted); and where class members are receiving real "make-whole" relief allowing every single class member to get exactly what they wanted in this case – an accurate heart rate reading while running on their Treadmills – the lodestar method is the most appropriate and equitable approach.

First, the lodestar method compensates counsel for actual time spent litigating the case, where the time resulted in clear and tangible benefits to the class. In light of Defendant's vigorous defense and refusal to settle, but for Class Counsel spending that time, Class Members would have received nothing. Use of the lodestar method is more equitable in the instant case, as requiring the fee to be measured only as it relates to the benefits claimed by the class would impose an artificial "cap" on fees that rewards Precor for the strategies that have prolonged this case. *See, e.g., Frank Music Corp. v. MGM, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) ("Although [defendants] had the right to play hardball in contesting [plaintiffs'] claims, it is also appropriate that [defendants] bear the cost of their obstructionist strategy"); *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998)("one of the factors useful in evaluating the reasonableness of the number of attorney hours in a fee request is the responses necessitated by the maneuvering of the other side"); *Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 860 (1st Cir. 1998) (increased fee award to plaintiffs justified because of defendant's "Stalingrad defense"); *Wolf v. Frank*, 555 F.2d 1213, 1217 (5th Cir. 1997) ("Obviously, the more stubborn the opposition, the more time would be required . . ."). Indeed, placing an artificial cap upon the amount of work that will be compensated could render it economically impracticable for complicated, protracted cases like this to be litigated to conclusion. This is particularly applicable here where the full amount of the fee awarded will only impact Precor and *not* class members.

Second, as the Seventh Circuit noted in *Harman*, use of the lodestar method provides "greater accountability" for the attorneys by requiring an explicit accounting of their hours and rates, and it allows for reasonable compensation based on both the hours worked and the risk assumed in undertaking the case. *Harman*, 945 F.2d at 974; *see also Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) ("lawyers are not likely to spend unnecessary time on

29

contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee").

Finally, basing a fee calculation on lodestar blunts and eliminates the concern that the class is receiving illusory benefits to garner a high attorneys' fee. *The benefits that Class Counsel negotiated were the best benefits achievable (even as compared to hypothetical successful trial victories).* The same is true of the claims process. Even if liability were established at trial, class members would still have had to prove post-trial their entitlement and amount of damages.

Nor is there any concern here of a close relationship between Class Counsel and the class representatives that could create a conflict of interest between the attorneys and Class Members. Indeed, that Class Counsel here were willing to move forward with the settlement to secure valuable benefits for class members without any certainty with respect to the amount of attorneys' fees and with the risk that this Court may award fees far less than what Class Counsel may deem appropriate and warranted is *prima facie* evidence that there is no conflict of interest between class members' recoveries and the payment of attorneys' fees. Plaintiffs should be compensated equitably for the significant relief achieved on behalf of the class after many long years of litigation.

In sum, where, as here, Class Counsel have advocated tirelessly on behalf of the class for years without pay, secured significant legal victories along the way including defeating Precor's motion to dismiss and obtaining certification of a multi-state class, and negotiated a settlement that provides Class Members with relief approximating what they would receive at trial, the lodestar-plus multiplier method most equitably compensates Class Counsel.

### D.  Class Counsel's requested fees and expenses are reasonable

Class Counsel's request of $1,200,000 in fees and expenses (pursuant to the Parties' agreement that Plaintiffs' request would not exceed that amount) actually represents a negative multiplier from Counsel's lodestar, which has been reduced by over 45%:

| Firm | Hours Worked | Total Fees | Av. Hourly Rate | Expenses |
|---|---|---|---|---|
| LDG | 1,989.70 | $1,219,480.00 | $612.89 | $33,504.96 |
| Siprut P.C. | 1,282.80 | $601,480 | $468.88 | $34,995.60 |
| Gordon Law | 643.30 | $396,692.50 | $616.65 | $25,247.95 |
| **Total:** | 3,915.80 | $2,217,652.50 | $566.33 | $93,748.51 |

*See* accompanying Declarations of Katrina Carroll, Joseph Siprut and Richard Gordon.

A reasonable hourly rate is "one that is derived from the market rate for the services rendered." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (internal quotation marks omitted).  The focus is "the prevailing market rate for lawyers engaged in the type of litigation in which the fee is being sought." *Cooper v. Casey*, 97F.3d 914, 920 (7th Cir. 1996) (emphasis omitted); *see also Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999).

As noted above, the average hourly rates for Class Counsel in this case are at or below rates approved in similar class actions in this circuit. *See, e.g., Abbott v. Lockheed Martin Corp.*, 2015 U.S. Dist. LEXIS 93206 (S.D. Ill. July 17, 2015)(finding reasonable rates as follows: $974/hour (25+ years experience); $826/hour (15-24 years exp.); $595/ hour (5-14 years exp.); $447/ hour (2-4 years exp.); $300/hour (Paralegals and Law Clerks); $186/ hour (Legal Assistants)); *Beesley v. Int'l Paper Co.*, 2014 U.S. Dist. LEXIS 12037, *11-12 (S.D. Ill. Jan. 31, 2014) (finding

31

reasonable rates as follows: $892/hour (25+ years exp.); $757/hour (15-24 years exp.); $545/hour (5-14 years exp.); $394/hour (2-4 years exp.); $275/hour (Paralegals and Law Clerks); $170/hour (Legal Assistants)). However, when the hours Class Counsel has invested in this matter are calculated against the $1,200,000 fee request minus the $93,748.51 in expenses, Counsel's hourly rate drops to $282.50, well *below* the going market rates even for associate attorneys, making the fee request appropriate under any applicable lodestar calculation.

### E. All Other Factors to be Considered Weigh In Favor of Approval of the Requested Fee

#### 1. The lawsuit involved complex, novel questions of fact and law

As is evident from the docket, this case did not have a straightforward path to victory for Plaintiffs. It involved complex issues of multi-state class certification, liability standards, electrical engineering, and uncertainty regarding how to prove damages except on some individual basis. Plaintiffs won class certification (after initially losing) and defeated Precor's motion to reconsider that decision. Class Counsel also beat back repeated attempts to dismiss the complaint in its entirety and strike plaintiffs' class allegations, and built a strong factual and expert record making summary judgment impossible.

Similarly, this case was complicated from a factual perspective, involving complex questions regarding electronic defects, acceptable defect rates, and the digestion of highly technical information regarding the electric panels used to measure Treadmill-users' heart rates.

#### 2. The degree of success obtained

Plaintiffs achieved a significant degree of success on behalf of the class, both legally and practically (in terms of benefits being offered to the class). This is not a case like *Redman* or *Pearson*, which were quickly settled prior to any significant legal decisions and for relatively meager or illusory compensation for the class, or even *Southwest*, which was settled prior to class

certification for drink coupons but *still* included an agreed 2.65 multiplier on lodestar (reduced by the Court to 1.5). As noted above, Settlement Class Members are entitled to either passively receive full relief or to affirmatively claim full relief, not coupons or illusory benefits. Instead of facing the uncertainty of a potential award in their favor years from now, affording largely the same relief, the Settlement allows Plaintiffs and Class Members to receive immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011 (citation omitted) ("Settlement allows the Class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). As noted in *Southwest*, a settlement that provides nearly complete relief to class members is the model of an adequate settlement warranting commensurate compensation for class counsel. 799 F.3d at 704. This weighs in favor of approval of the requested fee.

### 3.   Public Interest Considerations

The legal victories achieved by Plaintiffs in this litigation were significant, and advanced existing law and created new law in the area of multi-state class certification and consumer claims where the defect does not manifest in the same way for all users in each product. These victories transcend this case and have and will benefit consumers in many other cases, demonstrating the strong public interest in Plaintiffs' litigation efforts. Indeed, the Court's order granting class certification has been cited by courts from California to Florida. *See* Davidson v. Apple, Inc., No. 16-CV-04942-LHK, 2018 WL 2325426, at *15 (N.D. Cal. May 8, 2018), *appeal dismissed sub nom. Siegal v. Apple Inc.*, No. 18-80060, 2018 WL 6131860 (9th Cir. Aug. 24, 2018); *Suchanek v. Sturm Foods, Inc.*, No. 11-CV-565-NJR-RJD, 2018 WL 6617106, at *14 (S.D. Ill. July 3, 2018); *Melton v. Century Arms, Inc.*, No. 16-CV-21008, 2018 WL 6980715, at *12 (S.D. Fla. Nov. 28, 2018).

### 4. Preclusion of other work

All the work described herein that resulted in the Settlement Agreement required significant work from all involved attorneys over the five years this litigation has been pending. Without these extraordinary efforts and sacrifices by Class Counsel, the class would not have realized the significant benefits that the Settlement provides. In sum, this was not a straightforward case factually or legally, and Plaintiffs faced the real possibility of no recovery when this case was first brought and after certification was denied. Absent class counsel's dedication from start to finish, class members would have received nothing. This weighs in favor of the requested fee. *Cook*, 142 F.3d at 1015 ("the unenhanced lodestar does not reflect the factual and legal merits of the claim -- the fact that at the outset of the litigation, no matter how dazzling the array of legal talent or how many hours will eventually be logged, there is nonetheless the possibility of no recovery").

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court enter an order granting final approval of the Settlement.[3]

Dated: April 30, 2019                                    Respectfully submitted,

                                        By:      */s/ Katrina Carroll*

                                                 Katrina Carroll, Esq.
                                                 *kcarroll@litedepalma.com*
                                                 Kyle A. Shamberg, Esq.
                                                 *kshamberg@litedepalma.com*
                                                 Katlyn C. Mathy, Esq.
                                                 *kmathy@litedepalma.com*

---

[3] Plaintiffs will submit a proposed order with their supplemental brief addressing Class Member objections, and, assuming the Court approves the Settlement, will submit the proposed order to the Court after the fairness hearing via the Court's proposed order inbox, with relevant revisions as necessary.

781301.1

**LITE DEPALMA GREENBERG, LLC**
111 W. Washington Street, Suite 1240
Chicago, Illinois 60602
Phone No. (312) 750-1265
Fax No. (312) 212-5919

Joseph J. Siprut, Esq.
*jsiprut@siprut.com*
Michael Chang, Esq.
*mchang@siprut.com*
**SIPRUT PC**
17 N. State Street, Suite 1600
Chicago, Illinois 60602
Phone No. (312) 236-0000
Fax No. (312) 878-1342

*Class Counsel*

Richard R. Gordon, Esq.
*rrg@gordonlawchicago.com*
**GORDON LAW OFFICES, LTD.**
111 W. Washington Street, Suite 1240
Chicago, Illinois 60602
Phone No. (312) 332-5200
Fax No. (312) 242-4966

*Additional Plaintiffs' Counsel*

35

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiffs' Motion For Final Approval Of Class Action Settlement, Service Awards, And Attorneys' Fees And Expenses** was electronically filed with the Clerk of the Court via the CM/ECF system, which served copies on all interested parties registered for electronic service, on April 30, 2019.

*/s/ Katrina Carroll* _____

36